IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| WILLIAM MAXWELL, | § | |
| | § | |
| Petitioner, | § | CIVIL ACTION NO. 1:22-CV-40 |
| | § | |
| v. | § | |
| | § | DISTRICT JUDGE MICHAEL J. TRUNCALE |
| WARDEN, FCI BEAUMONT LOW, | § | MAGISTRATE CHRISTINE L. STETSON |
| | § | |
| Respondent. | § | |

**RESPONDENT'S MOTION TO DISMISS OR, IN THE
ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Respondent, Warden A. Thomas, III[1], files this Motion to Dismiss pursuant to Federal

Rules of Civil Procedure 12(b)(6) or, alternatively, Motion for Summary Judgment pursuant to

Federal Rule of Civil Procedure 56. For the reasons stated in the incorporated Memorandum of

Law, Respondent respectfully requests the Petition for Writ of Habeas Corpus be denied.

**MEMORANDUM OF LAW**

### I.      INTRODUCTION

#### A.      Parties

Respondent is Warden A. Thomas, III, who is the Bureau of Prisons' ("BOP") Warden

for the Low Security Institution at the Federal Correctional Complex in Beaumont, Texas ("FCI

Beaumont Low"). He is a proper party in this habeas petition. Pro se petitioner, William

---

[1] The federal habeas statute provides the proper respondent to a habeas petition is the person who has custody over the petitioner. *Padilla v. Rumsfeld*, 542 U.S. 426, 434 (2004).

Maxwell ("Petitioner"), federal register number 71944-279, is currently incarcerated at FCI Beaumont Low.[2] His current projected release date is July 17, 2031. *Id.*

Petitioner was sentenced in July 2015 to a 240-month term of imprisonment in the United States District Court for the District of New Jersey. *See generally United States of America v. William Maxwell*, 1:11-CR-00740(03) (D.N.J.) Petitioner's sentencing followed a six-month long trial and subsequent jury verdict of guilty for counts 1-20, 23, and 24, of a 24-count Indictment. *Id.* at ECF Nos. 1294 & 1307. Petitioner's crimes of conviction arise out of his role with organized crime figures, who conspired to take control of FirstPlus Financial Group, Inc., by using threats of economic harm to intimidate and remove their management and board of directors. *See generally id.* The organized crime figures then replaced these board members with people beholden to them, including Petitioner and his brother. *Id.* Once the takeover occurred, the new board of directors named Petitioner as their "Special Counsel," a position Petitioner used to assist them in funneling approximately $12 million dollars to themselves. *Id.* Petitioner's crimes of conviction are for racketeering conspiracy and related offenses, including securities fraud, wire fraud, money laundering, obstruction of justice, and the sale or transfer of firearms and ammunition to a prohibited person. *Id.*

**B.      The Petition**

Petitioner appears to primarily allege the administration at FCI Beaumont Low failed to consider him for priority transfer to home confinement under the CARES Act. [*See generally* ECF No. 1]. He additionally alleges the BOP has treated him differently than other individuals, naming specifically Michael Cohen, and Paul Manafort. [*Id.* at p. 8]. It also appears Petitioner is

---

[2] Federal Bureau of Prisons Website, https://www.bop.gov/inmateloc (in the Find by Number section, select BOP Register Number, and enter 71944-279).

alleging the BOP is not allowing him time credits, extra minutes for phone use, expanded commissary spending limits, transfer to a halfway house, preferential housing, and other privileges under the First Step Act ("FSA").  [ECF No. 1.1, pp. 36-38].  As relief, Petitioner requests this Court to enter declaratory and injunctive relief on a myriad of issues, to include: Petitioner's request for transfer to a halfway house or home confinement under the CARES Act; the BOP's alleged failure to properly apply time credits towards prerelease custody under the FSA; the BOP's alleged failure to provide additional privileges for phone use and expanded commissary, and; Petitioner's participation in productive activities prior to December 21, 2018. [*Id.*, pp. 38-39].

