IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| WILLIAM MAXWELL | § | |
| Petitioner | § | CIVIL CASE 1:22-CV-40 |
| | § | |
| V. | § | |
| | § | |
| WARDEN, FCI-BEAUMONT-LOW | § | USDJ MICHAEL J. TRUNCALE |
| Respondent | § | MAGISTRATE CHRISTINE L. STETSON |

---

**MAXWELL'S AMENDED RESPONSE TO DOC. 8**

---

WILLIAM MAXWELL

REG. NO. 71844-279

FCI-BEAUMONT-LOW

P.O. BOX 26020

BEAUMONT, TX 77720

PRO SE

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................i

TABLE OF AUTHORITIES.......................................................ii-xiv

BACKGROUND.......................................................................1

PRELIMINARY STATEMENT........................................................2-11

RESPONSE TO 12(b)(1)........................................................11-23

RESPONSE TO 12(b)(6) AND MOTION FOR SUMMARY JUDGMENT........................23-46

WEST VIRGINIA V. E.P.A......................................................46-53

MAXWELL AFFIDAVIT...........................................................53-56

INCORPORATION...................................................................56

PRAYER..........................................................................56

SIGNATURE BLOCK.................................................................56

CERTIFICATE OF SERVICE..........................................................57

VERIFICATION....................................................................57

ATTACHMENT INDEX................................................................58

## TABLE OF AUTHORITIES

**Supreme Court:**

Anderson v. Liberty Lobby................................................33
    477 U.S. 242 (1986)

Babb v. Wilkie.........................................................44
    140 S.Ct. 1168 (2020)

Board of Pardons v. Allen...........................................16, 17
    482 U.S. 369 (1987)

Celotex v. Catrett.....................................................33
    477 U.S. 317 (1986)

Chevron v. National Resources Defense Co., Inc...........8, 35, 39, 40, 43, 49
    467 U.S. 837 (1984)

Cuzzo Speed Tech, LLC v. Lee...........................................37
    579 U.S. 261 (2016)

Dept. of Trans. v. Assoc. of Am. Railroads.............................52
    575 U.S. 43 (2015)

Dong v. Mich. Dept. of Treasury........................................47
    489 U.S. 803 (1989)

Duncan v. Walker.......................................................37
    533 U.S. 167 (2001)

F.D.A. v. Brown Williamson Tobacco, Corp..............................47, 48
    529 U.S. 120 (2000)

F.D.I.C. v. Meyer...................................................20
        510 U.S. 471 (1994)


Fed. Pwr. Comm's v. Idaho Pwr. Co..................................19
        344 U.S. 17 (1952)


Gonzales v. Oregon.................................................48
        546 U.S. 243 (2006)


Greenholtz v. Inmates of the Nebraska Penal Correctional Complex...........17
        442 U.S. 1 (1979)


Haines v. Kerner...................................................24
        404 U.S. 519 (1972)


Hamden v. Rumsfeld.................................................41
        548 U.S. 557 (2006)


Hewitt v. Helms....................................................17
        459 U.S. 460 (1983)


Hishon v. King & Spalding..........................................24
        467 U.S. 69 (1984)


Hughs Aircraft Co. v. Jacobson.....................................38
        525 U.S. 432 (1999)


Ins. Corp. of IR, Ltd. v. Compagne de Bauxites de Guire............5
        456 U.S. 694 (1982)


Kendall v. United States...........................................3
        37 U.S. 524 (1835)

Kentucky Dep't of Corr. v. Thompson................................................16
    490 U.S. 454 (1984)


Kokkonen v. Guardian Life Ins. Co. of Am.........................................5
    511 U.S. 375 (1994)


Lopez v. Davis..............................................................44, 45
    531 U.S. 230 (2001)


Lujan v. Defs. of Wildlife......................................................13
    504 U.S. 555 (1992)


Microsoft Corp. v. i4i Ltd......................................................37
    564 U.S. 91 (2011)


Morales v. TWA, Inc.............................................................44
    504 U.S. 374 (1992)


Nielson v. MONY................................................................44
    139 S.Ct. 954 (2019)


Padilla v. Rumsfeld............................................................12
    542 U.S. 426 (2004)


Park 'n Fly, Inc. v. Dollar Park & Fly, Inc....................................40
    469 U.S. 189 (1985)


Preiser v. Rodriguez.......................................................15, 22
    411 U.S. 475 (1973)


Radlax Gateway Hotel, LLC v. Amalgated Bank....................................44
    566 U.S. 639 (2012)

Sandin v. Conner..............................................2, 8, 15, 16, 37
    515 U.S. 472 (1995)


TRW, Inc. Andrews.......................................................40
    534 U.S. 19 (2001)


United States v. Lee.....................................................3
    106 U.S. 196 (1882)


Utility Air Regulatory Group v. E.P.A....................................46
    573 U.S. 302 (2014)


West Virginia v. E.P.A.............1, 3, 8, 35, 40, 44, 46, 47, 48, 51, 52, 53
    597 U.S. ____ (2022)


Whitman v. American Trucking Assns., Inc.................................49
    531 U.S. 457 (2001)


Wolff v. McDonnel........................................2, 8, 15, 16, 37
    418 U.S. 539 (1974)

**Circuit Courts:**

Assaad v. Ashcroft......................................................36
    378 F.3d 471 (5th Cir. 2004)


Barrera-Montenegro v. United States.....................................13
    74 F.3d 657 (5th Cir. 1996)


Billiter v. United States Bd. of Parole.................................19
    541 F.2d 938 (2d Cir. 1976)

Bridge v. United States Parole Comm'n.........................................19
    981 F.2d. 97 (3d Cir. 1992)


Campbell v. City of San Antonio.............................................24
    43 F.3d 973 (5th Cir. 1995)


Cook v. TDCJ Transitional Planning Dep't....................................22
    37 F.3d 166 (5th Cir. 1994)


Days v, Johnson.............................................................25
    322 F.3d 863 (5th Cir. 2003)


Doe v. Hillsboro ISD........................................................24
    81 F.3d 1395 (5th Cir. 1996)


Fuller v. Rich.............................................................5, 8
    11 F.3d 61 (5th Cir. 1994)


Fults v. Sanders.........................................................19, 43
    442 F.3d 1088 (8th Cir. 2006)


Gen. Motors v. E.P.A.........................................................5
    363 F.3d 442 (D.C. Cir. 2004)


Goldings v. Winn...................................................13, 18, 23, 43
    383 F.3d 17 (1st Cir. 2004)


Hasse v. Sessions........................................................13, 14
    83 F.2d 902 (D.C. Cir. 1987)


Hernandez v. Campbell.......................................................17
    204 F.3d 861 (9th Cir. 2000)

Hessbrook v. Lennon...................................................5
      777 F.2d 999 (5th Cir. 1985)


Holloway v. Gunnell.................................................25
      685 F.2d 150 (5th Cir. 1982)


In re Gee...........................................................36
      815 F.2d 41 (7th Cir. 1987)


In re Walter v. Energy..............................................20
      911 F.3d 1121 (11th Cir. 2018)


InStone Travel Tech Marine & Offshore v. Inter Shipping Partners...........33
      334 F.3d 423 (5th Cir. 2003)


Jackson v. Johnson..................................................22
      475 F.3d 261 (5th Cir. 2007)


Jimimian v. Nash....................................................15
      245 F.3d 144 (2d Cir. 2001)


Johnson v. Knom......................................................9
      477 F.3d 75 (3d Cir. 2006)


Kenner v. Arkansas Fuel Oil. Co.....................................12
      151 F.2d 567 (5th Cir. 1945)


Levine v. Apker.........................................13, 18, 19, 23, 38
      445 F.3d 71 (2d Cir. 2006)


Mickens-Thomas v. Vaughn............................................19
      355 F.3d 294 (3d Cir. 2004)

Patterson v. Weinberger...............................................14
     644 F.2d 521 (5th Cir. 1981)

Rodriguez v. Smith...............................................19, 43
     541 F.3d 1180 (9th Cir. 2008)

Rublee v. Flemming...................................................44
     160 F.3d 213 (5th Cir. 1998)

Shaw v. Guatrey......................................................10
     795 F.2d 1351 (8th Cir. 1986)

Simmons v. Humphreys County Sch. Dist. et al.........................10
     1994 U.S.App. LEXIS 41132 (5th Cir. 1994)

Spivey v. Robertson..................................................24
     197 F.3d 772 (5th Cir. 1997)

Tucker v. Carlson....................................................15
     925 F.2d 330 (9th Cir. 1990)

Underwood v. Wilson..................................................25
     151 F.3d 292 (5th Cir. 1998)

United States v. Hillstrom...........................................17
     988 F.2d 488 (3d Cir. 1993)

United States v. Jalili..............................................15
     925 F.2d 889 (6th Cir. 1991)

United States v. Latimer.............................................17
     991 F.2d 1509 (9th Cir. 1993)

United States v. Peterman........................................................15

    249 F.3d 458 (6th Cir. 2001)


United States v. Tubwell.........................................................44

    37 F.3d 175 (5th Cir. 1994)


Wagstaff v. U.S. Dept. of Education.........................................12, 13

    509 F.3d 661 (5th Cir 2007)


Wedelstedt v. Wiley.........................................................13, 19

    477 F.3d 1160 (10th Cir. 2007)


Wendell v. Asher................................................................25

    162 F.3d 887 (5th Cir. 1998)


Woodall v. Fed. B. of Prisons.........................13, 16, 17, 18, 19, 23

    433 F.2d 235 (3d Cir. 2005)


**District Courts:**


American, Inc. v. U.S. Army Corps of Engineers...................................3

    610 F.Supp. 750 (D. N.J. 1985)


Betances, et al. v. Fischer......................................................9

    2022 Dist. LEXIS 45082 (S.D. NY March 14, 2022)


B.G.M. Ent. v. Harris..........................................................10

    482 F.Supp. 1073 (D.C. Montana Jan. 11, 1980)


Bright v. Ashcroft.............................................................29

    254 F.Supp.2d 494 (E.D. La. Feb. 11, 2003)

Burtons v. Warden..................................................................4, 5
     2021 Dist. LEXIS 243891 (N.D. Tex. 2021)

Casanova v. O'Mara................................................................9
     (D. N.H., July 25, 2011)

Elixer Shipping S.A. v. Pervesahaan Pertambangan Minyak....................14
     Dan Gas Bomi Negura, 267 F.Supp.2d 659 (S.D. Tex. 2003)

Floyd v. Chili's LLC of Alabama...........................................29
     2017 WL 1455024 (M.D. La., Apr. 21, 2017)

Mohamed v. Holder...........................................................10
     2015 Dist. LEXIS 92997 (E.D. Va. July 16, 2015)

Nevada v. U.S. Dep't of Labor.............................................39
     218 F.Supp.3d 520 (E.D. Tex. 2016)

Norman v. Can...............................................................5
     2021 Dist. LEXIS 211294 (N.D. Tex. 2021)

Pappert v. Borough of Bridgeville..........................................9
     2011 Dist. LEXIS 5858 (W.D. Pa. Jan. 20, 2011)

Reyes v. Fed. B. of Prisons...............................................19
     2019 Dist. LEXIS 154910 (D. N.J. 2019)

Ripple v. Marble Falls Indep. Sch. Dist...................................29
     99 F.Supp.3d 662 (W.D. Tex. 2015)

Rodriguez v. Tex. Comm'n on the Arts......................................14
     992 F.Supp 876 (N.D. Tex. 1998)

Secret v. Briarton...................................................9

    584 F.3d 823 (7th Cir. 1978)


Smith v. United States Parole Comm'n...............................9

    2013 Dist. LEXIS 130716 (M.D. Pa., Sept. 12, 2013)


United States v. Garcia-Correjo...................................10

    2007 Dist. LEXIS 97762 (D. N.M. Nov. 28, 2007


United States v. Weaver...........................................41

    2022 WL 350719 (E.D. Mich. Feb. 3, 2022)(unpublished)


Walker v. S.B.C., Serv., Inc......................................29

    375 F.Supp.2d 521 (N.D. Tex. Jun. 2, 2005)


Young v. Simmons..................................................10

    2007 Dist. LEXIS 57071 (N.D. Ok. 2007)

## Statatues, Rules, Other:

### Statutes:

18 U.S.C. §3582(c)(1)(A)...........................................41

18 U.S.C. §3585(a).................................................33

18 U.S.C. §3621.....................................33, 38, 39, 42, 51, 52, 53

18 U.S.C. §3621(b)....................................16, 18, 19, 36, 37, 38, 39

18 U.S.C. §3621(b)(1)-(5)..............................16, 19, 31, 34, 38

18 U.S.C. §3621(b)(5)..............................................36

18 U.S.C. §3621(e).................................................10

18 U.S.C. §3621(h)..............................................4, 5, 18

18 U.S.C. §3621(h)(2)...............................................6

18 U.S.C. §3621(h)(6).............................................6, 7

18 U.S.C. §3624.................................2, 8, 10, 18, 33, 34, 38, 42, 49

18 U.S.C. §3624(b)...........................................................7

18 U.S.C. §3624(c)..............................................11, 43, 45, 52

18 U.S.C. §3624(c)(1)...................................6, 18, 20, 22, 35, 45

18 U.S.C. §3624(c)(2)..............3, 4, 6, 10, 18, 20, 22, 34, 35, 43, 44, 45
                                                        46, 47, 48, 49, 50