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1)

The party asserting subject matter jurisdiction bears the burden of proof and must establish, by a preponderance of the evidence, that the court has jurisdiction based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Mitchell v. Bailey*, 982 F.3d 937, 940 (5th Cir. 2020) (citing *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012)).  A plaintiff "constantly bears the burden" to prove that jurisdiction exists.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Although dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is only proper if "it appears certain that the plaintiff cannot prove any set of facts in support of her claim which would entitle her to relief," a plaintiff's failure to name the requisite defendant constitutes a circumstance where dismissal is proper.  *McRaney v. N. Am. Mission Bd. Of the S. Baptist Convention, Inc.*,

966 F.3d 346, 348 (5th Cir. 2020) (quoting *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007)).

### B.    Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(6)

Motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) are appropriate where the defendant attacks the complaint because it fails to state a cognizable claim. FED. R. CIV. P. 12(b)(6). A complaint may be dismissed for failure to state a claim where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); *Grisham v. United States*, 103 F.3d 24, 25–26 (5th Cir. 1997). Such dismissal is also appropriate where the plaintiff's allegations are conclusory or where the complaint shows that relief is barred by an affirmative defense. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982).

### C.    Motion for Summary Judgment Pursuant to FED. R. CIV. P. 56

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). As a procedural vehicle for disposing of deficient claims, summary judgment is not a "disfavored procedural shortcut," but rather represents an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (quoting FED. R. CIV. P. 1). The movant must cite specific parts of the summary judgment materials, "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). When the movant has satisfied this burden, the nonmovant must demonstrate that there is a genuine dispute of material

fact and not merely allege that there is one.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).  The nonmovant must also articulate the precise manner in which the evidence sets forth or supports his claims.  *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citation omitted).  Importantly, summary judgment is available "in the context of habeas corpus cases."  *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), cert. denied, 531 U.S. 831 (2000).

### III.    ARGUMENT AND ANALYSIS

#### A.    Petitioner has Failed to Exhaust Administrative Remedies

Petitioner appears to make the allegation prison administration at FCI Beaumont Low has failed to apply FSA time credits to his sentence for prerelease custody. Seemingly also included in this allegation is the failure to apply any programming that occurred prior to December 2018. [ECF No. 1-1, pp. 38-39].  Petitioner also appears to allege he has not been afforded additional privileges allowed under the FSA, to include additional phone minutes, commissary, and preferential housing.  [*Id*.].

A federal prisoner seeking relief under 28 U.S.C. § 2241 must first exhaust his administrative remedies through the BOP before judicial review is available, absent a petitioner being able to prove that exhaustion would be futile.  *See Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994); *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993) (holding that a § 2241 petitioner must first exhaust his administrative remedies through the BOP).  When an inmate lacks a valid excuse for failing to exhaust his administrative remedies prior to filing a § 2241 petition, the petition should be dismissed.  *Thomason v. Guzik*, 226 F.3d 642 (5th Cir. 2000) (unpublished) [3] (affirming dismissal of § 2241 petition of federal inmate who failed to exhaust his administrative remedies with the BOP).  The exhaustion requirement must also be "proper," meaning a federal

---

[3] In accordance with Federal Appellate Rule of Civil Procedure 32.1(b), a copy of all unpublished opinions are attached hereto as Exhibit B.

Motion to Dismiss, or in the Alternative, Motion for Summary Judgment                5

prisoner must comply with the BOP's administrative remedy procedures. *See Woodford v. Ngo*, 548 U.S. 81 (2006); *Flores v. Lappin*, 580 F. App'x 248, 249 (5th Cir. 2014) (unpublished) (citations omitted) (noting that the Fifth Circuit takes "a strict approach" to exhaustion, requiring that "prisoners must exhaust available remedies properly"). Additionally, 42 U.S.C. § 1997e's exhaustion requirement is satisfied only if the prisoner "pursue[s] the grievance remedy to conclusion." *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001); s*ee also Flores,* 580 F. App'x 248 (an inmate's mere substantial compliance with administrative remedy procedures does not satisfy exhaustion, which demands compliance with an agency's deadlines and other critical procedural rules) (citations omitted).