18 U.S.C. §3624(c)(6).......................................................6

18 U.S.C. §3624(g).......................3, 4, 10, 18, 22, 34, 35, 43, 49, 52

18 U.S.C. §3624(g)(2).......................................................6

18 U.S.C. §3624(g)(3).......................................................8

18 U.S.C. §3624(g)(10)......................................................6

18 U.S.C. §3624(g)(11)......................................................6

18 U.S.C. §3631............................................................38

18 U.S.C. §3631(b)(2)......................................................41

18 U.S.C. §3631(b)(4).......................................................2

18 U.S.C. §3632.................................................8, 10, 43, 51

18 U.S.C. §3632(a)..........................3, 6, 10, 34, 39, 43, 49, 50, 52

18 U.S.C. §3632(a)(5)......................................................41

18 U.S.C. §3632(a)(5)(A)...................................................20

18 U.S.C. §3632(a)(6)......................................................41

18 U.S.C. §3632(a)(7)......................................................49

18 U.S.C. §3632(b)......................................................6, 41

18 U.S.C. §3632(d).................................................6, 45, 52

18 U.S.C. §3632(d)(1)..................................................23, 27

18 U.S.C. §3632(d)(2)..........................................7, 23, 27, 34, 45

18 U.S.C. §3632(d)(3)...................................................7, 45

18 U.S.C. §3632(d)(3)(A)...............................................23, 27

18 U.S.C. §3632(d)(3)(C)...........................................23, 27, 34

18 U.S.C. §3632(d)(4)...................................................2, 22

18 U.S.C. §3632(d)(4)(A)...........................7, 10, 34, 35, 41, 50, 52

18 U.S.C. §3632(d)(4)(A)(ii)................................................7

18 U.S.C. §3632(d)(4)(B)...........................................35, 38, 39, 40, 41

18 U.S.C. §3632(d)(4)(C)..............................................7, 10, 41

18 U.S.C. §3632(d)(4)(D)...................................................10

18 U.S.C. §3632(d)(5)......................................................41

18 U.S.C. §3632(d)(6).......................2, 4, 7, 10, 11, 20, 22, 34, 35, 41,

43, 45, 50, 52

18 U.S.C. §3633(a)(2)......................................................41

18 U.S.C. §3634.............................................................2

18 U.S.C. §3634(a).........................................................41

18 U.S.C. §3635(3)(c)(vi)..................................................39

28 U.S.C. §994(a)(2).......................................................36

28 U.S.C. §2241.......................................2, 11, 13, 14, 15, 16, 23, 33

28 U.S.C. §2255............................................................13

34 U.S.C. §60541.............................................10, 33, 38, 43

34 U.S.C. §60541(a)(2)(A)..............2, 4, 10, 11, 18, 20, 22, 34, 38, 43, 41

34 U.S.C. §60541(g)...........2, 4, 11, 18, 20, 22, 34, 38, 43, 45, 50, '51, 52

34 U.S.C. §60541(g)(5)(A)(v)...............................................21

## United States Constitution:

UNITED STATES CONSTITUTION ART. I, SEC. 9, CLAUSE 2.........................13

## United States Rules:

Fed.R.Civ.P. 12(b)(1)................................1, 5, 11, 13, 14

Fed.R.Civ.P. 12(b)(6)...........................1, 14, 23, 24, 28, 29, 30

Fed.R.Civ.P. 56.......................................1, 29, 33

Fed.R.E. 201 et seq........................................................26

Fed.R.E. 801 et seq........................................................26

## Code of Federal Regulations:

Fed.Reg./Vol. 87, No. 12/Wed. Jan. 19, 2022.........2, 7, 8, 9, 13, 35, 37, 55

28 C.F.R. §523.40-44...............................8, 37, 40, 42, 51

28 C.F.R. §541.3...........................................................22

28 C.F.R. §542.14(c)(2)............................................30

## Public Laws:

Pub.L. 115-391 (First Step Act)........................3, 4, 20, 34, 43

Pub.L. 116-136 (CARES Act)...............................4, 43, 46, 49

## Treatises:

Eskridge, Alexander, T., "Updating Statutory Interpretation,"...............10
    87 Mich. L.Rev. 20

The Federalist No. 47 (J. Madison)..........................................52

Gelhorn & P. Verkvil, "Controling Chevron-Based Delegations,"...............49
    20 Cardozo L.Rev. 989 (1999)

Manning, John, "What Divides Textualists from Purposivists,"................10
    106 Colum.L.Rev. 70

Nelson, Caleb, "Where is Textualism?"......................................10
    91 Va.L.Rev. 347 (2005)

New Oxford American Dictionary.............................................21

Scalia & Garner, "Reading Law: The Interpretation of Legal
    Legal Texts," 69 (2012).........................................20, 37

William, N., "The New Textualism,".........................................10
    37 U.C.L.A. L.Rev. 621 (1990)

Wright & Miller, Federal Practice and Procedure: Civil §1357...............12

## MAXWELL'S AMENDED RESPONSE TO DOC. 8

COMES NOW, William Maxwell, petitioner, and files his Amended Response, pursuant to the Court's Order (Doc. 17), to Respondent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 8), and for just cause would show unto the Court as follows:

### BACKGROUND

Maxwell timely filed his responses to Doc. 8. In Doc. 8, the Warden filed, in response to the Court's Order [Doc. 6: PageID# 245] to Show Cause, which was filed out of time, without seeking leave, Warden's dilatory pleas (Motion to Dismiss under 12(b)(1); Motion to Dismiss under 12(b)(6); and alternatively, Motion for Summary Judgment under 56) contained in a single document. Maxwell responded, separating out each dilatory plea, in three (3) separate documents. Maxwell also sought leave to file oversized responses (as the responses exceeded (by a few pages) the 30-page limit set under the rules). Maxwell also filed an addendum, based on West Virginia v. E.P.A., 597 U.S. _____ (2022), which was issued by the Supreme Court during the pendency of the response from Maxwell to the Warden's dilatory pleas (Doc. 8).

The Honorable Christine Stetson denied Maxwell's request to file oversized responses "in its present form" [Doc. 17: PageID# 770] and ordered Maxwell to file a single response, but extended the page limit to 60 pages [PageID# 770].

Maxwell herewith timely complies with the Magistrate's Order.

1

## I.  PRELIMINARY STATEMENT

1)   On December 21, 2018, Congress passed, using clear and unambiguous language, the post-conviction-modifying First Step Act ("FSA"), transforming the criminal justice system as it pertains to inmate incarceration, halfway house, and home confinement.  See Pub. L. 115-391.  This post-conviction statutory modification, created liberty interests, as defined by Sandin and Wolff actionable under §2241, a fact acknolwedged by the Bureau of Prisons ("BOP") on January 19, 2022, in its final FSA Time Credit rule published in the Code of Federal Regulations ("CFR").  (See Fed. Reg. / Vol. 87, No. 12 / Wed. Jan. 19, 2022 / p.2716).  [See Exhibit 1].[1]

2)   Discussions of the FSA's mandatory changes are found in the Office of Inspector General's ("OIG") November 2021 Report (attached hereto as Exhibit 2); the April 2022 BOP Annual Report to Congress (attached as Exhibit 3); and the BOP CFR publication from January 19, 2022 (See Exhibit 1, attached).[2]

For example, in the OIG Report (Exhibit 2), the BOP confesses it has conferred a veto power (de facto veto power) on its national union.  [PageID# 204][3]

---

[1]  Sandin v. Conner, 515 U.S. 472, 477, 1|5 S.Ct. 2393, 132 L.Ed. 2d 418 (1995); Wolff v. McDonnel, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed. 2d 935 (1974).

[2]  As part of the FSA, Congress mandated a reporting protocol (18 U.S.C. §3631(b)(4); 18 U.S.C. §3634, generally).

[3]  "BOP officials told the OIG that the BOP has not applied time credits to inmates' sentences as directed under the law [18 U.S.C. §3624; 18 U.S.C. §3632(d)(4); 18 U.S.C. §3632(d)(6); 34 U.S.C. §§60541(a)(2)(A) and (g)] because:

> "(1)  a rule that would codify the BOP procedures for time credits has not been finalized, and
>
> "(2)  The BOP must complete policy negotiations on its time credit policy with the national union.

"The BOP stated that the time credits policy must be negotiated with the national union because it would create changes to conditions of employment, including determinations and applications of earned time credits." (emphasis added).

3)    Nothing in the FSA allows the BOP to delegate to is national union de facto veto power regarding the FSA, or authority to delay its implementation (post-January 15, 2022).  As the Supreme Court held in United States v. Lee, 106 U.S. 196, 220, 27 L.Ed. 171 (1882), "No man in this country is so high that he is above the law.  No officer of the law may set that at defiance, with impunity.  All the officers of the Government, from the highest to the lowest, are creatures of the law and are bound to obey it."

4)    Any possible doubt about the unconstitutional veto bestowed on the union, or the BOP to hold inmates in greater security conditions, when Congress has mandated otherwise, in clear and unambiguous language was resolved in the historic case Kendall v. United States.[4]  See American, Inc. v. U.S. Army Corps of Engineers.[5]  Currently, in West Virginia v. E.P.A.,[6] the Court rejected the inherent authority of the modern administrative state, which permeates the BOP Motions [Doc. 8] and arguments.

5)    Section 101 of the FSA (Pub. L. 115-391) created the "Risk and Needs" assessment program.  See 18 U.S.C. §3632(a) ("... shall develop and release publicly on the Department of Justice website a risk and needs assessment system ...").  This "needs and assessment" system is applied (FSA Earned Time Credits) in two (2) statutory subsections: 18 U.S.C. §§3624(c)(2) and (g).  Subsection

---

[4]  Kendall v. United States, 37 U.S. 524, 9 L.Ed. 1181 (1835).

[5]  American, Inc. v. U.S. Army Corps of Engineers, 610 F. Supp. 750, 753 (D. NJ 1985) (discussing similar circumstances) (internal citations and quotations omitted).

[6]  West Virginia v. Environmental Protection Agency, 597 U.S. _____ (2022).

3624(c)(2) provides, "The BOP shall ... place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." Subsection 3624(g) provides for "prerelease custody or supervised release" for risk and needs assessment system participants. Title 18 U.S.C. §3621(h) provides for the phase-in of the First Step Act provisions between 2020 and January 15, 2022. A phase-in that the BOP confesses never happened due to its delegation of super veto power to its union by the Master Agreement [PageID# 204].

These FSA statutory changes have been the law since December 21, 2018, the date Pub. L. 115-391 was passed.

On March 27, 2020, Congress passed the CARES Act (Pub. L. 116-136) during the onset of the COVID pandemic.

The FSA changes to: 18 U.S.C. §3621(h) (FSA phase-in); 18 U.S.C. §3624(c)(2) (Maximum home confinement for low risk and low needs inmates); 18 U.S.C. §3624(g) (application of earned time credits under the FSA); 34 U.S.C. §60541(a)(2)(A) (maximum amount of halfway house incentive); 34 U.S.C. §60541(g) (elderly offender incentive, transfer to home confinement); are in addition to all other BOP rewards and incentives. Title 18 U.S.C. §3632(d)(6).

6)    The BOP, heretofore, substantively ignored 18 U.S.C. §3621(h), which provided for a phase-in period of up to three (3) years for the FSA.[7]

More than two hundred and fifty (250) times, during the phase-in period, when inmates complained to the courts of the

---

[7]  And while acknowledging the holdings discussed infra in Burtons v. Warden, the significance here is that when the phase-in period ended on January 15, 2022, the BOP was completely unprepared to implement the FSA--and is not doing so, resulting in thousands of years of overstay by inmates entitled to home confinement (like Maxwell) to relief.

4

BOP's malfeasance, the BOP responded with the affirmative defenses of "failure to exhaust" and "ripeness." See <u>Burtons v. Warden</u>.[8] See also <u>Norman v. Can</u>.[9] ("Because the BOP has not completed the 2 year implementation phase, petitioner's request for relief is premature and not ripe.")[10]

7)    In the more than 250 previously filed cases, regarding the FSA's changes to the law,[11] because Fed. R. Civ. P. 12(b)(1) is a jurisdictional bar, Courts would have had to address, <u>sua sponte</u> if necessary, the lack of jurisdiction prior to considering affirmative defenses of ripeness, exhaustion of administrative remedies, mootness, etc.  They did not.[12]

8)    The FSA on one hundred and twelve (112) separate occasions used the mandatory "<u>shall</u>," directing the BOP to take actions regarding the transfer of inmates to halfway house and home confinement.  Some examples include:

* 18 U.S.C. §3621(h) "the Director of the BOP <u>shall</u> ...";

---

[8]  <u>Burtons v. Warden</u>, 2021  _  Dist. LEXIS 243891 at 6 (N.D. Tex., 2021) ("The overwhelming majority of courts to interpret the statutory framework have ... agreed that the BOP is not required to apply time credits until the phase-in period [ends] on January 15, 2022).

[9]  <u>Norman v. Can</u>, No. 4:21-cv-586-P, 2021 Dist. LEXIS 211294, 2021 WL 5086561, at 2 (N.D. Tex., Nov. 2, 2021) (citing cases).

[10]  The complete malfeasance and misfeasance of the BOP resulted in thousands of inmates' liberty interests being unconstitutionally abused under the FSA Earned Time Credits paradigm; however, the bad faith on the part of the BOP is a proper determination hereunder, as Maxwell has alleged bad faith throughout his administrative remedy and petition.

[11]  Much of Maxwell's relief is in the form of declaratory relief and injunctive relief, which does not require exhaustion in any event.  <u>Fuller v. Rich</u>, 11 F.3d 61, 62 (5th Cir. 1994) ("Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are ... wholly inappropriate to the relief sought ..." (citing <u>Hessbrook v. Lennon</u>, 777 F.2d 1003 (5th Cir. 1985)).

[12]  Subject matter jurisdiction is the first order of business for the United States District Courts.  <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed. 2d 391 (1994) ("Federal courts are courts of limited jurisdiction" and the law presumes "that a case lies outside this limited jurisdiction." "As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction" (under 12(b)(1)).  <u>Gen. Motors Corp. v. E.P.A.</u>, 363 F.3d 442, 448 (D.C. Cir. 2004).  "[B]ecause subject matter jurisdiction is an Art[cle] III as well as a statutory requirement ... no action of the parties can confer subject matter jurisdiction upon a federal court."  <u>Ins. Corp. of IR, Ltd. v. Compagne de Bauxites de Guire</u>, 456 U.S. 694, 702, 102 S.Ct. 2049, 72 L.Ed. 2d 492 (1982).