The BOP administrative remedy procedures, set forth in Title 28 C.F.R. §§ 542.10-542.19, provide formal review of any complaint which relates to any aspect of the inmate's confinement. Informal resolution is first attempted, and if it proves unsuccessful, then the inmate may file a formal complaint with the warden. *See* 28 C.F.R. §§ 542.13-542.14. Informal resolution is referred to as a BP-8, while the formal complaint to the warden is referred to as a BP-9. *Huff v. Neal*, 555 F. App'x 289, 293 (5th Cir. 2014) (unpublished). If the inmate is not satisfied with the warden's response, he may appeal the response to the regional director. 28 C.F.R. § 542.15(a). This is referred to as a BP-10. *Huff*, 555 F. App'x at 293. If the inmate is dissatisfied with the regional response, he may file a national appeal with the Office of General Counsel in Washington, D.C. 28 C.F.R. § 542.15(a). Appeal to the Office of General Counsel is the final administrative appeal within the BOP. *Id*. This final step is referred to as a BP-11. *Huff*, 555 F. App'x at 293. If an inmate does not receive a response within the time allotted for a reply, the absence of a response is considered a denial at that level. 28 C.F.R. § 542.18. All

inmate requests and appeals are logged into the BOP's computer system and assigned a "Remedy ID" number.  (Exhibit A, <u>Declaration of Justin Thornton</u>, ¶ 4).

While Petitioner appears to have exhausted the administrative remedy process regarding the denial of his request for priority transfer to home confinement pursuant to the CARES Act, he has failed to exhaust any of the other claims he presents in his Petition.  (*Id*. at ¶ 9).

If the BOP has erred in its calculation of Petitioner's sentence, it should be afforded the opportunity to rectify the error.  *See Smith v. Thompson*, 937 F.2d 217, 219 (5th Cir. 1991) (agency should be given opportunity to correct its own error before a party seeks judicial intervention).  In this case, the BOP was not afforded that opportunity, as Petitioner did not exhaust administrative remedies as to these allegations in his Petition.

### 1.   Petitioner Cannot Seek Relief for these Claims

Assuming, *arguendo*, the Court finds Petitioner did exhaust these other claims, or is not required to exhaust these claims, Petitioner is not entitled to the relief he seeks, as explained further below.

### a.   *Phone Minutes and Commissary*

Habeas relief is not the appropriate legal vehicle to attack claims related to unconstitutional conditions of confinement.  A writ of habeas corpus permits a petitioner to seek immediate or earlier release from custody, where alternatively, a civil rights complaint provides the proper vehicle to challenge allegations of unconstitutional conditions of confinement and prison procedures.  *See Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997).  While Respondent maintains Petitioner did not exhaust these claims, they nevertheless still fail in the habeas corpus context because they do not challenge the fact or duration of Petitioner's

confinement. Accordingly, Petitioner's claims regarding expansion of the privileges for phone minutes and commissary should be dismissed.

**b.   *Preferential Housing***

In addition to the inability to bring a claim for inmate housing decisions in the habeas context, as it challenges a condition of confinement, it is well settled case law that the placement of inmates serving a lawfully imposed sentence is within the discretion of the BOP. *See McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise.") (citing *Meachum v. Fano,* 427 U.S. 215, 225 (1976)). Federal statutes provide the BOP "unfettered authority to decide where to house federal prisoners" and preclude "any approach that puts the judicial branch in charge of designating the place of confinement for a federal prisoner-no matter how well justified on utilitarian grounds." *See Matter of Gee*, 815 F.2d 41, 42 (7th Cir. 1987).

In passing the FSA, upon which Petitioner attempts to rely, Congress confirmed it did not intend to strip the BOP of its placement discretion: "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." 18 U.S.C. § 3621(b)(5).

Accordingly, for the reasons cited above, these claims must also be dismissed.