5

* 18 U.S.C. §3621(h)(2) "the BOP <u>shall</u> ...";

* 18 U.S.C. §3621(h)(6) "the Director of the [BOP] <u>shall</u> ...";

* 18 U.S.C. §3624(c)(1) "the Director of the [BOP] <u>shall</u> ...";

* 18 U.S.C. §3624(c)(2) "the BOP <u>shall</u> ...";

* 18 U.S.C. §3624(c)(6) "the Director of the BOP <u>shall</u> ...";

* 18 U.S.C. §3624(g)(2) "A prisoner <u>shall</u> be placed in prerelease custody as follows:";

* 18 U.S.C. §3624(g)(10) "The time limits under subsections (b) and (c) <u>shall</u> not apply to prerelease custody under this section";

* 18 U.S.C. §3624(g)(11) "the Director of the [BOP] <u>shall</u> ensure there is sufficient prerelease custody to accommodate all eligible prisoners";

* 18 U.S.C. §3632(a) "... <u>shall</u> develop and release ...";

* 18 U.S.C. §3632(a) "... which <u>shall</u> be used to";

* 18 U.S.C. §3632(b) "The system [created by 18 U.S.C. §3632(a)] <u>shall</u> provide guidance ...";

* 18 U.S.C. §3632(d) "The system <u>shall</u> ...";

6

* 18 U.S.C. §3632(d)(2) "... <u>shall</u> be considered ...";

* 18 U.S.C. §3632(d)(3) "The Director of the [BOP] <u>shall</u> ...";

* 18 U.S.C. §3632(d)(4)(A) "... <u>shall</u> earn time credits as follows ...";

* 18 U.S.C. §3632(d)(4)(A)(ii) "A prisoner [ ] <u>shall</u> earn 10 days of time credits ...";

* ]18 U.S.C. §3632(d)(4)(C) "Application of time credits ... <u>shall</u> be applied toward time in prerelease custody or supervised release ...";

* 18 U.S.C. §3632(d)(4)(C) "The Director of the [BOP] <u>shall</u> transfer eligible prisoners ...";

* 18 U.S.C. §3632(d)(6) "<u>The incentives described in this subsection shall be in addition to any other rewards or incentives for which a prisoner may be eligible.</u>" (emphasis added)

This is less than twenty percent (20%) of the mandatory language used by Congress ("<u>shall</u>") throughout the FSA--leaving the BOP little discretion and thereby creating a liberty interest under <u>Sandin</u> and <u>Wolff</u>, as acknowledged by the BOP in its January 19, 2022 CFR filing [Exhibit 1, p.2716].

Both 18 U.S.C. §3624(b) "good time credits" and 18 U.S.C. §3632(d)(4)(A) "FSA Time Credits" are protected by the

administrative remedy paradigm (due process) and actionable in court.    See 18 U.S.C. §3632(e).[13]

9)    The BOP, on January 19, 2022, published its final rule regarding FSA Earned Time Credits.    Therein, the BOP acknowledges and admits that it owes inmates time credits and that inmates have liberty interests in those time credits.    See Fed. Reg. / Vol. 87, No. 12 / Wednesday 19, 2022 / p.2716 [Exhibit 1, p.2716].    It reads:

> "The purpose of this rule[14] is to codify the Bureau's procedures regarding the earning and application of time credits as authorized by the FSA.    Time Credits _may_[15] be applied towards pre-release or early transfer to

---

[13] The Supreme Court in _Sandin_ teaches that the Due Process analysis (and thereby the liberty interest protected therein) begins with _Wolff_. In _Wolff_, the Court held that a "statutory provision created a liberty interest in a 'shortened prison sentence' which resulted from good time credits, credits which were revocable only if the prisoner was guilty of serious misconduct." _Wolff_, 418 U.S. at 557. The Court explained that these type of liberty interests were "one of real substance," _id._, and articulated "minimum procedures necessary to reach a 'mutal accommodation' between institutional needs and objectives and the provisions of the constitution." _Id._ at 556.

The Supreme Court explained that the legislature's use of the word "shall" created a legislative expectation of releases and "the Court concluded that some measure of constitutional protection was due." _Sandin_, 515 U.S. at 479 (emphasis added).

The FSA, as acknowledged by the BOP, changed post-conviction law for eligible low risk and low needs inmates. This liberty interests is addressable in court after exhaustion of administrative remedies--or as in notable exceptions under _Fuller_, where legal questions of interpretation of statutes in the first instance are involved. Maxwell raised in his administrative remedies [PageID# 351] all the issues raised herein.

Additionally, eligible inmates under 18 U.S.C. §3624(g)(3), "may [be] transfer[red] to begin any term of supervised release at an earlier date, not texceed 12 months, based on the application of time credits under section 3632 [18 U.S.C. §3632]." This is the same type and context of §3624(b) "good time" credits which also uses "may" and is universally acknowledged to create liberty interests protected by the Due Process clause--and actionable in court.

[14] The Final Rule is substantively different from the original rule proposed by the BOP and open for comment. (See Exhibit 1, p.2706-2716).

[15] The relevant FSA statutes, both in 18 U.S.C. §3632 and §3624, use the mandatory language "shall"--as in, "shall be applied toward pre-release custody ..."; not "may." Maxwell challenges the BOP's authority to change the clear and unambiguous language of the statute from "shall" to "may" in its rules found at 28 CFR §523.40-44, in violation of _Chevron_ and _West Virginia v. E.P.A._.

8

supervised release, and some inmates will be eligible for such custody or release [Maxwell is one such inmate] as soon as this rule goes into effect."

"Delaying implementation for 30 days could therefore deprive at least some inmates of time in the less restrictive environments that Congress has determined are appropriate for inmates. Given the liberty issues implicated by the prompt implementation of this program and this rule ... A delay in the effective date of this final rule would be unnecessary and contrary to the public interest." (emphasis added). [See Exhibit 1, p.2716, attached.]

"Liberty Interest" and "liberty issue" are used interchangeably. See Johnson v. Knom, 477 F.3d 75, fn.8 (3d Cir. 2006) ("... claim might be brought raising a First Amendment claim and not implicate liberty issues ..."); Betances, et al. v. Fischer, 2022 U.S. Dist. LEXIS 45082, *34 (SDNY March 14, 2022) ("... present loss of liberty issues took place ..."); Smith v. United States Parole Comm'n, 2013 U.S. Dist. LEXIS 130716, *8 (M.D. PA, Sept. 12, 2013) ("in which liberty issues are at risk ..."); Pappert v. Borough of Bridgeville, 2011 U.S. Dist. LEXIS 5858, *16 (W.D. PA, Jan. 20, 2011) ("... and not implicate liberty issues ..."); Secret v. Brierton, 584 F.2d 823, 829 (7th Cir. 1978) ("... deprivation of legal materials, which directly reflect on liberty issues"); Casanova v. O'Mara, 2011 U.S. Dist. LEXIS 92779, *31 (D. NH, July 25, 2011) ("A pretrial detainee's claim that he has been subjected to unconstitutional conditions of confinement implicates Fourteenth Amendment liberty issues");

9

Mohamed v. Holder, 2015 U.S. Dist. LEXIS 92997, *19 (E.D. VA, July 16, 2015) ("... travel related liberty issues"); Young v. Simmons, 2007 U.S. Dist. LEXIS 57071, at 55-56 (N.D. OK 2007); United States v. Garcia-Cornejo, 2007 U.S. Dist. LEXIS 97762, at 24 (D. NM, Nov. 26, 2007); B.G.M. Ent. v. Harris, 482 F.Supp. 1073, 1078 (D.C. Montana, Jan. 11, 1980); Shaw v. Guatrey, 795 F.2d 1351, fn.5 (8th Cir. 1986); Simms v. Humphreys County Sch. Dist. et al., 1994 U.S. App. 41132, at 7 (5th Cir. 1994). There are dozens of additional cases that use the phrase "liberty interest" and "liberty issue" interchangeably.

10) The Earned Time Credits for eligible inmates are not discretionary.

11) Titles 18 U.S.C. §3624 and 34 U.S.C. §60541 are text-bound to 18 U.S.C. §3632 and its mandatory language. See 18 U.S.C. §3632(d)(6).[16]

12) There are two (2) types of inmates: Eligible and Ineligible. 18 U.S.C. §3632(d)(4)(D). Eligible inmates earn statutory time credits to be served on home confinement or halfway house. See 18 U.S.C. §3632(a); §3632(d)(4)(A). These time credits shall be applied to pre-release custody 18 U.S.C. §3632(d)(4)(C). They are applied under 18 U.S.C. §3624(g) and under 18 U.S.C. §3624(c)(2) (The BOP shall place prisoners with lower risk levels and lower needs on home confinement for the

--------------------------------------------

[16] See 18 U.S.C. §3632(d)(6). These include 18 U.S.C. §3621(e), 34 U.S.C. §60541(a)(2)(A), etc. See also John Manning, "What Divides Textualists from Purposivists," 106 Colum. L. Rev. 70 (2006); Caleb Nelson, "What is Textualism?," 91 VA. L. Rev. 347 (2005); William N. Eskridge, "The New Textualism," 37 UCLA L. Rev. 621 (1990); T. Alexander, "Updating Statutory Interpretation," 87 Mich. L. Rev. 20 (1988) (collectively, exploring the merits and demerits of text-based versus purpose-driven interpretation.)

maximum amount of time permitted under this paragraph).  See 18 U.S.C. §3632(d)(6) (making the FSA Time Credits in addition to all other rewards and incentives).  See 34 U.S.C. §60541(a)(2)(A) (describing halfway house as an incentive [e.g., pre-release custody]).

13)  The FSA used mandatory non-discretionary language on the BOP obligations to place inmates in pre-release custody.  And therefore, in calculating when an inmate should be placed in pre-release custody, Congress mandated that the earned FSA Time Credits are to be calculated in addition to all other incentives, such as 18 U.S.C. §3624(c) (see 18 U.S.C. §3632(d)(6)) and (34 U.S.C. §60541(a)(2)(A)) and rewards, such as 34 U.S.C. §60541(g).

14)  Against this background, after exhausting all his administrative remedies, after the BOP's final drop-dead date of January 15, 2022, after the BOP's publication of its final rule implementing the time credits earned under the FSA in the CFR on January 19, 2022, after the BOP's disclosure to the OIG of its unconstitutional delegation to the national union of the power to veto the implementation of the FSA, Maxwell filed his §2241.  (See Maxwell's Affidavit, attached.)

### RESPONSE TO DOC. 8

### II.  RESPONSE TO 12(b)(1)

15)  Maxwell objects to the BOP's 12(b)(1) for lack of notice and timeliness.  The BOP's filings were filed after the sixty (60)

11

day deadline without leave of court being sought or granted. The BOP's untimely filing waives any affirmative defense.[17]

16) The BOP asserts in [PageID## 249-250] of its pleadings that "a plaintiff's failure to name the requisite defendant constitutes a circumstance where dismissal is proper." [PageID# 249] The BOP relies on McRaney v. N.A. Mission Bd. of the S. Baptist Convention, Inc., 966 F.3d 346, 348 (5th Cir. 2020) (quoting Wagstaff v. U.S. Dept. of Education, 509 F.3d 661, 663 (5th Cir. 2007)).

First, McRaney is a First Amendment case on speech and religion. Therein the McRaney court held, "[t]he First Amendment protects the right of religious institutions to decide for themselves free from State interference matters of Church government as well as those of faith and doctrine." (Citing Our Lady of Guadalupe Sch v. Morissey-Berro, _____ S.Ct. _____, 2020, U.S. LEXIS 3547, 2020 WL 3808420, at 3 (July 8, 2020)).

Be that as it may, at the time of Maxwell's filing, FCI-Beaumont-Low did not have a Warden. Warden Thomas reported to work after Maxwell's filing. FCI-Beaumont-Low provided no notice to inmates via the Bulletin Board as to whom the next Warden would be. In any event, the title "Warden" is sufficient. See Padilla v. Rumsfeld, 542 U.S. 426, 434 (2004) and thousands of cases, in habeas corpus, addressed to the "Warden."

Second, Wagstaff had to do with a lawsuit against the Department of Energy for violations of the Fair Debt Collection

---

[17] Maxwell recognizes the objection is a technical issue. Wright & Miller, Federal Practice and Procedure: Civil §1357, and that the court has discretion even when a Rule 12 motion is filed after an answer, but as the court noted in Kenner v. Arkansas Fuel Oil Co., 151 F.2d 567, 568 (5th Cir. 1945) (noting that any defect in procedure was waived by appellant's failure to object when the court was considering the motion.") a failure to object waives the matter.

12

Act. The trial court dismissed and the Fifth Circuit affirmed, noting that the Fair Debt Collection Act did not waive sovereign immunity. No such reference is contained in _Wagstaff_, to "plaintiff's failure to name the requisite defendant constitutes a circumstance where dismissal is proper."[18] Sovereign immunity, to the extent that is the BOP's argument under _Wagstaff_, 509 F.3d at 884, is unavailable.

Further, the BOP's admission of liberty interests in FSA Time Credits, filed by the BOP in the CFR, substantively resolves all issues asserted by the BOP in Doc. 8 against the BOP. [See Exhibit 1, p.2716]

### ARGUING FURTHER, IN THE ALTERNATIVE

17) In the alternative, under Rule 12(b)(1), Maxwell bears the burden of establishing jurisdiction by a preponderance of the evidence.[19] When reviewing a challenge to Rule 12(b)(1), a court may consider documents outside the pleadings to assure itself that it has jurisdiction.[20] The court can consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts in the record and the court's resolution of disputed facts.[21]

---

[18] Subject matter jurisdiction is different than in personam jurisdiction. Neither attack here has any merit. The Constitution, Art. I, Sec. 9, Clause 2, provides "The privilege of the Writ of Habeas corpus shall not be suspended ..." Title 28 U.S.C. §2255 and §2241 divide up the responsibilities of particular courts regarding habeas corpus. This Court is both a §2255 court where the habeas claim has to do with conviction or sentence and a §2241 court where the claim has to do with how the sentence is carried out. Multiple circuits have held that where the claim has to do with non-traditional transfer issues or calculation of sentence (good time credits, etc.) §2241 is the proper vehicle. Woodall v. Fed. B. of Prisons, 433 F.2d 235, 243-44 (3d Cir. 2005); c.f. Levine v. Apker, 445 F.3d 71, 78 (2d Cir. 2006); Goldings v. Winn, 383 F.3d 17, 26 (1st Cir. 2004); Wedelstedt v. Wiley, 477 F.3d 1160, 1166 (10th Cir. 2007).

[19] Lujan v. Defs. of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed. 2d 351 (1992).

[20] Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996).

[21] Id. See also Haase v. Sessions, 83 F.2d 902, 906 (D.C. Cir. 1987) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject matter jurisdiction.")

**18)** For our purposes, by its analysis of documents attached to pleadings, the court does not convert the motion into one for summary judgment.[22]

A factual attack involving a 12(b)(1) unaccompanied by supporting evidence, challenges the court's jurisdiction based solely on the pleadings.[23] When, as in this case, the pleadings are accompanied by supporting evidence, a Rule 12(b)(1) motion challenging the Court's jurisdiction is a factual attack.[24] Because Maxwell has submitted volumes of evidence as part of his §2241, the challenge to the court's jurisdiction is factual.[25]

**19)** The statutes, pleadings, and records confer jurisdiction on the Court. Title 28 U.S.C. §2241 gives the district court authority to grant a writ of habeas corpus when a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(3).