**c.   *Time Credits Prior to December 2018***

Petitioner further seeks declaratory judgment that his prison job, which he refers to as a "productive activity," be granted time credit under the FSA prior to the FSA's enactment in December 2018. [ECF No. 1-1, pp. 38-39]. Petitioner relies on 28 C. F. R. § 523.42(b)(1) for his position. [*Id*. at p. 39].

The FSA specifically lists "a prison job" as an "evidence-based recidivism reduction program." 18 U.S.C. § 3635(3)(C)(xi). The FSA further specifies time credits are ineligible "prior to the date of enactment of this subchapter…" 18 U.S.C. § 3632(d)(4)(B)(i). In addition to not knowing what Petitioner's job is and whether this job qualifies as programming eligible for FSA time credits (which would be addressed in an administrative remedy), there is no case law directly addressing 28 C. F. R. § 523.42, stating anything other than, "Congress did not make the statute retroactive beyond this date." *See United States of America v. Clarence Weaver*, 2022 WL 350719 (E.D. Mich. Feb. 3, 2022) (unpublished). *Weaver* specifically addressed the petitioner's request to be granted credit towards prerelease custody for having "worked approximately 200 hours." *Id*. at *2. The Court referenced the recent FSA amendments and how eligible inmates could receive retroactive time credits from the BOP towards prerelease custody for participation in evidence-based recidivism reduction programs they participated in from "December 21, 2018, until January 14, 2020." *Id*. The Court further noted it lacked authority to compel the BOP to award the petitioner with those credits, because the BOP maintained the exclusive authority to determine a prisoner's place of incarceration. *Id*. (citing 18 U.S.C. § 3621(b)).

As referenced in *Weaver*, FSA earned time credits amount to no more than additional time in prerelease custody or supervised release. 18 U.S.C. § 3632(d)(4)(C); *see also* 18 U.S.C. § 3624(g). 18 U.S.C. § 3624(g) indicates the only mandatory transfers under the FSA are to a different form of BOP custody, meaning the mandatory part of the statute does not affect the length of an inmate's confinement. *See id*. And where the FSA does affect the length of confinement, the decision of whether to release an inmate early is left to the sole discretion of the Director. *See* 18 U.S.C. § 3624(g)(3). There can be no liberty interest where there is unfettered

discretion. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) (no liberty interest is created when the decision maker can exercise his discretion for any reason). Where a petition does not challenge the conviction, or the duration of confinement, it is not properly cognizable under habeas. *Spencer v. Haynes*, 774 F.3d 467, 469-70 (8th Cir. 2014); *cf. Hill v. McDonough*, 547 U.S. 573, 579 (2006) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus."); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484, 500 (1973). Accordingly, challenges to the application of FSA earned time credits of this type are not cognizable under habeas and Petitioner's claims as it is related should be dismissed.

### d. *Equal Protection*

Petitioner also alleges he was treated differently than individuals with high social or economic status. [ECF No. 1, p. 8]. Specifically, Petitioner claims he was treated differently than Michael Cohen and Paul Manafort. [*Id*.].

Respondent liberally construes this allegation as a denial of equal protection, which is not cognizable in a habeas action. Again, where a prisoner petition challenges the conditions of his confinement, the proper vehicle is a civil rights action. *See Spencer v. Bragg*, 310 F. App'x 678, 679 (5th Cir. 2009) (citing *Carson*, 112 F.3d at 820-21; *see also Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997) ("The Due Process Clause does not protect every change in the conditions of confinement which has a substantial adverse affect upon the prisoner"). Accordingly, Petitioner's claim does not serve as a basis for habeas corpus relief, but rather could possibly form the basis for a civil rights action, following proper exhaustion.

Furthermore, any claims Petitioner brings regarding the misconduct of staff are merely conclusory allegations that do not raise a constitutional issue in a habeas proceeding. *Murphy v. Dretke*, 416 F.3d 427, 437 (5th Cir. 2005), *cert. denied*, 546 U.S. 1098 (2006).

This claim must also be dismissed.