**20)** Liberty interests are those (inherent or created by statute) that can be addressed through the administrative remedy

---

[22] Haase, 835 F.2d at 905 ("the plain language of 12(b)(1) permits only a 12(b)(6) motion to be converted into a motion for summary judgment when documents extraneous to the pleadings are considered by the court.")

[23] Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981); Rodriguez v. Tex. Comm'n on the Arts, 992 F.Supp. 876, 878 (N.D. Tex. 1998).

[24] Paterson, 644 F.2d at 523; Rodriguez, 992 F.Supp. at 879.

[25] Elixer Shipping SA v. Perucsahaan Pertambangan Minyak Dan Gas Bomi Negara, 267 F.Supp. 2d 659, 661 (S.D. Tex. 2003).

14

paradigm and then proceed into court.[26]    Multiple circuits have addressed whether §2241 is the proper vehicle to address transfer to halfway house or home confinement.    Maxwell's claims are proper under 28 U.S.C. §2241 because they concern the manner, location, or conditions of the execution of his sentence and not the fact of his conviction or sentence.[27]    Although it is true that the purpose of the writ of habeas corpus is to challenge the fact or duration of confinement and not the conditions of confinement,[28]    the Supreme Court in Preiser v. Rodriguez[29] stated:

> [T]his is not to say that habeas corpus may not also be applicable to challenge such prison conditions. When a prisoner is put under additional or unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody [level] illegal.[30]

Section 2241 is the proper vehicle for challenging the execution or manner in which a sentence is served.[31]    The execution of the sentence includes challenges to the place of imprisonment[32] and prison transfers.[33]

------

[26]  Sandin, 515 U.S. at 477; Wolff, 418 U.S. 534, 41 L.Ed. 2d 935, 975 (1974).

[27]  Tucker v. Carlson, 925 F.2d 330, 331 (9th Cir. 1990).

[28]  Addressing specifically the BOP's arguments therein [PageID## 255-256].

[29]  Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed. 2d 439, n.14 (1973).

[30]  Id. at 494.

[31]  United States v. Peterman, 249 F.3d 458, 461 (6th Cir. 2001).

[32]  United States v. Jalili, 925 F.2d 889, 893 (6th Cir. 1991).

[33]  Jimimian v. Nash, 245 F.3d 144, 146 (2d Cir. 2001).

15

When a prisoner challenges his transfer (or lack thereof) to a halfway house or home confinement under the FSA, that is substantively different than merely transfer between facilities of similar or equal custody (i.e., high security to medium security or low security to camp). The typical transfer is conducted under 18 U.S.C. §3621(b), and requires assessment of the §3621(b)(1)-(5) factors and is not reviewable by a court. 18 U.S.C. §3621(b). But a transfer to halfway house or home confinement under the FSA is different.[34]

21)    There is no inherent constitutional right to placement in any particular prison.[35] The Supreme Court teaches, however, that statutes can create liberty interests that can be protected by §2241. In <u>Sandin</u>[36] the Supreme Court clarified <u>Wolff</u> by noting that the focus (for liberty interest purposes) was on whether the statute alleged to create liberty interests was mandatory or discretionary. The Court discussed the circumstances in which <u>mandatory</u> language in a statute could create an actionable liberty interest. <u>Sandin</u>, 515 U.S. at 479-484. The Court then held:

> Following <u>Wolff</u>, we recognize that states may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also <u>Board of Pardons v. Allen</u>, 482 U.S. 369, 96 L.Ed. 2d 303, 107 S.Ct. 2415 (1987).

---

[34] <u>Woodall v. Fed. B. of Prisons</u>, 433 F.3d 235, 243-44 (3d Cir. 2005).

[35] <u>Kentucky Dep't of Corr. v. Thompson</u>, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed. 2d 506 (1984).

[36] 515 U.S. at 479.

In <u>Allen</u>, the Supreme Court held that mandatory language was paramount. <u>Allen</u>, 482 U.S. at 374, "In deciding that this statute created a constitutionally protected liberty interest," the Court found significant its mandatory language--the use of the word "<u>shall</u>"--and the presumption created that parole release must be granted unless one of four designated justifications for deferral is found.[37]

22)  Circuits have reached the same conclusion, noting the fundamental difference between halfway house and home confinement and confinement behind prison walls.[38]  When we compare the statutes, 18 U.S.C. §3624(g)(2)(A)(i)(II), which identifies the type of activities a prisoner may engage in on home confinement, they are identical to the language of <u>Hernandez v. Campbell</u>,[39] <u>United States v. Hillstrom</u>,[40] and <u>United States v. Latimer</u>.[41] Compare and contrast: (aa) prisoner may leave home to perform a job or job related activity; (bb) evidence based recidivism reduction programming; (cc) community service; (ee) medical treatment; (ff) religious activities; (gg) family activities; [18 U.S.C. §3624(g)(2)(A)(i)(II)] with case law's "employment component, weekend passes, overnight passes or furloughs."

---

[37]  See <u>Greenholtz v. Inmates of the Nebraska Penal Correctional Complex</u>, 442 U..S. 1, 11-12, 60 L.Ed. 2d 668, 99 S.Ct. 2100 (1979); c.f. <u>Hewitt v. Helms</u>, 459 U.S. 460, 471-72, 74 L.Ed. 2d 675, 103 S.Ct. 864 (1983) (In that case the Court held that Pennsylvania's administrative segregation statutes and <u>regulations</u> created a liberty interest because the statute's use of "language of an unmistakably mandatory character.")

[38]  <u>Woodall v. Fed. B. of Prisons</u>, 432 F.3d 235, 243-244 (3d Cir. 2005).

[39]  <u>Hernandez v. Campbell</u>, 204 F.3d 861, 864 (9th Cir. 2000).

[40]  <u>United States v. Hillstrom</u>, 988 F.2d 488 (3d Cir. 1993).

[41]  <u>United States v. Latimer</u>, 991 F.2d 1509, 1513 (9th Cir. 1993).

17

23)    It is important to point out the limiting language as well.    Under 18 U.S.C. §3621(b) the statute provides that "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." (emphasis added)    The Government holds this talisman [PageID# 254].    The problem with the Government's argument in general is that 18 U.S.C. §3621(b) is a single subsection.    The statutory language did not say "subchapter" or "section."    Title 18 U.S.C. §3624 is not the same subsection as 18 U.S.C. §3621(b). Title 18 U.S.C. §3621(h) is not the same subsection as 18 U.S.C. §3621(b).    Title 18 U.S.C. §§3624(c)(1) and (2) are not the same subsections as 18 U.S.C. §3621(b).    Title 18 U.S.C. §3632(a) is not the same subsection as 18 U.S.C. §3621(b).    Title 18 U.S.C. §3624(g) is not the same subsection as 18 U.S.C. §3621(b).    Title 34 U.S.C. §§60541(a)(2)(A) and (g) are not the same subsections as 18 U.S.C. §3621(b).

Congress wrote "under this subsection" and the "this subsection" being referred to is 18 U.S.C. §3621(b).    Transfer decisions under 18 U.S.C. §3621(b) are not reviewable by a court, that is not disputed, but the substantive due process underpinning the methodology used by the BOP to make those transfer decisions is reviewable by the court.    See Levine v. Apker,[42] Goldings v. Winn,[43] and Woodall v. Fed. B. of Prisons.[44]    The BOP cannot even, in good faith, allege that it made an 18 U.S.C. §3621(b)(1)-(5) factor analysis in this case, it did not (as the BOP admitted to the OIG [PageID# 204].    Because John Maxwell, William Maxwell's

---

[42]    Levine v. Apker, 455 F.3d 71, 78 (2d Cir. 2006).

[43]    Goldings v. Winn, 383 F.3d 17, 26 (1st Cir. 2004).

[44]    Woodall v. Fed. B. of Prisons, 432 F.3d 235, 243-44 (3d Cir. 2005).

18

brother, who is identical in every way under the §3621(b)(1)-(5) factor test, has been on home confinement from May 1, 2020, until being placed on supervised release in January of 2022. The BOP §3621(b)(1)-(5) factor test would have required the same result for William Maxwell or otherwise it would be arbitrary and capricious violating substantive due process (arbitrary standards).

**24)** Maxwell makes the same substantive due process argument regarding Paul Manafort and Michael Cohen. They were convicted of similar white collar offenses but received special treatment because of their high social and economic status (or they were not given the mandatory 18 U.S.C. §3621(b) analysis is required by statute). Maxwell's complaint is not the result but the process.[45] (He seeks to be afforded substantive due process.)

---

[45] Typically "the appropriate remedy when an agency exceeds its discretion [Here, failing to perform good a good faith 18 U.S.C. §3621(b)(1)-(5) factor analysis, and using solely the length of time remaining on Maxwell's sentence--violating 18 U.S.C. §3621(b)] is to remand to the agency for further proceedings consistent with the Court's opinion." Bridge v. United States Parole Comm'n, 981 F.2d 97, 105 (3d Cir. 1992) (citing Fed. Pwr. Comm's v. Idaho Pwr. Co., 344 U.S. 17, 20, 73 S.Ct. 85, 97 L.Ed. 15 (1952). See also Reyes v. Fed. B. of Prisons, 2019 U.S. Dist. LEXIS 154910, due process rights were violated ... the federal court does not conduct its own trial ... in such cases, the proper remedy is a curative administrative hearing conducted in accordance with due process requirement.") (internal citations omitted) But that does not mean a federal court lacks the authority to grant the writ and order a prisoner's immediate release. See Bridge, 981 F.2d at 105 (quoting Billiter v. United States Bd. of Parole, 541 F.2d 938, 946 (2d Cir. 1976) ("If the case was before the court on a petition for habeas corpus, it may order compliance within a reasonable period, failing which it may order the petitioner discharged from custody. Mickens-Thomas v. Vaughn, 355 F.3d 294, 310 (3d Cir. 2004). Maxwell, recognizing the constructs of 18 U.S.C. §3621(b) versus a state statute creating liberty interests (like the FSA did in our case) notes the issue to establish jurisdiction for substantive due process under 18 U.S.C. §3621(b). See Wedelstedt v. Wiley, 477 F.3d 1160 (10th Cir. 2007); Levine v. Apker, 455 F.3d 71, 87 (2d Cir. 2006); Woodall v. Fed. B. of Prisons, 432 F.3d 235, 249 (3d Cir. 2005); Fults v. Sanders, 442 F.3d 1088, 1092 (8th Cir. 2006); and Rodriguez v. Smith, 541 F.3d 1180, 1183-1184 (9th Cir. 2008) all holding substantive due process, available under §3621.

**25)**    Maxwell would ask the Court to take judicial notice of United States v. Paul Manafort, Case No. 1:17-cr-80201; before the Honorable Amy Berman.    See    https://ecf.dcd.vs.courts.gov/cgi-bin/DktRpt.pl?144321161794653-L_I_0_I.case (It is believed to bein the District Court of D.C.) and United States v. Michael Cohen, Case No. 1:18-cr-00602-JMF-1; In the United States District Court for the Southern District of New York; Honorable Jesse M. Furman presiding.

**26)**    The BOP acknowledged liberty interest in FSA Time Credits also expressly adds FSA Time Credits to all other "rewards and incentives" to which Maxwell may be eligible.    18 U.S.C. §3632(d)(6).    Other rewards and incentives include regular RRC or home confinement.    See 18 U.S.C. §§3624(c)(1) and (2) and 34 U.S.C. §60541(a)(2)(A).    These include elderly release, 34 U.S.C. §60541(g).    These include the CARES Act.

**27)**    The terms "rewards and incentives" are not defined in the FSA, so we apply their ordinary meaning.[46]    There is no ground to conclude that Congress was unaware of the ordinary definition of "rewards" and "icentives."    The FSA, Pub. L. 115-391 was a complete transformative package modifying all aspects of confinement and pre-release custody for low risk and low needs

---

[46] FDIC v. Meyer, 510 U.S. 471, 477, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994) (noting we interpret a statutory term in accordance with its ordinary meaning when that term is not defined in the statute.) c.f. In re Walter v. Energy, 911 F.3d 1121, 1143 (11th Cir. 2018) ("To determine the ordinary meaning of a term, we often look to dictionary definitions for guidance.") Scalia & Garner, Reading Law: The Interpretation of Legal Texts 69 (2012) ("Words are to be understood in their ordinary, every day meanings--unless context indicates that they bear a technical sense.")

20

<u>eligible inmates</u>. The context and purpose of the FSA was expressly to send these inmates home or to a halfway house.[47]

The term "incentive" means "a thing that motivates or encourages one to do something." New Oxford American Dictionary, 3rd Ed. (2010), p.878. The term "reward" means "a thing given in recognition of one's service, effort, or achievement." <u>Id</u>. p.1496.

28) The BOP incentivizes virtually everything. See Director Memo [PageID## 172-175]. The first factor the BOP instructs to be considered under the CARES Act is the "inmate's institutional discipline history for the last twelve months." [PageID# 172] Next, consideration is on the inmate's PATTERN Score [PageID# 172]. Maxwell's PATTERN Score [PageID# 121] has several sections regarding inmate conduct in prison (See No. 5: History of Escapes; No. 9: All incent reports; No. 10: Serious incident reports; No. 11: Time since last incident report; No. 12: Time since last serious incident report; No. 13: FRP status; No. 14: Programs completed; No. 15: Work programs. Next, see 18 U.S.C. §3632(a)(5)(A) (all prisoners at each risk level have a meaningful opportunity to reduce their classification during their period of incarceration); see 34 U.S.C. §60541(g)(5)(A)(v) (no history of escape).

---

[47] The FSA modified 18 U.S.C. §3624(b) (extending the good time credits from (the BOP-interpreted) 47 days per year to 54 days per year). It modified 18 U.S.C. §3624(c)(2) demanding that low risk and low needs inmates spend the maximum amount of time in home confinement. It added 18 U.S.C. §3624(g) implementing the FSA time credits. It added 18 U.S.C. §3632 creating the "needs and assessment system" to be applied in 18 U.S.C. §3624(c)(2) and §3624(g). It reauthorized 34 U.S.C. §60541(a)(2)(A) and (g) and modified the elderly and terminally ill inmate release program. It modified the compassionate release program in 18 U.S.C. §3582. In short, in bright flashing neon signs it said, "send low risk and low needs inmates to home confinement after calculating their sentence using §3632 methodology and add this calculation to any other rewards and incentives to which an inmate <u>may</u> be eligible." 18 U.S.C. §3632(d)(6).