**B.      Petitioner has not Suffered a Due Process Violation**

While Petitioner makes brief reference to the above claims in his Memorandum, the crux of Petitioner's habeas claim appears to be a challenge to FCI Beaumont Low's decision not to grant him priority release to home confinement pursuant to the CARES Act. [*See generally* ECF No. 1]. While Petitioner repeatedly refers to his request as one for halfway house placement or home confinement, it is clear from his administrative remedies, he only sought home confinement placement. [*Id*.]. It is also imperative to note the CARES Act only expanded the BOP's home confinement authority under 18 U.S.C. § 3624(c)(2), and affected no part of 18 U.S.C. § 3621(b), nor did it grant expanded authority for placement in halfway houses.

Petitioner relies on several cases for his argument. [*Id*. at p. 1]. Petitioner's argument fails for two primary reasons: First, the proposition this line of cases stand for was never addressed by the Fifth Circuit. *See Tischendorf v. Van Buren*, 526 F.Supp.2d 606, 610 (N.D. Tex. Dec. 5, 2007) (unpublished). Second, but overwhelmingly more important, this case law was rendered moot by subsequent amendments to the statute, specifically amendments made to the statute in the Second Chance Act of 2007.

**1.  Amendments to Prerelease Custody by the Second Chance Act of 2007**

Prior to 2008, 18 U.S.C. § 3624(c) read:

Pre-release custody. – The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

The cases Petitioner relies upon addressed BOP's discretion to place prisoners in community correctional facilities, not home confinement, and had concluded the pre-Second Chance Act time limit as referenced above, described only the period for which the BOP was *required* to consider the use of community corrections and not the maximum period for which it was *authorized* to use community corrections. *See Goldings v. Winn*, 383 F.3d 17, 26 (1st Cir. 2004); *see also Elwood v. Jeter*, 386 F.3d 842, 847 (8th Cir. 2004). The courts held the specific time window in the then-Section 3624(c) did not affect the BOP's discretionary authority to extend prerelease custody to community correctional facilities.

The Second Chance Act of 2007 significantly altered the framework for prerelease custody and home confinement. Included in these alterations is a separate subsection addressing home confinement, with an independent limitation requiring this form of prerelease authority only be used "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). This created a distinction between prerelease custody in home confinement, and prerelease custody more generally, including in a "community correctional facility." *See* 18 U.S.C. § 3624(c).

## 2. 18 U.S.C. § 3621(b) does not apply to 18 U.S.C. § 3624(c)(2)

To the extent Petitioner is attempting to persuade this Court the BOP has discretion to place him in home confinement under 18 U.S.C. § 3621(b), there does not appear to be any case law to support his proposition.

To the contrary, there are district court decisions interpreting the BOP's discretion under § 3621(b) to designate a "penal or correctional facility," and does not include home confinement under the current version of 18 U.S.C. § 3624(c)(2). *See United States v. Orozco*, 2020 WL 3047471, (D. Nev. June 8, 2020) ("While Congress ordered the BOP to consider court

recommendations about the most appropriate 'penal or correctional facility' in 3621(b), it failed to include 'home confinement' in this provision."); *see also Toole v. Krueger*, 2012 WL 6621681 (D. Minn. Dec. 19, 2021) ("…an inmate's home is not a 'penal or correctional facility within the meaning of 3621(b).")

Also harmful to Petitioner's argument is the case law determining factors set forth in § 3621(b) need not be applied to prerelease custody options until nearer to his eligibility date. *See Guess v. Werlinger*, 421 F. App'x 215, 217 (3d Cir. 2011) ("We also reject Guess's contention that the scheduling of the prerelease hearing at 17 to 19 months before a projected release date runs afoul of 18 U.S.C. § 3621(b).")

### 3.  18 USC 3624(c)(2)'s Expanded Authority Under the CARES Act

Among many of the challenges the COVID-19 pandemic presented, Congress recognized it was having a substantial effect on federal correctional institutions.  As a result, Congress expanded the BOP's preexisting discretion to grant home confinement in the CARES Act.  Section 12003(b)(2) of the CARES Act provides that:

> during the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of 3624(c)(2) of title 18, United States Code, *as the Director determines appropriate*.  (emphasis added).