The BOP removes halfway house and home confinement as part of the disciplinary process to promote good behavior.  28 CFR §541.3 (recommend parole recision or retardation, loss of good time, halfway house or home confinement).

29)    The FSA changes created a second, non-discretionary transfer methodology.  FSA elgigle inmates are governed in part by 18 U.S.C. §3621(b) during their early days of incarceration and by 18 U.S.C. §3632(a); §§3624(c) and (g); and 34 U.S.C. §§60541(a)(2)(A) and (g), for up to the last fifty percent (50%) of their term of incarceration--considering 18 U.S.C. §3632(d)(6). There is no other way to read the plain and unambiguous language of Congress in the FSA in harmony with each statutory section of prerelease custody.   (See 18 U.S.C. §§3624(c)(1), (2), and (g); §3632(d)(4); 34 U.S.C. §§60541(a)(2)(A) and (g)).

30)    Controlling in the Fifth Circuit, pre-FSA, is <u>Preiser v. Rodriguez</u>,[48] <u>Jackson v. Johnson</u>,[49] and <u>Cook v. TDCJ Transitional Planning Dept.</u>,[50] all, on consideration of the plain and unambiguous language of the FSA, allow challenge via §2241 to the denial of liberty interests in the FSA Time Credits.

31)    The BOP challenges "phone minutes and commissary." [PageID# 253]  Maxwell does not seek relief for these.  The FSA

---

[48]  <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 500 (1973).

[49]  <u>Jackson v. Johnson</u>, 475 F.3d 261, 263 n.2 (5th Cir. 2007).

[50]  <u>Cook v. TDCJ Transitional Planning Dep't</u>, 37 F.3d 166, 168 (5th Cir. 1994).

22

section that addresses "phone minutes" and "commissary" (18 U.S.C. §§3632(d)(1) and (3)(A)) are part of the overall incentives to which Maxwell is entitled. Maxwell's transfer to halfway house ("RRC") and home confinement under the FSA is governed (in part) by the same statutory language. See 18 U.S.C. §§3632(d)(2) and (3)(C), and are noted solely for reference.

32)    This national union veto is a stunning revelation--that 60,000 inmates are languishing in prison instead of halfway house or home confinement because of this national union veto.[51] This is the basis of the suit, not phone minutes or commissary.

33)    Maxwell's challenge to the BOP's acknowledged failure to apply earned FSA Time Credits fall squarely within the §2241 jurisdiction of the court. See Levine v. Apker, 455 F.3d 71, 78 (2d Cir. 2006); c.f. Goldings v. Winn, 383 F.3d 17, 26 (1st Cir. 2004); Woodall v. Fed. B. of Prisons, 432 F.3d 231, 243-44 (3d Cir. 2005) all discussing authority to proceed under §2241.

## III.    RESPONSE TO 12(b)(6) AND MOTION FOR SUMMARY JUDGMENT

34)    Dismissal under 12(b)(6) is appropriate where the complaint fails to state a claim and it "appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." "Such dismissal is also appropriate where the plaintiff's allegations are conclusory or where the complaint shows that relief is barred by affirmative

--------

[51] See page 204. "However, we [OIG] found that the BOP has not applied such statutorily earned time credits to any of the approximately 60,000 eligible inmates who may have completed EBRR [Evidence-Based Recidivism Reduction] programs or productive activities."

defense.   [Doc. 8: PageID# 250] (case citations omitted).   This is the basis of the Government's 12(b)(6).   There are occasions where 12(b)(6) can convert to summary judgment.

In a ruling on a motion to dismiss for failure to state a claim, the Court must test the factual sufficiency of the statement of the claims for relief.   See <u>Doe v. Hillsboro ISD</u>.[52]   All well-pleaded facts must be adopted as true and viewed in the light most favorable to the plaintiff.   <u>Spivey v. Robertson</u>,[53] <u>Hillsboro ISD</u>.[54]

A Rule 12(b)(6) should be granted when the complaint lacks a cognizable legal theory or fails to set forth facts to support a legal theory.   The Court should dismiss only if the Court can determine with certainty that Maxwell cannot pursue any set of facts that would allow relief under the allegations in the complaint.   <u>Hishon v. King & Spalding</u>.[53]

Finally, as a pro se plaintiff, Maxwell is afforded broad latitude under <u>Haines v. Kerner</u>.[56]

**35)**   As its sole affirmative defense, the BOP asserts failure to exhaust [PageID## 251-253].   As noted herein, Maxwell exhausted <u>all</u> his administrative remedies to all his claims [PageID## 350-351].

---

[52]   <u>Doe v. Hillsboro ISD</u>, 81 F.3d 1395, 1401-02 (5th Cir. 1996).

[53]   <u>Spivey v. Robertson</u>, 197 F.3d 772, 774 (5th Cir. 1997).

[54]   <u>Hillsboro ISD</u>, 81 F.3d at 1401-02 (citing <u>Campbell v. City of San Antonio</u>, 43 F.3d 973, 975 (5th Cir. 1995)).

[55]   <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73, 104 S.Ct. 2229, 581 L.Ed. 2d 59 (1984).

[56]   <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21, 30 L.Ed. 2d 652, 92 S.Ct. 594 (1972).

36)    In the alternative, the Fifth Circuit has recognized that an inmate can be excused from the exhaustion requirement under certain circumstances, <u>Days v. Johnson</u>.[57]    The exhaustion requirement may be subject to certain defenses such as waiver, estoppel, or equitable tolling.[58]    The Fifth Circuit has recognized as a basis for excuse, circumstances where administrative remedies are inadequate because prison officials have ignored or interfered with a prisoner's pursuit of an administrative remedy.[59]    Further, exhaustion requirements may be excused where dismissal would be inefficient or would not further the interests of justice or the purpose of the exhaustion requirement.[60]

37)    Initially, the BOP's affirmative defense is bare--it has no factual foundation to support its allegation of failure to exhaust.   Mr. Thornton's affidavit is insufficient on its face and in bad faith and Maxwell objects for the reasons below.

38)    Maxwell has previously asserted the affirmative defenses of waiver, admission, and estoppel.   See Maxwell's administrative remedies filing [PageID# 351] ("Maxwell expressly asserts waiver (on all grounds not previously raised with counsel).   Maxwell expressly asserts admission.   The BOP, throughout the process has

---

[57] <u>Days v. Johnson</u>, 322 F.3d 863, 866 (5th Cir. 2003) ("In this Circuit, a strict approach" is taken to the exhaustion requirement).

[58] <u>Id.</u> (quoting <u>Wendell v. Asher</u>, 162 F.3d 887, 890 (5th Cir. 1988) (overruled by implication on other grounds by <u>Jones</u>, 127 S.Ct. at 920-21); see <u>Wright v. Hollingsworth</u>, 260 F.3d 357, 358 n.2 (5th Cir. 2001)).

[59] <u>Holloway v. Gunnell</u>, 685 F.2d 150, 154 (5th Cir. 1982).

[60] <u>Underwood v. Wilson</u>, 151 F.3d 292, 296 (5th Cir. 1998) (overruled by implication on other grounds by <u>Jones</u>, 127 S.Ct. at 920-21).

25

made   multiple   admissions   and   Maxwell   does   not   waive   these admissions").[61]

    **39)**   <u>Response   to   Failure   to   Exhaust</u>.   In   support   of   its affirmative   defense,   the   BOP   posits   the   affidavit   of   Justin Thornton   [PageID## 264-266].   Thornton   states:   "I   am   currently assigned   as   the   Acting   Executive   Assistant   at   the   Federal Correctional   Complex   ('FCC Beaumont')   Beaumont,   Texas."   [PageID# 264]   Initially,   Justin   Thornton   took   over   in   2022   as   "Acting Executive   Assistant"   and   throughout   Maxwell's   administrative remedy   process   (prior   to   November   15,   2021)   Mr.   Thornton   worked   at facilities   at   FCI-Beaumont-Low   and   has   no   first-hand   knowledge   to anything   involving   Maxwell's   administrative   remedy.[62]   Maxwell objects   to   Thornton's   hearsay   testimony   [PageID# 264]   ("...   on   the basis   of   information   acquired   by   me   through   the   performance   of   my official   duties.")   Maxwell   further   objects   to   the   designation   of Thornton   as   an   expert   witness   (which   would   allow   him   to   rely   on hearsay   statements).   See   F.R.E.   701   et   seq.   and   F.R.E.   801   et seq.   (No   hearsay   exception   applies,   nor   is   one   asserted   by   the BOP.)[63]

    Next,   Thornton   opines   that   he   relies   for   his   testimony   on:

---

[61] Maxwell asserted waiver and admission in his administrative remedies [PageID# 351]. Not at any stage did the BOP contest Maxwell's filings and claims. See [PageID## 350-351], [PageID# 345], [PageID## 334-335], [PageID# 332-333]. Waiver attached.

[62] Maxwell's response is verified, based on first-hand knowledge. Maxwell is housed in Unit T-A with the majority of facility workers at FCI-Beaumont-Low. Additionally, due to Maxwell's employment in the law library assisting inmates with all legal matters, he has general knowledge of staff and their current positions at FCI-Beaumont-Low. Maxwell has been continually employed at FCI-Beaumont-Low for seven (7) years.

[63] To the extent the BOP replies with an expert designation, Maxwell seeks a <u>Daubert</u> hearing with the opportunity to depose the expert here at the prison, as Maxwell could not, absent a writ from the Court, appear and cross the expert at the hearing--which would have to be done by submission.

26

"The statements I make hereinafter are made on the basis of my review of the official files and records of the BOP, my own personal knowledge <u>or</u> on the basis of information acquired by me through the performance of my official duties." (emphasis added) [PageID# 264]

Maxwell would object, as demonstrated hereunder; Thornton has no personal knowledge, his testimonial statements are controverted by the documents attached to his affidavit, his statements are hearsay, and fall within the ambit of declarations determined by the rules (Rule 56) as bad faith. See <u>infra</u>.

Of particular interest is Thornton's statements in ¶¶5-9 [PageID## 267-268]. In ¶9, Mr. Thornton asserts:

"The records appear to indicate inmate Maxwell has exhausted his administrative remedies in regards to his request for home confinement placement under the CARES Act. However, there are no records to indicate Maxwell exhausted, nor ever attempted to exhaust, any of his other claims regarding the First Step Act ('FSA'), including FSA time credits as related to participation in productive activities, preferential housing units ... or his transfer to halfway house as a result of successful participation." [64] [PageID# 266]

---

[64] Maxwell excludes the language on phone minutes or expanded commissary, as he does not seek relief thereon herein. They are referenced in the petition and memorandum in support as points of reference. See 18 U.S.C. §3632(d)(1); §3632(d)(2); §3632(d)(3)(C); §3632(d)(3)(A). The BOP is doing <u>nothing</u> to include transfer to halfway house under 18 U.S.C. §3632(d)(2) and §3632(d)(3)(C). Halfway house is undisputedly a BOP facility.

27

Attached to Thornton's affidavit is [PageID## 350-351], one of Maxwell's administrative remedy filings. After complaining of the BOP's bad faith and obstruction, Maxwell notes (with emphasis added in the original) on [PageID# 351]:

> "Maxwell reasserts his rights for substantive due process relief previously raised in his BP-8, BP-9, BP-10, and by counsel. These include relief under 18 U.S.C. §3621; §3624; 34 U.S.C. §60541; and the modifications made thereto under the CARES Act of 2020 and the First Step Act of 2018 and the Second Chance Act of 2018 (reauthorized and modified by the First Step Act of 2018.)" (emphasis in original)

Thornton's statements under oath that he "reviewed the official files and records of the BOP" and "there are no records to indicate inmate Maxwell exhausted, nor ever attempted to exhaust, any of his other claims regarding the First Step Act ..." are patently false. His own records demonstrate the falseness and bad faith of the declaration.

Maxwell moves to strike the testimonial portion of the declaration if it is not withdrawn. Maxwell does not object to the documents attached thereto.

There are other examples of improper conduct by the BOP, but under the standards for 12(b)(6), this is sufficient to defeat the BOP's affidavit in support.

**40)** Next, Thornton's affidavit fails as a matter of law, besides being actionably false. As noted _supra_, and assuming good

28

faith (in _arguendo_), and that he was only willfully blind,[65] the documents attached to the affidavit make the affidavit not admissible for 12(b)(6) or summary judgment. The affidavit is also insufficient as an equivocal averment.

Thornton's statement, "The records appear to indicate Maxwell has exhausted his administrative remedies ..." (emphasis added) [PageID# 266] is equivocal and will not support any Rule 12(b)(1), 12(b)(6), or Motion for Summary Judgment. See Fed.R.Civ.P. 56(c)(4) (An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set of facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated). Id. "[I]t is not enough to merely state that the affidavit is based on personal knowledge, it must be clear that it is also based on the facts alleged in the affidavit." Floyd v. Chilly's LLC of Alabama.[66] "Unsubstantiated assertions, impossible inferences, and unsupported speculation are not competent summary judgment evidence."[67] (Thornton's affidavit is pure false speculation.)

Thornton's sworn statements in his affidavit [PageID## 265-266] are directly impeached by the documents (to include [PageID## 350-351], attached thereto). The BOP's pleadings are therefore bare, as Thornton's testimonial statements must be struck, and the Thornton documents support Maxwell's pleadings.

------------------------------

[65] The jury instruction for which Maxwell was (allegedly) convicted.

[66] Floyd v. Chilly's LLC of Alabama, 2017 WL 1455024, at *3 (M.D. LA, Apr. 21, 2017) (citing Bright v. Ashcroft, 254 F.Supp. 2d 494, 498 (E.D. LA, Feb. 11, 2003) ("A declarant must provide evidence to establish that he has personal knowledge of the facts stated.")

[67] Id. (citing Walker v. S.B.C., Serv., Inc., 375 F.Supp. 521, 535 (N.D. Tex., June 2, 2005); c.f. Ripple v. Marble Falls Indep. Sch. Dist., 99 F.Supp. 3d 662, 673 (W.D. Tex. 2015).

Under the 12(b)(6) standards, viewed from Maxwell's prospective, the BOP's affirmative defense is meritless.

**41)** The administrative remedy paradigm requires the BOP to reject any filing that is not proper. See 28 CFR §542.14(c)(2) ("The inmate shall place a single complaint or a reasonable number of closely related issues on the form. If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue"). No such rejection was ever made--all of Maxwell's administrative remedies were filed--and as Maxwell complained throughout--not addressed [PageID## 350-351] [PageID## 346-349] [PageID## 332-333].