On April 3, 2020, the Attorney General found that COVID-19 conditions were "materially affecting the functioning of the Bureau of Prisons." Memorandum for the Director of the Bureau of Prisons from the Attorney General, *Re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* at 1 (Apr. 3, 2020).  The Memorandum also noted the BOP's obligation to protect the public and specified, "we cannot simply release prison populations en masse onto the streets."  *Id*.  The Memorandum directed the BOP to "continue

making the careful, individualized determinations BOP makes in the typical case.  Each inmate is unique and each requires the same individualized determinations we have always made in this context."  *Id.*

Petitioner does not appear to be arguing he was not given an individualized review for priority home confinement placement under the CARES Act, but instead takes offense that he was not ultimately granted priority placement in home confinement, despite being initially referred by his Unit Team.  [*See generally* ECF No. 1].  Petitioner made his unhappiness with this decision known by exercising his administrative remedies.  (*See generally* Ex. A).  And while Petitioner may have been initially referred by his Unit Team, the Warden made clear the BOP had exercised its discretion and ultimately denied his request for priority release under the CARES Act.  (*Id.* at Attach. 3)  This denial was based upon their review of the totality of circumstances for the Petitioner individually.  (*Id.*).  Both the South Central Regional Office and the Central Office affirmed the decision to deny Petitioner priority release to home confinement under the CARES Act.  (*Id.* at Attachs. 4 & 5).  These denials were clearly based on the minimal amount of time Petitioner had spent at a correctional facility[4] and the nature of his offense of conviction.  (*Id.*)

The BOP was within its discretion to deny the Petitioner priority placement in home confinement under the CARES Act.  *See De La Cruz Jimenez v. United States*, 844 F. App'x. 753 (5th Cir. 2021) ("He cites no legal authority, nor are we aware of any, holding that the CARES Act created an actionable right to release even for qualifying inmates or a corresponding duty of the respondents to release him."); *see also United States v. Lang*, 835 F. App'x. 790, 791 at n4 (5th Cir. 2021) ("Although Lang contends he meets the criteria for release to home

---

[4] At the time the CARES Act was passed, Petitioner had spent approximately 56-months of a 240-month imposed sentence at a correctional facility.

Motion to Dismiss, or in the Alternative, Motion for Summary Judgment                                         14

confinement under the CARES Act, the plain language of the CARES Act does not grant a federal court the authority to make home confinement determinations.")  Accordingly, Petitioner's petition is without merit and should be dismissed.

### III.   CONCLUSION

In sum, Petitioner's habeas allegations regarding FSA earned time credits, preferential housing, and extra privileges related to phone and commissary should be dismissed due to lack of subject matter jurisdiction and Petitioner's failure to state a claim in which relief could be granted.  Alternatively, Summary Judgment should be granted as Petitioner as failed to exhaust his administrative remedies in regards to these claims.

Petitioner's remaining exhausted claim regarding the decision not to grant him priority placement in home confinement pursuant to the CARES Act should similarly be dismissed due to lack of subject matter jurisdiction and failure to state a claim.

WHEREFORE, PREMISES CONSIDERED, Respondent respectfully requests that the Petition for Writ of Habeas Corpus be denied in all respects.

Respectfully submitted,
BRIT FEATHERSTON
UNITED STATES ATTORNEY

*Michael W. Lockhart*
MICHAEL W. LOCKHART
Assistant United States Attorney
Texas Bar No. 12472200
550 Fannin Street, Suite 1250
Beaumont, TX 77701-2237
Tel: (409) 839-2538
Fax: (409) 839-2550
Email:  USATXE.CivECFBmt@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 17, 2022, a true and correct copy of the foregoing document was

filed electronically with the court and has been served on the *pro se* petitioner as follows:

### ***VIA CERTIFIED MAIL/RRR***
William Maxwell
Reg. No. 71499-279
FCI Beaumont Low
P.O. Box 26020
Beaumont, TX 77720


*Michael W. Lockhart*
MICHAEL W. LOCKHART
Assistant United States Attorney