No BOP officer at Central or Region addressed his complaints nor Maxwell's FSA requests. [PageID## 286-287] (Warden's false statements about Maxwell being convicted of a violent crime and not having a medical condition); [PageID# 331] (region office removing the medical denial basis, but continuing the lie on violence) [PageID# 345] (affirming).

As to the Warden's medical lie [PageID## 286-287] ("nor are you identified as an at-risk inmate per any medical condition by the Health Service Department"), now see [PageID# 310] (Warden's designation of maxwell being high risk). Now see BP-A0210 [PageID## 360-361] "and the medical staff at FCI-Beaumont have determined he is an 'at risk vulnerable inmate.'"

As to the Warden's lie about Maxwell having a violent conviction [PageID# 287] (You were denied based on your prior

30

history of violence), now see BP-A0210 form [PageID## 360-361] ("His criminal history and inmate disciplinary record reveal no charges or <u>convictions involving violence</u>, escape or sexually related offense.") [PageID# 361]. Now see Maxwell's PATTERN Score (referenced in all three denials) [PageID## 286-287] [PageID# 331] [PageID# 345]. Category No. 3 No violent offense; No. 4 no criminal history; No. 5 no history of violence; Nos. 9-12 no incident reports--violent or otherwise). Now see Court transcript [PageID# 356] ("There is no evidence that any defendants other than Scarfo and Pelullo was associated with any organized crime organization. You should not consider any of the evidence regarding La Cosa Nostra against any defendants other than Scarfo or Pelullo.") Now see documents stripped away, by the BOP, from Maxwell's administrative remedy [PageID# 179] ("The government [is] not contending that Mr. Maxwell is either a flight risk or a danger [to the community]"--stipulation by the government) (emphasis added).

And yet the Warden knowingly lied in his response to Maxwell and the Regional Director and Central Office perpetuated the lie. See [PageID# 287] [PageID# 331] [PageID# 345].

Further still, Maxwell's brother with the identical crime, identical 18 U.S.C. §3621(b)(1)-(5) factors analysis has been on home confinement since May 1, 2020 (See [PageID# 21].) Even further still, see Warden's response to counsel [PageID## 340-341]. There is no allegation about Maxwell's lack of medical issue or conviction of violence contained therein. (See John Maxwell's affidavit attached hereto.

31

42)    Maxwell asserted waiver in his administrative remedy [PageID# 351] and asserts it again herein to all BOP responses that are different than those given to counsel [PageID## 340-341].

43)    Maxwell asserted the affirmative defense of admission. The government made the following admissions:  [PageID## 360-361] (Maxwell qualified under FSA and Elderly inmate); [PageID# 359] (Maxwell has no risk of violence) see also [PageID## 360-361]; [PageID# 310] (Maxwell is an at risk inmate) see also [PageID## 360-361]; [PageID# 341] [PageID# 359] (Admission by omission) (no violence or risk of recidivism inmate); [PageID## 219-221] (Fed. Reg., attached) (Maxwell has a liberty interest in FSA time credits); [PageID# 204] (BOP has not applied FSA time credits to inmates during the administrative remedy time frame); [PageID## 204-206] (BOP had not applied any incentives and rewards to include an inmate's transfer closer to inmates' residence, or preferred housing units [to include transfer to RRC]).[68]

Maxwell asserts admission (and previously asserted admission [PageID# 351]) and objects to the BOP taking any factual position to the contrary.  For example, [PageID# 260] the BOP's allegations that an individualized review was performed.  But as the OIG noted [PageID# 204], no such individualized FSA review was ever performed (as of Nov. 15, 2021) on 60,000 inmates, including Maxwell (making the statement to the Court or to the OIG materially exclusive).

Maxwell asserts the affirmative defense of admission and requests a ruling.

--------------------------------------------------

[68] Maxwell files a separate document listing all the public admissions made in official documents, binding the BOP under Tibble, supra.  Maxwell requests judicial notice of the Court's file.

32

44)    Rule 56 provides that Summary Judgment is proper "if movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(a).    A fact is material if it could affect the outcome of the case under governing law.    Anderson v. Liberty Lobby,[69] Instone Travel Tech Marine & Offshore v. Inter. Shipping Partners.[70]    The purpose of summary judgment is to isolate claims or defenses.    Celotex v. Catrett.[71]    A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."    Anderson, 477 U.S. at 248; Instone Travel Tech, 334 F.3d at 427.

45)    Initially, perhaps based on the §2241 form or poor drafting on Maxwell's part, Maxwell has somehow confused the AUSA as to Maxwell's relief sought in §2241.    Maxwell seeks transfer to RRC or home confinement under the FSA, the CARES Act, the Second Chance Act, and the declarations of law that are required to substantiate his requested relief.    The statutory authority for these requests are found at 18 U.S.C. §3621, 18 U.S.C. §3624, and 34 U.S.C. §60541, as noted in Maxwell's administrative remedy requests [PageID## 350-351].    Maxwell also asserted affirmative defenses in his administrative remedies, to include admissions and waiver.    Maxwell adds the affirmative defense of estoppel, as well, herewith.

---

[69] Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

[70] Instone Travel Tech Marine & Offshore v. Inter. Shipping Partners, 334 F.3d 423, 427 (5th Cir. 2003).

[71] Celotex v. Catrett, 477 U. S,317, 323-24 (1986).

33

Under 18 U.S.C. §3621(b)(1)-(5), Maxwell seeks substantive Due Process relief regarding the evaluation the BOP must conduct when determining whether to transfer him to halfway house (Residential Reentry CEnter ["RRC"]). As the documents attached to Maxwell's pleadings, the BOP's pleadings, and public admission in documents demonstrate (as discussed herein), the BOP violated Maxwell's substantive due process rights and Maxwell seeks declarations thereon.

Under 18 U.S.C. §3624, two (2) different subsections provide for the implementation of the FSA. Subsection 18 U.S.C. §3624(c)(2) provides that low risk and low needs inmates "shall" be placed in home confinement for the maximum amount of time provided under this paragraph. The definition of low risk and low needs is defined by the "System" created in 18 U.S.C. §3632(a). The language "low risk and low needs" in 18 U.S.C. §3624(c)(2) was created and added in the First Step Act (Pub..L. 115-391, Section 602 and Section 101 created the System).

Second, 18 U.S.C. §3624(g) provides for the application of earned time credits under the FSA (18 U.S.C. §§3632(d)(4)(A) and (C)).

Third, 18 U.S.C. §3632(d)(6) provides that the FSA Time Credits are in addition to all other rewards and incentives, which includes 18 U.S.C. §3624(c)(2) (see 34 U.S.C. §60541(a)(2)(A) and 34 U.S.C. §60541(g)).

46) Next, Maxwell seeks relief under 18 U.S.C. §§3632(d)(2) and (3)(C), which provide for transfer to halfway house for participation in Evidence-Based Recidivism Reduction ("EBRR") Programs and Productive Activities ("PA"). (Good faith consideration.)

34

**47)** Finally, Maxwell seeks all necessary declarations and supporting relief to enable the Court to make these determinations.

Included in these declarations is the determination of whether the BOP's transmorphing of the statute's mandatory "shall" to language the permissive "may" in its final rules codifying the FSA Earned Time Credits (Fed. Reg. / Vol. 87, No. 12 / Wed., Jan. 19, 2022) violates Chevron or the newly released West Virginia v. E.P.A. Additionally included is the determination of whether the plain and unambiguous language of the statute means what it says. For example, the BOP rewrites, in its rule, the statute (18 U.S.C. §3632(d)(4)(B)) to include productive activities--which it does not. The BOP also rewrites the statute, in its final rules, (18 U.S.C. §3632(d)(4)(B)) to include EBRR programs begun before the enactment of the FSA (December 21, 2018), but not completed until after December 21, 2018--which it does not. These are but a few of the necessary declarations the Court must make herein.

The BOP's argument at [PageID# 254] that: "Federal statutes provide the BOP 'unfettered authority to decide where to house federal prisoners,'" citing cases from 2002, 1976, and 1987 notwithstanding, the FSA eliminated that unfettered discretion when it comes to placement of inmates into prerelease custody. The FSA defines what prerelease custody is and the methodology the BOP shall use for that placement. See 18 U.S.C. §3632(d)(4)(A); 18 U.S.C. §3632(d)(6); and 18 U.S.C. §3624(g); and 18 U.S.C. §§3624(c)(1) and (2).

35

**48)**   Next, the BOP urges that "in passing the FSA, upon which Petitioner attempts to rely, Congress affirmed it did not intend to strip the BOP of its placement discretion: '[n]ot withstanding any other provision of law, a designation of place of imprisonment **UNDER THIS SUBSECTION** is not reviewable by any court.'"  18 U.S.C. §3621(b)(5) [sic].[72]  The statute is exactly the opposite of what the BOP urges.  The correct reading is that the BOP retains unfettered discretion solely on transfers made pursuant to 18 U.S.C. §3621(b), but not under any other section, subchapter, or subsection.  See arguments, supra.

There is a line of cases that hold: "Any approach that puts the judicial branch in charge of designating the place of confinement for a federal prisoner--no matter how well justified on utilitarian grounds--collides with 18 U.S.C. §4082(b) [Nov. 18 U.S..C. §3621(b)] which gives the Attorney General unfettered discretion to decide where to house federal prisoners."  See In re Gee, 815 F.2d 41, 42 (7th Cir. 1987).  This argument is hand-in-hand with the "no due process violation" argument because an inmate has no inherent due process right in his place of housing. Assaad v. Ashcroft, 378 F.3d 471, 475 (5th Cir. 2004) (internal quotations omitted).

**49)**   This case turns not on whether Maxwell has an inherent due process right, but on whether the one hundred and twelve (112) times Congress used the mandatory language "shall" to instruct the BOP to place inmates in halfway house or home confinement, and how to do so, created a liberty interest by statute as described in

---

[72]  18 U.S.C. §3621(b)(5) reads: "any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28."

36

<u>Sandin</u> and <u>Wolff</u>. <u>That fact is now confessed by the BOP</u> in its CFR filings on January 19, 2022.

Here, the First Step Act's use of mandatory language can leave no doubt that, under <u>Sandin</u> and <u>Wolff</u>, it created a statutory liberty interest in an inmate's transfer to pre-release custody (outside prison walls) for earned FSA Time Credits.

50)   Ironically, for the BOP, no statute discussed by the Court in <u>Sandin</u> (or any other case) was so dominated in mandatory language as the FSA is so dominated.  Nor had any agency (BOP or a State Dep't of Corrections) confessed in any public filing the existence of a protected liberty interest--the way the BOP has in 28 CFR 523.40-44 (preamble and comments and responses) (Exhibit 1, p.2716).

51)   The BOP's syllogism regarding 18 U.S.C. §3621(b) is exactly the opposite of what Congress did.  In <u>Cuzzo Speed Tech, LLC v. Lee</u>,[73] Justice Alito writes: "Language is not superfluous when it removes any doubt about a point that might otherwise be unclear."  (citations omitted).  It is a "cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous."  See <u>Duncan v. Walker</u>,[74] Justice Scalia, in his premier treatise on statutory construction[75] writes, "If possible, every word and every provision is to be given effect

---

[73] <u>Cuzzo Speed Tech, LLC v. Lee</u>, 579 U.S. 261, 294, 136 S.Ct. 2131, 195 L.Ed. 2d 423 (2016) (Alito, J., concurring in part and dissenting in part); c.f. <u>Microsoft Corp. v. i4i Ltd.</u>, 564 U.S. 91, 106, 131 S.Ct. 2238, 180 L.Ed. 2d 131 (2011).

[74] <u>Duncan v. Walker</u>, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed. 2d 251 (2001).

[75] Scalia & Garner, Reading Law: The Interpretation of Legal Texts 174 (2012).

37

... None should be ignored. None should needlessly give an interpretation that causes it to duplicate another provision or to have no consequence."

Here, the BOP urges that the phrase "under this subsection" in 18 U.S.C. §3621(b) eliminates the dozens of mandatory pronouncements in the FSA, making substantially the entire act, all one hundred and twelve (112) mandatory provisions, discretionary or illusory.

This reading is ludicrous. The First Step Act did not convert 18 U.S.C. §3621(b) into a subsection that swallowed the entire FSA subchapter (18 U.S.C. §3631 et seq.); that swallowed 18 U.S.C. §3624; that swallowed title 34 U.S.C. §§60541(a)(2)(A) and (g). Rather, it preserved the 18 U.S.C. §3621(b)(1)-(5) factor analysis for all prisoners who are not eligible under FSA for transfer into pre-release custody at an earlier date as determined by 18 U.S.C. §3631 et seq. (FSA); 18 U.S.C. §3624; 34 U.S.C. §60541.[76]

53) <u>Time Credits</u>. The BOP's arguments on "FSA Time Credits" prior to December 2018 require the Court to ignore the plain reading of the statute, and to insert the words "productive activities" into 18 U.S.C. §3632(d)(4)(B).

Maxwell's positions start, as all statutory interpretations start, with the language of the statute. <u>Levine v. Apker</u>,[77] <u>Hughes Aircraft Co. v. Jacobson</u>.[78] The statute reads:

---

[76] Because the BOP's reading of "under this subsection" of 18 U.S.C. §3621(b) is so meritless given the FSA language, Maxwell does not address the absorption of 18 U.S.C. §3582--also modified under the FSA, thereby.

[77] <u>Levine v. Apker</u>, 455 F.3d 71, 80 (2d Cir. 2006).

[78] <u>Hughes Aircraft Co. v. Jacobson</u>, 525 U.S. 432, 438, 142 L.Ed. 2d 881, 119 S.Ct. 755 (1999).

38

"(B)    Availability.    A prisoner may not earn time credits under this paragraph for an <u>evidence-based recidivism reduction program</u> that the prisoner successfully <u>completed</u>--

    (i)    prior to the date of enactment of this subchapter[79] [enacted Dec. 21, 2018]; or

    (ii)    during official detention prior to the date that the prisoner's sentence commences under section 3585(a) [18 U.S.C. §3585(a)] (emphasis added).[80]

As the Supreme Court teaches in <u>Chevron U.S.A. v. National Resources Defense Co., Inc.</u>,[81] "if the intent of Congress is clear, that is the end of the matter, for the Court, as well as the agency, must give effect to the unambiguous expressed will of Congress."    To determine whether Congress' intent is clear, the Court applies traditional tools of statutory construction.    <u>Nevada v. U.S. Dep't of Labor</u>, 218 F. Supp. 3d 520, 528 (E.D. Tex. 2016).

**53)**    The term "<u>productive activities</u>" does not appear anywhere in 18 U.S.C. §3632(d)(4)(B).    The BOP defines productive activities as an assigned prison job.    (See Exhibits ____).    The BOP also considers a prison job an evidence based recidivism reduction program.    See 18 U.S.C. §3635(3)(c)(xi):

---

[79] Note the ability of Congress to distinguish between "subchapter" or "section" or "subsection." Another clarification that <u>18 U.S.C. §3621(b) is a subsection,</u> not an overarching statutory black hole.

[80] Note the ability of Congress to distinguish between the pre-release "subchapter" in the FSA (18 U.S.C. §3632(a)); various sections under the FSA (18 U.S.C. §3632(d)(4)(B)) and subsection--as referenced in 18 U.S.C. §3621(b).

[81] <u>Chevron U.S.A. v. National Resources Defense Co., Inc.</u>, 467 U.S. 837 843 (1984).

"(may include--)

    (xi)  a prison job, including through a prison work program;

54)  Next, the plain language of 18 U.S.C. §3632(d)(4)(B) does not impose <u>any</u> restrictions on productive activities--being completed or considered prior to the enactment of the FSA (December 21, 2018).

55)  Additionally, the plain language of the statute 18 U.S.C. §3632(d)(4)(B) allows earned time credits, prior to December 21, 2018, on EBRR programs begun before December 21, 2018, and that ended after December 21, 2018.

The BOP in 28 CFR §523.42(b) tries to rewrite the statute. It writes: "(b) Dates of participation in EBRRs <u>or PAs</u>." Productive Activities are not excluded in 18 U.S.C. §3632(d)(4)(B). This addition of productive activities is improper under <u>Chevron</u>, <u>West Virginia v. E.P.A.</u>, and standard statutory interpretation.

56)  Under the tools of statutory construction when analyzing "statutory [language] [we] must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."[82] Courts will also interpret statutes so that "if it can be prevented, no clause, sentence, or word shall be superfluous, void or insignificant."[83] Another canon of statutory construction provides that "a negative inference may be drawn from the exclusion of

---

[82] See <u>Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.</u>, 469 U. S. 189, 194, 105 S.Ct. 658, 83 L.Ed. 2d 582 (1985).

[83] <u>TRW, Inc. v. Andrews</u>, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed. 2d 339 (2001).

40

language from one statutory provision that is included in other provisions of the same statute." Hamden v. Rumsfeld.[84]

57) Applying the Court's teachings here to 18 U.S.C. §3632(d)(4)(B), the answer is plain. The combination of EBRR programming and productive activities appear in concert together throughout the FSA. See 18 U.S.C. §3631(b)(2); §3632(a)(5); §3632(a)(6); §3632(b); §3632(d)(4)(A); §3632(d)(4)(C); §3632(d)(5); §3632(d)(6); §3632(e); §3633(a)(2); §3634(a)--to note only a few examples from the FSA--but not in 18 U.S.C. §3632(d)(4)(B). Productive activities are not excluded under §3632(d)(4)(B) as EBRR programs that have been completed are, from applying retroactively, prior to December 21, 2018.

58) The BOP attempts to rely on United States v. Weaver, 2022 WL 350719 (E.D. Mich., Feb. 3, 2022) (unpublished), and opines that "Weaver specifically addressed the petitioner's request to be granted credit towards pre-release custody for having 'worked approximately 200 hours.'" [PageID# 255] Weaver is a compassionate release case under 18 U.S.C. §3582(c)(1)(A). As part of the grounds for compassionate release, Weaver asserted rehabilitation, to include 200 hours of evidence based recidivism reduction programming completed prior to the enactment of the FSA in December 2018. Id. at 3-4. The Court wrote, "Congress did not make the statute [relating to programming] retroactive beyond this date," addressing completed "evidence based recidivism reduction programs." Id. The Court was expressly relying on completed "evidence based recidivism reduction programs" and not productive

---

[84] Hamden v. Rumsfeld, 548 U.S. 557, 578, 126 S.Ct. 2749, 165 L.Ed. 2d 723 (2006).

41

activities for its analysis. Maxwell agress that EBRR programs _completed_ before December 21, 2018, are not retroactive. Maxwell's claims are about _productive activities_ and EBRR programs _not completed_ prior to December 21, 2018.

The Court in _Weaver_ went on to note, "more importantly, the Code of Federal Regulations that Weaver relies on ... [does not pertain] ... to decisions the Court makes in conjunction with motions for sentence reduction." (And that CFR regulation was replaced by the final rule 28 CRF §523.40-44) (Attached hereto as Exhibit 1).

59) BOP's equal protection. "Respondent['s] ... construing this allegation as a denial of equal protection" [PageID# 256] does not make it so. Maxwell's complaints regarding the different treatment of his brother (who is in all ways identical) and Cohen and Manafort is based solely on substantive due process. Cohen, Manafort, and John Maxwell were housed at different BOP institutions. It is alleged that other BOP institutions, have on occasion, properly applied the law [substantive due process] and that FCI-Beaumont did not. This is expressly a substantive due process allegation.

60) Due Process Violation. The BOP is simply wrong. Maxwell's claims, as noted in his administrative remedy claims—that neither Thornton reads—nor the BOP, apparently, addressed fully _infra_ are: (1) Maxwell's assertion of waiver and admission and estoppel, are Maxwell's affirmative defenses; (2) "substantive due process" relief "previously raised in his BP-8, BP-9, BP-10, BP-11 and by counsel; (3) These include relief under 18 U.S.C. §3621 [all subsections]; (4) §3624 [all subsections, which

42

incorporate 18 U.S.C. §3632]; (5) 34 U.S.C. §60541 [all subsections]; (6) and the modifications made thereto under the CARES Act of 2020; and (7) the First Step Act of 2018; and (8) the Second Chance Acct of 2018 (reauthorized and modified by the First Step Act of 2018)." [PageID# 351][85]   Maxwell told the BOP this expressly in his administrative remedy request.   The BOP did not read it, did not respond to it, ignored it, lied about it, and came to Court and alleged it did not even exist.

61)   None of the BOP's arguments are germane to the issues at hand.   The 18 U.S.C. §3621 analysis is separate and different from the 18 U.S.C. §3624(c) analysis under the CARES Act.   And those are different from 18 U.S.C. §3632(a) and 18 U.S.C. §3624(g) analysis.   And those are different from the 34 U.S.C. §§60541(a)(2)(A) and (g) analyses.   And all of them are influenced and interpreted under the 18 U.S.C. §3632(d)(6) analysis, which makes the earned FSA Time Credits "in addition to all other rewards and incentives."

All these statutes express, in clear and unambiguous language, the will of Congress.

62)   Expanded Authority under the CARES Act [PageID# 260]. Here, the BOP, inconsistently, and not in the alternative, attempts to reverse itself from its prior position and argument that the CARES Act only modified the first sentence of 18 U.S.C. §3624(c)(2).

---

[85]  The BOP's entire argument [PageID## 257-258] is irrelevant.  Maxwell does not care about the repealed rules from 2007-2008.  Maxwell's arguments have to do with Goldings, Elwood, Fults, Rodriguez (supra), which apply Chevron.  This discussion is about the application of statutory authority, when it is clear and unambiguous, and an agency's obligation to follow the will of Congress.  This is at the core of administrative law and statutory interpretation.  The above cases discuss and apply Chevron specifically.  (Statutory interpretation does not require exhaustion of administrative remedies.)

43.

63)   The BOP opines that the adverbial clause "as the Director determines appropriate" [PageID# 259] doesn't merely clarify the statement proceeding it: "may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of 3624(c)(2);" rather the BOP opines that the adverbial clause is some special English incanatation--a grant, as it were, of inherent authority from Congress--conferring some undefined broad expanse of authority on the BOP.  The Statute [§3624(c)(2)] says what it says.  The maximum amount of time in home confinement under 18 U.S.C. §3624(c)(2) was extended to fifty percent (50%) by the Director.[86]  The mandatory language in the second sentence, (shall place lower risk and low needs inmates in home confinement for the maximum amount allowed under this paragraph) which was part of the FSA, section 602, Pub. L. 115-391, controls over the permissive language in the first sentence.[87]

It is a "well established canon of statutory interpretation 'that the specific governs the general.'"  Radlax Gateway Hotel, LLC v. Amalgated Bank, 566 U.S. 639, 645, 132 S.Ct. 2065, 182 L.Ed. 2d 967 (2012) (quoting Morales v. TWA, Inc., 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed. 2d 157 (1992).

This canon also informed Justice Ginsberg in Lopez v. Davis, where she writes that statutes can grant entitlements to a class

---

[86]  No one said the Director had to extend home confinement time to 50%, but he did.  At some point, the CARES Act will cease to be and that time period will revert to 6 months or 10%.  But until then, it is 50%.  An adverbial phrase modifies the verb.  Here, the phrase, "as the Director determines appropriate" modifies the preceding "may lengthen."  See Babb v. Wilkie, 140 S.Ct. 1168, 2020 U.S. Lexis 2184, *3 (2020); Nielson v. MONY, 139 S.Ct. 954, 2019 U.S. LEXIS 2088, *21 (2019) (adverbial clause "when released" modifies the verb "shall take.")

[87]  West Virginia v. E.P.A., resoundly closed the door on the BOP's expansive agency argument.  See also Rublee v. Flemming, 160 F.3d 213, 217 (5th Cir. 1998) (quoting Wottlin v. Flemming, 136 F.3d 1032, 1035 (5th Cir. 1998) c.f. United States v. Tubwell, 37 F.3d 175, 179 (5th Cir. 1994) ("[a] protected liberty interest exists ... when a regulation uses 'mandatory language' to place a substantive limit on official discretion.")

44

of inmates. 531 U.S. 230, 243, 121 S.Ct. 714, 148 L.Ed. 2d 635 (2001) (we reject that the agency must not make categorical exclusions). Here, 18 U.S.C. §3624(c)(2) grants a class of inmates (expressly low risk and low needs inmates), the maximum amount of time in home confinement.

64) Next, the BOP's reliance on De La Cruz Jiminez, and Lang [PageID# 260] is unavailing. The cases are not similar to Maxwell's case. Both were before the January 15, 2022, drop-dead date for the FSA and neither contemplated the plain language of 18 U.S.C. §3624(c)(2) created by the First Step Act--nor the language of 18 U.S.C. §3632(d)(6) created by the First Step Act. Maxwell's position on this is that the CARES Act extended the time in home confinement under 18 U.S.C. §3624(c)(2)--a point that the BOP concedes. It did nothing else. Now that the risk and needs system is fully actuated, on January 15, 2022, and Maxwell as a low risk and low needs inmate, he is therefore entitled to 50% of his statutory sentence to be spent on home confinement. (The Bureau shall place low risk and low needs prisoners in home confinement for the maximum amount under this paragraph).[88]

---

[88] The crux of the home confinement paradigm is 18 U.S.C. §3632(d)(6) (rewards and incentives under §3632(d), to include time credits, are in addition to all other incentives and rewards). Title 34 U.S.C. §60541(a)(2)(A) defines halfway house / home confinement as an incentive in conjunction with 18 U.S.C. §3624(c). The BOP removes halfway house and home confinement under 18 U.S.C. §3624(c) for disciplinary infractions. It is an incentive. The BOP considers institution conduct when deciding to award elderly release under 24 U.S.C. §60541(g). Therefore, under the plan and unambigous language of the statute, Maxwell's FSA Time Credits are calculated in addition to determine his transfer date to halfway house or home confinement under 18 U.S.C. §§3624(c)(1) and (2), and in addition to his elderly release under 34 U.S.C. §60541(g). Applying the law properly, Maxwell has earned forty-eight (48) months of FSA Time Credits. This is added to his halfway house incentive (see 18 U.S.C. §3632(d)(6) and 34 U.S.C. §60541(a)(2)(A) of twelve (12) months, equaling sixty (60) months. The sixty (60) months are added to Maxwell's actual time served, ninety-eight (98) months (at this writing). Maxwell, therefore, has one hundred and fifty-eight (158) months of time earned toward halfway house or home confinement. He is eligible under the CARES Act (which requires one hundred and two [102] months); he is eligible for the elderly offender program. This is independent of transfer under 18 U.S.C. §3632(d)(2)&(3).

45

## WEST VIRGINIA V. E.P.A.

**65)**   The Supreme Court's discussion of the body of law in West Virginia v. E.P.A., known as the major question doctrine, teaches that given both separation of powers principles and a practical understanding of legislative intent, requires the agency to point out the "clear congressional authorization" for the authority it claims. Utility Air Regulatory Group v. E.P.A., 573 U.S. 302, 324 (2014).

The CARES Act was a $3.2 trillion legislative package passed by Congress on March 27, 2020, to assist with the COVID-19[89] pandemic. As part of the CARES Act, Section 12003(b)(2) provided that, "during the covered [National] emergency period, if the Attorney General finds that emergency conditions will materially affect the functions of the Bureau,"[90] the Director had the authority to change the first sentence of 18 U.S.C. §3624(c)(2) from:

> "The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."

to:

> "The authority under this subsection may be used to place a prisoner in home confinement for an amount of time 'the Director determines appropriate.'"

---

[89]   Declared in March / April of 2020, and continues to this day.

[90]   On April 3, 2020, Attorney General Barr so found, and FCI-Beaumont-Low has been on modified operations since (Code Red).

46

The BOP determined that amount to be fifty percent (50%) of a prisoner's term of imprisonment.

66)   The CARES Act did not change the second sentence of 18 U.S.C. §3624(c)(2), which reads: "The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph."   (No expansion of authority to impose conditions.)

67)   The question then is what is the extent of the BOP's authority under the CARES Act modification to the FSA, 18 U.S.C. §3624(c)(2)?   The FSA modified §3624(c)(2) to add the phrase, "the maximum amount of time permitted under this paragraph," in relationship to home confinement.   See Pub. L. 115-391, Section 602 (The BOP shall place low risk and low needs inmates in home confinement "for the maximum amount of time" permitted by law).

68)   West Virginia addresses the express language of Congress.   For example, the Court teaches: "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."   Dong v. Michigan Dept. of Treasury, 489 U.S. 803, 809 (1989).   Where the statute at issue is one that confers authority upon an administrative agency, that inquiry must be "shaped, at least in some measure, by the nature of the question presented"--whether Congress in fact meant to confer the power the agency has asserted."   FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 159 (2000).   "Nonetheless, our precedent

47

teaches that there are 'extraordinary cases' that call for a different approach--cases in which the 'history and the breadth of the authority that [the agency] has asserted,' and the 'economic and political significance' of that assertion, provide a 'reason to hesitate' before concluding that Congress meant to confer such authority." Brown & Williamson, 529 U.S. at 159-160. West Virginia, 597 U.S. at _____.

69) The Court next discusses that this precept applies to the entire administrative state. West Virginia, 597 U.S. _____ ("Such cases have arisen from all corners of the administrative state"). In particular part, the Court addressed Gonzales v. Oregon, 546 U.S. 243 (2006). There, the Court wrote: "We confronted the Attorney General's assertion that he could rescind the license of any physician who prescribed a controlled substance for assisted suicide ... The [AG] argued that this came within his statutory power to revoke licenses where he found them 'inconsistent with the public interest.' We considered the 'idea that Congress gave [him] such broad and unusual authority through an implicit delegation' ... not sustainable. 546 U.S., at 207." West Virginia, 597 U.S. at _____. (This is identical to what the AG and BOP did here, under the CARES Act modification of 18 U.S.C. §3624(c)(2).)

The Court instructed that "[a]ll of these regulatory assertions had a colorable textual basis. And yet, in each case, given the various circumstances, common sense as to the manner in which Congress [would have been] likely to delegate such power to the agency at issue, Brown & Williamson, 529 U.S. at 133, made it very unlikely that Congress had actually done so. Extraordinary

48

grants of regulatory authority are rarely accomplished through modest words, vague terms, or subtle device[s]." Citing _Whitman v. American Trucking Assns., Inc._, 531 U.S. 457, 468 (2001).

"Agencies have only those powers given to them by Congress, and 'enabling legislation' is generally not an 'open book to which the agency [may] add pages and change the plot line.'" Citing E. Gellhorn & P. Verkvil, Controlling _Chevron_-Based Delegations, 20 Cardozo L. Rev. 989, 1011 (1999).

70) Thus instructed, we examine the two (2) monumental Acts at issue here. The First Step Act, Pub. L. 115-391, which transformed the pre-release paradigm, earned FSA Time Credits construct, elderly offender release, compassionate release, structure, stacking of sentencing, etc. Next, the CARES Act, Pub. L. 116-136.

The FSA demanded that eligible low risk and low needs prisoners spend the "maximum amount of time in home confinement" permitted by law. At the time of its enactment that time period was ten percent (10%) of the inmate's sentence or six (6) months, whichever was shorter. 18 U.S.C. §3624(c)(2) (first sentence).

The FSA created a "risk and needs system." 18 U.S.C. §3632(a). Required it to be published. _Id_. And apply it to inmates, 18 U.S.C. §3632(a)(7), in "accordance with section 3624 [18 U.S.C. §3624]." This includes §§3624(c)(2) and (g).

71) Along came the COVID-19 pandemic, a once-in-a-hundred-years pandemic, costing over one million U.S. lives.[91] As part of

---

[91] Notably, more died from COVID than died in the Civil War, WWI, WWII, Korea, and Vietnam conflicts combined.

that CARES ACT, Congress mandated that low risk and low needs inmates be transferred to home confinement under 18 U.S.C. §3632(c)(2). Congress did so by solely allowing the Director to lengthen the amount of time an inmate spent in home confinement under 18 U.S.C. §3632(c)(2).

72) Rather than do so, the BOP and Attorney General took authority on themselves to impose an entirely new paradigm for release, in addition to being "low risk and low needs" inmates as the statute demands (and the FSA defines). See 18 U.S.C. §3632(a) and §3624(c)(2).

Here, the sole authority granted to the BOP was to expand 18 U.S.C. §3624(c)(2). Once the BOP did so, the mandatory language of the second sentence required inmates, if they were determined under their PATTERN Score to be low risk and low needs, to be sent home. West Virginia confirms this analysis.

73) Next, West Virginia teaches that the BOP does not have authority to defer to its union, as to when or if it will comply with the FSA. The drop-dead date for the FSA to be fully implemented was January 15, 2022. All low risk and minimum risk inmates with low violence and minimum violence scores have been accruing FSA Time Credits since December 21, 2018. The BOP owes those eligible inmates twenty-two (22) months of FSA Time Credits (fifteen [15] days per month, multiplied by approximately forty-four [44] months), plus twelve (12) months of halfway house credits. See 18 U.S.C. §3632(d)(4)(A), and 18 U.S.C. §3632(d)(6) and 34 U.S.C. §60541(a)(2)(A), for a total of thirty-four (34)

50

months of FSA Time Credits.[92]    As of January 15, 2022, all eligible and qualified low and minimum risk inmates (determined by their PATTERN Score) with low and minimum violence scores (determined by their PATTERN Score) should be on home confinement.  They are not.[93]  West Virginia teaches that the BOP has no authority to do so (continue to hold eligible inmates in greater custody levels instead of pre-release custody).

74)    In the case at bar, far from an inkling of authority, the BOP has no authority to: (1) not implement the FSA; (2) delegate a veto of the FSA to its union; (3) continue to house inmates with confessed liberty interests in violation of the FSA pre-release custody paradigm.

75)    As West Virginia instructs: The view of the "EPA's authority was not only unprecedented; it also affected a 'fundamental revision of the statute, changing it from [one set of] scheme of ... regulation' into an entirely different kind." Citing MCI, 512 U.S., at 231.    (Here, mandatory scheme to permissive scheme.)

Maxwell makes the same complaints.  Throughout its rules (28 CFR §523.40-44), the BOP transmorphs the mandatory scheme, denoted by commands ("BOP shall") into a permissive scheme ("may").  See 28 CFR §523.40-44 (using "may") contrasted with the statutory language of 18 U.S.C. §3632 and §3624, which uses the mandatory "shall."

---

[92]  E.g., every eligible inmate with a release date of September 15, 2025, or earlier should have been transferred to pre-release custody.  They were not.  Maxwell has a greater accrual, due to his constant participation in productive activities throughout his confinement (as noted herein).

[93]  During the pendency of this suit, the amount of time FSA Time Credits has expanded to thirty-six (36) months (when including regular halfway house / home confinement).  See 18 US..C. §3632(d)(6) and 34 U.S.C. §60541(a)(2)(A).

51

**76)** The Court teaches in <u>West Virginia</u> that the construct asserted by the BOP (that of inherent authority) is anathema to the United States Republic. <u>Department of Transportation v. Association of American Railroads</u>, 575 U.S. 43, 61 (2015) (Alito, J. concurring). "In a world like that, agencies [see BOP] could churn out new laws more or less at a whim. Intrusion on liberty would not be difficult and rare, but easy and profuse." <u>West Virginia</u>, 597 U.S. at_____, citing The Federalist No. 47, at 303 (J. Madison); <u>Id.</u>, No. 62 at 378 (J. Madison) (Gorsuch, J. concurring).

**77)** Here, Congress ordered the BOP to act, ordered the BOP to transfer eligible inmates to home confinement under 18 U.S.C. §§3632(a) and (d); 18 U.S.C. §§3624(c) and (g); 34 U.S.C. §60541(a)(2)(A) under the FSA.[94] For <u>West Virginia</u> purposes the opposite is also true. Just as an agency cannot assume authority it does not have, it cannot refuse directives of Congress in clear and unambiguous language, to transfer inmates pursuant to the FSA. By simply doing nothing, the BOP is violating the liberty interests of thousands of inmates, including Maxwell. (Which may be remedied in court.)

**78)** To confirm the arguments, the Court need only look to the "Rule of Construction" at Pub. L. 115-391, Title I, §105, Dec. 21, 2018, 132 Stat. 5214, which provides that:

---

[94] To read the statutes in harmony, specifically 18 U.S.C. §3632(d)(6), all incentives and rewards must be calculated towards an inmate's transfer date, to include 18 U.S.C. §3632(d)(4)(A); 18 U.S.C. §3624(c) and (g); and 34 U.S.C. §§60541(a)(2)(A) and (g). The "may" language in 18 U.S.C. §3632(d)(6) is permissive in the inmate's favor ("for which a prisoner may be eligible") not the BOP's favor. Section 3632(d)(6) does not confer discretion on the BOP; rather, it includes all incentives as being in addition to §3632(d), thereby providing the most expansive reading in the inmate's favor--when it comes to transfer to pre-release custody (which is consistent with the FSA).

52

18 U.S.C. §3621

Pub. L. 151-391, Title I, §105, Dec. 21, 2018, 132 Stat. 5214 Rule of Construction provided that:

> "Nothing in this Act [see Tables for Classification], or the amendments made by this Act, may be construed to provide authority to place a prisoner in pre-release custody or supervised release who is serving a term of imprisonment pursuant to a conviction for an offense under the laws of one of the 50 states, or of a territory or possession of the United States or to amend or affect the enforcement of the immigration laws, as defined in section 101 of the Immigration and Nationality Act (8 U.S.C. §1101)."

This "Rule of Construction" would make no sense, especially in light of West Virginia, if the FSA did not confer liberty interests to federal inmates and mandatory obligations on the BOP.

## V.  MAXWELL'S AFFIDAVIT

79)  Maxwell's affidavit (attached hereto and incorporated herein) is made on his personal knowledge, the documents attached to Maxwell's affidavit substantiate his personal knowledge, lending credibility. Maxwell, for the past six (6) years has been assigned and recommended to work in the law library as a paralegal. Staff (Unit Counselors, in conjunction with Case Managers) assign, recommend, and transfer inmates between work assignments. Maxwell, as part of his assigned prison job, uses his unique legal skills to assist hundreds of inmates per year in all manner of legal matters. Maxwell is a licensed Texas attorney

53

(license suspended pending appeal; SBN# 24028775), who prior to his conviction practiced in Houston, focusing on civil, criminal, and administrative litigation (state matters primarily). He is using his skills in his assigned and recommended prison job as a paralegal at FCI-Beaumont; Maxwell explains the law to inmates seeking assistance in all matters and helps inmates with all manner of legal matters.

As a result of Maxwell's efforts, twenty-eight (28) inmates, thus far, have received a reduction on their sentences, new trials or adjustments under 18 U.S.C. §3582(c)(1)(A) due to a change in U.S.S.G. calculations made retroactive, changes to the ACCA (18 U.S.C. §924(e)); use of a firearm (18 U.S.C. §924(c)); and credit for good time (18 U.S. C. §3624(b)); along with other errors by Courts and counsel.

All of Maxwell's statements in his affidavit are based on personal knowledge, knowledge he has acquired as a law clerk (paralegal) at FCI-Beaumont-Low, his review of his filings, his education and training (Baylor University, Thurgood Marshall School of Law, University of Houston). Additionally, Maxwell has reviewed the statutory authority under-pinning his factual positions.

All the documents attached to Maxwell's affidavit are true and correct copies that were: (1) attached to his administrative remedies; (2) self-authenticating; (3) attached to the BOP's response (statements against interest); (4) public records admissible under the F.R.E.; and/or (5) consistent statements offered for other than the truth of the matter asserted.

54

80)   In particular part, Maxwell was present with Unit Manager Rivera when Rivera discussed Maxwell's transfer to home confinement with FCI-Beaumont-Complex then-counsel (Tina Hauck). On that phone call, after Rivera had noted Maxwell's claims raised in his petition, Hauck threatened Rivera with consequences for "working too hard" for inmates, intimating that his conduct (doing his job) helping inmates with transfer to halfway house or home confinement was improper because "we are not doing CARES Act or First Step Act here."

81)   The documents attached to Maxwell's affidavit demonstrate the continued bad faith of the BOP in denying inmates tens of thousands of years, collectively, annually, in halfway house or home confinement under earned FSA Time Credits (See Preamble, Fed. Reg. / Vol. 87, No. 12 / Wednesday, Jan. 19, 2022 / Rules and Regulations / p.2716).   A copy of all evidentiary documents are attached to Maxwell's Affidavits, though duplicative, because Motions for Summary Judgment are trials, and evidence in support of a party's position must be attached.   Out of an abundance of caution, Maxwell requests the Court take judicial notice of the case file.

82)   As noted in Maxwell's Affidavit, the Warden herein takes factual positions that are inconsistent with factual positions taken by BOP representatives from Washington--to include all substantial arguments of the Warden.   Attached to Maxwell's Affidavit are sworn affidavits of BOP Central Office employees affirming same.

55

## INCORPORATION

Maxwell incorporates his 12(b)(1) response and 12(b)(6) response and Motion for Summary Judgment responses into each other. Maxwell incorporates his attachments and exhibits.

## PRAYER

For these reasons, and those in Maxwell's 12(b)(1) Response, 12(b)(6) Response, and Maxwell's Response to Motion for Summary Judgment herein, Document 8 is requested to be denied in its entirety.

Respectfully submitted,

William Maxwell
Reg. No. 71844-279
FCI-Beaumont-Low
P.O. Box 26020
Beaumont, TX 77720

56

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy was placed in the BOP legal mail system, properly addressed with postage to the Court and opposing counsel noted below on _Sept. 1_ , 2022. I make this declaration pursuant to 28 U.S.C. §1746 and under penalties of perjury.

> Michael Lockhart
> AUSA
> 550 Fannin, Ste. 1250
> Beaumont, TX 77701

_9/1/2022_
_____

Date

_____

William Maxwell

## VERIFICATION

I hereby assert that the material factual allegations herein are true and correct to the best of my knowledge and belief. I make this verification pursuant to 28 U.S.C. §1746 and under penalties of perjury.

_9/1/2022_
_____

Date

_____

William Maxwell

57

## ATTACHMENTS TO MAXWELL'S RESPONSE TO DOC. 8

Attachment 1    28 C.F.R. §523.40-44, Preamble, and Response to Questions (Fed. Reg./Vol. 87, No. 12/Wed. Jan. 19/pp 2705-2719);

Attachment 2    Office of Inspector General, November 15, 2021 report;

Attachment 3    April, 2022 BOP Annual Report to Congress (segments);

Attachment 4    First Step Act Approved Program Guide (exerpts);

Attachment 5    John Maxwell's Affidavit;

Attachment 6    William Maxwell's Affidavit.

William Maxwell
Reg# 71944-279
FCI-Beaumont-Low
P.O. Box 26020
Beaumont, Ty 77720







$12.00 postage

CLERK U.S. DISTRICT COURT
RECEIVED
SEP 09 2022
EASTERN DIST. OF TEXAS
BEAUMONT, TEXAS

LEGAL
MAIL

United States District Court
Eastern District of Texas
300 Willow Street, Suite 104
Beaumont, Tx  77701-2217