# EXHIBIT

# 11

## MALE PATTERN RISK SCORING

| Register Number: | 71944-279 | | Date: | 7/15/2020 | |
|---|---|---|---|---|---|
| Inmate Name: | MAXWELL, WILLIAM | | | | |

| MALE RISK ITEM SCORING | CATEGORY | GENERAL SCORE | Enter Score | VIOLENT SCORE | Enter Score |
|---|---|---|---|---|---|
| 1. Current Age  > 60  Click on gray dropdown box to select, then click on dropdown arrow | > 60 | 0 | .0 | 0 | 0 |
| | 51-60 | 7 | | 4 | |
| | 41-50 | 14 | | 8 | |
| | 30-40 | 21 | | 12 | |
| | 26-29 | 28 | | 16 | |
| | < 26 | 35 | | 20 | |
| 2. Walsh w/Conviction  No | No | 0 | 0 | 0 | 0 |
| | Yes | 1 | | 0 | |
| 3. Violent Offense (PATTERN)  No | No | 0 | 0 | 0 | 0 |
| | Yes | 5 | | 5 | |
| 4. Criminal History Points  0 - 1 Points | 0 - 1 Points | 0 | 0 | 0 | 0 |
| | 2 - 3 Points | 8 | | 4 | |
| | 4 - 6 Points | 16 | | 8 | |
| | 7 - 9 Points | 24 | | 12 | |
| | 10 - 12 Points | 32 | | 16 | |
| | > 12 Points | 40 | | 20 | |
| 5. History of Escapes  None | None | 0 | 0 | 0 | 0 |
| | > 10 Years Minor | 2 | | 1 | |
| | 5 - 10 Years Minor | 4 | | 2 | |
| | < 5 Years Minor/Any Serious | 6 | | 3 | |
| 6. History of Violence  None | None | 0 | 0 | 0 | 0 |
| | > 10 Years Minor | 1 | | 1 | |
| | > 15 Years Serious | 2 | | 2 | |
| | 5 - 10 Years Minor | 3 | | 3 | |
| | 10 - 15 Years Serious | 4 | | 4 | |
| | < 5 Years Minor | 5 | | 5 | |
| | 5 - 10 Years Serious | 6 | | 6 | |
| | < 5 Years Serious | 7 | | 7 | |
| 7. Education Score  HS Degree / GED | Not Enrolled | 0 | -4 | 0 | -2 |
| | Enrolled in GED | -2 | | -1 | |
| | HS Degree / GED | -4 | | -2 | |
| 8. Drug Program Status  No Need | No DAP Completed | 0 | -9 | 0 | -3 |
| | NRDAP Complete | -3 | | -1 | |
| | RDAP Complete | -6 | | -2 | |
| | No Need | -9 | | -3 | |
| 9. All Incident Reports  (120 months)  0 | 0 | 0 | 0 | 0 | 0 |
| | 1 | 1 | | 1 | |
| | 2 | 2 | | 2 | |
| | > 2 | 3 | | 3 | |
| 10. Serious Incident Reports (120 months)  0 | 0 | 0 | 0 | 0 | 0 |
| | 1 | 2 | | 2 | |
| | 2 | 4 | | 4 | |
| | > 2 | 6 | | 6 | |
| 11. Time Since Last Incident Report  12+ months or no incidents | 12+ months or no incidents | 0 | 0 | 0 | 0 |
| | 7-12 months | 2 | | 1 | |
| | 3-6 months | 4 | | 2 | |
| | <3 | 6 | | 3 | |
| 12. Time Since Last Serious Incident Report  12+ months or no incidents | 12+ months or no incidents | 0 | 0 | 0 | 0 |
| | 7-12 months | 1 | | 2 | |
| | 3-6 months | 2 | | 4 | |
| | <3 | 3 | | 6 | |
| 13. FRP Refuse  NO | NO | 0 | 0 | 0 | 0 |
| | YES | 1 | | 1 | |
| 14. Programs Completed  4 - 10 | 0 | 0 | -6 | 0 | -3 |
| | 1 | -2 | | -1 | |
| | 2 - 3 | -4 | | -2 | |
| | 4 - 10 | -6 | | -3 | |
| | > 10 | -8 | | -4 | |
| 15. Work Programs  >1 Program | 0 Programs | 0 | -2 | 0 | -2 |
| | 1 Program | -1 | | -1 | |
| | >1 Program | -2 | | -2 | |
| Total Score (Sum of Columns) | | General: | -21 | Violent: | -10 |
| General/Violent Risk Levels | | General: | Minimum | Violent: | Minimum |
| OVERALL MALE PATTERN RISK LEVEL | | | | Minimum | |

# EXHIBIT

# 12

BP-A0210
OCT 10

**INSTITUTIONAL REFERRAL FOR CCC PLACEMENT** CDFRM

U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| TO: (Community Corrections Manager)<br><br>Vacant, RRM | FROM: Chief Executive Officer (Name, Title & Date) –<br>Signature certifies approval and CIMS Clearance |
|---|---|

| Inmate Name<br>MAXWELL, WILLIAM | Register Number<br>71944-279 | Date<br>04/16/2020 |
|---|---|---|

| Unit Manager/Mail ID<br><br>L. RIVERA, EXT 2321 | Institution (Address and Phone Number)<br>BEAUMONT LOW FCI<br>P.O. BOX 26025<br>BEAUMONT, TX 77720<br>(409)727-8172 |
|---|---|

| 1. Release City Dickinson | Supervision District Southern District of Texas |
|---|---|

| 2. Anticipated Release Date<br>07/17/2031 | Method<br>GCT REL | Verified by (ISM Staff)<br>Pitre, Edward 04-17-2020 |
|---|---|---|

| 3. Recommended (only one):<br>a. Range_____, or<br>b. Date_06/30/2020___ | 4. If a presumptive parole case, enter the date the pre-release record review progress report was submitted to the Parole Commission: _____ |
|---|---|

| 5. Statutory Interim Hearing Scheduled?<br>☐ Yes    ☐ No    ☐ Waived | 6. Supervised Release<br>☑ Yes  ☐ No | Special Parole Term<br>☐ Yes ☑ No |
|---|---|---|

7. Aftercare Supervision
☐ Drug  ☐ Alcohol  ☐ Mental Health  ☐ Other                                   ☑ N/A

8. CIM Case: ☑ Yes ☐ No   | Assignment: Separation

| As CMC, I have reviewed the Request for Activity Clearance (404) and the SENTRY CIM Clearance and Separatee Data and I recommend the inmate be considered for CCC placement and clearance be granted by the Warden.<br><br>☑ Yes  ☐ No   Signature of CMC Moore, Deanne _____<br>Upon signature of the Warden, I will update SENTRY to reflect CCC referral for range/date as listed in item 3 above. | NOTE:<br>The CMC will update SENTRY to reflect specific dates and CCC location code upon notification of acceptance from the CCM. |
|---|---|

| 9. If proposed District of Supervision differs from Sentencing District, has USPO approved?<br>☑ Yes  ☐ No | 10. Does inmate have a committed fine?    ☐ Yes    ☑ No<br>If yes, indicate how fine will be paid in item 12. |
|---|---|

11. Additional Information, including status of any detainers or pending charge(s) and whether there is a substance abuse history.

Inmate Maxwell has no pending charges or detainers. His Presentence Investigation indicates no substance abuse. Inmate Maxwell is requesting to reside in the Faith Christian Center Academy.

12.    Specific release preparation/Pre-natal care needs.

Inmate Maxwell is being referred for Home Confinement placement under the provisions contained in the First Step Act (FSA) for placement of eligible elderly offenders and eligible terminally ill offenders. Inmate Maxwell is currently 60 years old, serving a 240 month sentence for Racketeering Conspiracy, Wire Fraud Conspiracy, Money Laundering . His criminal history and inmate disciplinary record reveal no charges or convictions involving violence, escape, or a sexually related offense.

In addition to meeting these requirements of the FSA Elderly Home Confinement, inmate Maxwell also meets the criteria listed in the Attorney General's COVID-19 Pandemic memorandum. As previously noted, inmate Maxwell is 60 years old, and medical staff at FCI Beaumont have determined he is an "at risk" vulnerable inmate. Inmate Maxwell is currently classified as a three point Low Security Level inmate, and has a PATTERN Recidivism score of Minimum. The SIS Department at FCI Beaumont has confirmed that inmate Maxwell has not engaged in any violent or gang related activity, and he has maintained a clear disciplinary record.

If approved for Home Confinement, inmate Maxwell would reside in a motor home at 4400 Country Club Dr., Dickinson, Texas 77539. The telephone contact number is 832-287-8730. It is believed inmate Maxwell will not pose a danger to the community.

| 13.    For MINT Referrals, Date of Delivery: | 14.    (a) For MINT Referrals, Projected Date of Return to Parent Institution: |
|---|---|
| | (B) Proposed guardian: |

| TO BE FORWARDED WITH THE REFERRAL FORM | NO. COPIES | TO BE FORWARDED TO THE REGIONAL TSM | NO. COPIES |
|---|---|---|---|
| BP-S210, Referral Form | 2 | BP-S210, Referral Form | 1 |
| Current Progress Report | 2 | Current Progress Report | 2 |
| Pre-sentence Report/Violation Report | 2 | Treatment Summary and Referral Form | 2 |
| Community Based Program Agreement | 2 | Drug Abuse Treatment Programs Agreement to | |
| BP-339 CIM Case Information Summary (Non-Separation Cases) | 1 | Participate in Community Transition Programming | 2 |
| USPO Acceptance Letter | 2 | | |
| Copy of Latest Notice of Action | 2 | | |
| BP-351 Medical Evaluation for Transfer of Inmates to CCC Type Facility | 2 | | |
| Judgment & Commitment Order | 2 | | |
| Statement of Responsibility | 2 | | |

\* If the inmate has a diagnosed, ongoing medical condition, such as diabetes or coronary disease, send any pertinent medical records.

Record Copy - CCM; Copy - Institution File; Copy - USPO Sentencing District; Copy USPO District of Supervision

# EXHIBIT

# 13



**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Correctional Complex*

P. O. Box 26035
Beaumont, Texas 77720

April 10, 2020

MEMORANDUM FOR INMATE WILLIAM MAXWELL, REG. NO. 71944-279
(T04-057U)

FROM:            F. J. Garrido, Warden
                 Federal Correctional Complex, Beaumont, Texas

SUBJECT:         High Risk Concern

I want to inform you the Centers for Disease Control (CDC) has
designated individuals with certain health conditions to be at
increased risk of experiencing more severe effects of
contracting COVID-19. Additionally, it has been determined
individuals over the age of 60, are considered to be in the high
risk category.

It has been determined you fall into one of these categories.
Therefore, I am highly encouraging you to be cautious with your
daily interactions with others and take the fullest
precautionary measures available to protect yourself.

You have been provided a medical face shield for your protection
while interacting with others outside of your living areas.
Additionally, sanitation materials are provided for you to
continuously sanitize your living space. There are bleach
mixtures and other chemicals being provided. I highly encourage
you to take advantage of these opportunities to properly
sanitize your cell and living areas on a daily basis.
Additional CDC guidance indicates regular hand washing, and
social distancing will greatly reduce your risk for exposure.

As we continue to implement preventative measures, please be
aware our goal is to protect the inmate population from
exposure. Due to your high-risk potential, we encourage you to
take all measures to aid us in these efforts.

BP-8-6 (1 of 1)

# EXHIBIT

# 14

**FEDERAL CORRECTIONAL COMPLEX (FCC), BEAUMONT, TEXAS**
**PART B - RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #1048383-F1**

This is in response to your Request for Administrative Remedy received September 22, 2020, in which you request home confinement based on the CARES Act.

The Bureau of Prisons is utilizing the full scope of its various authorities to ensure that inmates indicated at high risk are of complications from COVID-19 are housed safely and appropriately given their specific needs and circumstances. This includes modified institution operations; routine staff and inmate medical screening; use of the home confinement authority, where appropriate, based on guidance from the U.S. Attorney General; and use of compassionate release for appropriate inmates who have existing terminal and debilitated medical conditions or who are elderly and nearing the end of their sentence, as indicated for in current agency policy.

The CARES Act authorizes the U.S. Attorney General to expand the cohort of inmates who can be considered for home confinement upon his findings of emergency conditions which are materially affecting the function of the BOP.  On April 3, 2020, the U.S. Attorney General made that finding and authorized the Director of the BOP to immediately maximize appropriate transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and other similarly situated BOP facilities where COVID-19 is materially affecting operations.

The U.S. Attorney General issued guidance to the BOP regarding the transfer of inmates to home confinement on March 26, 2020. In assessing whether home confinement should be granted, the BOP considers the totality of circumstances for each individual inmate, the statutory requirements for home confinement and a non-exhaustive list of discretionary factors for priority consideration, including, but not limited to:  no BOP violations within the last year; PATTERN score is minimum; a verifiable re-entry plan; verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his BOP facility; no serious offenses; primary offense is not violent, a sex offense, or terrorism related; no current detainers; and the inmate must have served 50% or more of their sentence or have 18 months or less remaining in their sentence and have served 25% or more of their sentence.

Information reveals you arrived at FCC Beaumont on August 26, 2015, with a Projected Release Date of July 17, 2031, via Good Conduct Time Release.  You did not meet the criteria to be released on home confinement per the CARES Act, nor are you identified as an at-risk inmate per any medical condition by the Health Services Department.  Specifically, you were denied based on your prior history of violence and with you only completing 36.6% of sentence when you need to complete 50%. There are serious violence (threat of death, bodily injury and kidnapping) during commission of committing offense in your record.

Based on the above information, this response to your Request for Administrative Remedy is denied.

If you are not satisfied with this response, you may appeal to the Regional Director at Bureau of Prisons, South Central Region, South Central Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas, 75051.  Your appeal must be received in the South Central Regional Office within 20 days of the date of this response.

_____          _____
F. J. Garrido, Warden                     Date

# EXHIBIT

# 15



**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Correctional Complex*

P. O. Box 26025
Beaumont, Texas 77720

May 20, 2020

Freedman & Grinshpun, PC
7909 Bustleton Avenue
Philadelphia, Pennsylvania 19152
Attn: Arkadiy Grinshpun, Esq.

Re: William Maxwell, Reg. No. 71944-279

Dear Mr. Grinshpun:

I am in receipt of your correspondence dated April 30, 2020, regarding William Maxell. He is currently confined at the Federal Correctional Complex (FCC), Low Security Institution, in Beaumont, Texas. In your letter, you are requesting inmate Maxwell be released to home confinement in connection with the CARES Act and memoranda issued to the Federal Bureau of Prisons by the Attorney General regarding this topic due to the outbreak of COVID-19.

In response to your request, the Bureau of Prisons is utilizing the full scope of its various authorities to ensure that inmates at heightened risk of complications from COVID-19 are identified and housed safely and appropriately given their specific needs and circumstances. This includes modified institution operations; routine staff and inmate medical screening; use of the home confinement authority, where appropriate, based on guidance from the U.S. Attorney General; and use of compassionate release for appropriate inmates who have existing terminal and debilitated medical conditions or who are elderly and nearing the end of their sentence, as provided for in current agency policy.

BP-10-5 (1 of 4)

Grinshpun Letter
May 20, 2020
Page 2

The CARES Act authorizes the U.S. Attorney General to expand the cohort of inmates who can be considered for home confinement upon his findings of emergency conditions which are materially affecting the function of the BOP. On April 3, 2020, the Attorney General made that finding and authorized the Director of the BOP to immediately maximize appropriate transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and other similarly situated BOP facilities where COVID-19 is materially affecting operations.

Pursuant to the U.S. Attorney's General's direction, the BOP will continue to monitor the situation at all of its facilities, to include FCC Beaumont, and will take swift action to exercise its expanded home confinement authority for any inmate who is found to be at risk for COVID-19 and suitable for home confinement.

Additional guidance was provided to staff via a May 8, 2020 memorandum regarding this topic. In it, the memorandum stated that inmates who have served 50% or more of their sentence or have 18 months or less remaining on their sentence and have served 25% or more of their sentence would be prioritized for consideration for home confinement. Inmate Maxwell does not meet this criteria, as his release date is July 17, 2031.

I trust this response adequately addresses your concerns.

Sincerely,

F. J. Garrido
Warden

BR-10-8 (2 of 4)

# EXHIBIT

# 16

Regional Administrative Remedy Appeal No. 1048383-R1
Part B - Response

This is in response to your Regional Administrative Remedy Appeal receipted on October 26, 2020.  You are appealing the Warden's response to your request for home confinement placement.

In accordance with the Coronavirus Aid, Relief, and Economic Security (CARES) Act and guidance from the United States Attorney General, the Bureau of Prisons (BOP) has been reviewing inmates who may be considered for home confinement.  In determining whether an inmate may be considered for home confinement, the BOP considers the statutory requirements for home confinement and several discretionary criteria.  Under these criteria, at a minimum, an inmate must ordinarily:  be a low or minimum security inmate; have clear conduct for the past 12 months; have a minimum Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) recidivism risk score; have an adequate and verifiable release plan; have no current conviction or criminal history involving violent offenses, sex offenses, or terrorism-related offenses; have no detainers; be a United States citizen; and have served at least 50% of the inmate's term of imprisonment, or have served at least 25% of the term of imprisonment and have 18 months or less left to serve.

A review of this matter reveals you have not yet served 50% of your term of imprisonment and you have more than 18 months left to serve. Additionally, due to the nature of your offense of conviction, you are not considered a candidate for priority home confinement placement under the CARES Act.

Based on the above information, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the Federal Bureau of Prisons, Office of General Counsel, 320 First Street, N.W., Washington, D.C. 20534.  Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

DEC 22 2020

_____                              _____
Date                                             J. Baltazar
                                                 Regional Director

# EXHIBIT

# 17

**Administrative Remedy No. 1048383-A2**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal where you disagree with the decision at FCI Beaumont Low to deny your request for home confinement. You allege the delays in the administrative remedy process represent bad faith and obstruction of justice. You reassert your prior claims and believe you meet all criteria for home confinement based on the Attorney General's memorandum. Based on this, you request to be released to home confinement.

The Bureau of Prisons (BOP) is taking extraordinary measures to contain the spread of COVID-19 and to treat any infected inmates. Additionally, in the BOP's continued effort to protect the health and safety of staff and inmates during the COVID-19 pandemic, inmates are being reviewed for direct placement on home confinement. In doing so, several factors are assessed and referrals are made based on appropriateness for home confinement.

The Warden and Regional Director adequately addressed your complaint and we concur with the responses provided. You were reviewed for direct home confinement and deemed ineligible for placement at this time. You were advised of the reason for this decision and we find you received proper and fair consideration pursuant to the Attorney General's memoranda, and local guidance and direction regarding the COVID-19 pandemic. You may discuss this matter further with your Unit Team at your next scheduled Program Review. In addition, we find no evidence of staff malfeasance regarding your administrative remedy request and appeals for this issue.

Accordingly, your appeal is denied.


_5|24|21_
Date

_____
Ian Connors, Administrator
National Inmate Appeals

# EXHIBIT

# 18

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY

DATE: JANUARY 7, 2021

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTH CENTRAL REGIONAL OFFICE

TO  : WILLIAM MAXWELL, 71944-279
      BEAUMONT LOW FCI    UNT: TA    QTR: T04-059U

ADDITIONAL TIME IS NEEDED TO RESPOND TO THE REGIONAL APPEAL
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.

REMEDY ID        : 1048383-R1
DATE RECEIVED    : OCTOBER 26, 2020
RESPONSE DUE .   : DECEMBER 25, 2020
SUBJECT 1        : ELDERLY OFFENDER HOME DETENTION PROGRAM
SUBJECT 2        :

*Inmate Maxwell did not receive any response by December 25, 2020, but his admin remedy was denied on December 23, 2020.*

*D. Gledny, Unit Manager*

PR15                                                                     Page 1 of 1

BMLD8          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *        01-07-2021
PAGE 012 OF 012 *              FULL SCREEN FORMAT              *          10:20:52


REGNO: 71944-279 NAME: MAXWELL, WILLIAM
RSP OF...: BML UNT/LOC/DST: TA                    QTR.: T04-059U    RCV OFC: SCR
REMEDY ID: 1048383-R1     SUB1: 19HM SUB2:       DATE RCV:    10-26-2020
UNT  RCV..: TA           QTR RCV.: T04-059U      FACL RCV: BML
UNT  ORG..: TA           QTR ORG.: T04-057U      FACL ORG: BML
EVT FACL.: BML    ACC LEV: BML  1 SCR  1           RESP DUE: FRI  12-25-2020
ABSTRACT.: REQUESTS HOME CONFINEMENT
STATUS DT: 12-23-2020   STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: N EXT: P DATE ENTD: 11-03-2020
REMARKS..: STAFFING


*No response was received by this denial date.*

*D. G̶e̶o̶r̶g̶e̶  Unit Manager*

       11 REMEDY SUBMISSION(S) SELECTED
G0000        TRANSACTION SUCCESSFULLY COMPLETED

# EXHIBIT

# 19

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: FEBRUARY 18, 2021



FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : WILLIAM MAXWELL, 71944-279
      BEAUMONT LOW FCI    UNT: TA    QTR: T04-059U
      P.O. BOX 26025
      BEAUMONT, TX 77720


FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID        : 1048383-A1      CENTRAL OFFICE APPEAL
DATE RECEIVED    : FEBRUARY 3, 2021
SUBJECT 1        : ELDERLY OFFENDER HOME DETENTION PROGRAM
SUBJECT 2        :
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT PROVIDE A COPY OF YOUR   REGIONAL OFFICE
                 ADMINISTRATIVE REMEDY APPEAL (BP-10) FORM OR   A COPY
                 OF THE (BP-10) RESPONSE FROM THE REGIONAL DIRECTOR.

REJECT REASON 2: YOU MAY RESUBMIT YOUR APPEAL IN PROPER FORM WITHIN
                 15 DAYS OF THE DATE OF THIS REJECTION NOTICE.

REMARKS          : SEE ATTACHED. ORGANIZE APPEAL ACCORDINGLY.

# EXHIBIT

# 20

U.S. Department of Justice

Federal Bureau of Prisons

# Regional Administrative Remedy Appeal

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

| From: | MAXWELL, WILLIAM | 71944-279 | TA | BEAUMONT (LOW) |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**

I wish to appeal for a second time. The First time, the Warden and staff refused the BP-9. Then they lost, and refused to produce, the response of the Region to the BP-10 (obstructing and delaying the Administrative Remedy process). When I requested the BP-10 response from Region, the Warden replied (not to what was requested--I already have one which was in my paperwork sent to Region the first time--it had been sent to my attorney) as though I had filed a new BP-9. I did not! I asked for the original Regional response. Then, to make themselves look as incompetent as possible, the Warden gave an asinine response. For example, the Warden states I do not have an underlying medical condition. That was stupid. Attached is a copy of the designation of my high risk from COVID-19 given to me by the Warden on April 10, 2020 (six [6] days before I signed my release papers on April 16, 2020). Next he opines that I have a crime of violence. That was stupid. I have a "-10" PATTERN Score because I have no violence. The Government has previously

[CONTINUED ON BP-10 ATTACHMENT PAGE]

10-23-2020

DATE

SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

OCT 2 6 2020

BUREAU OF PRISONS
LEGAL DEPARTMENT, SCRO

| DATE | | REGIONAL DIRECTOR |
|---|---|---|

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 1040888-R1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|---|

SUBJECT: _____

| DATE | | SIGNATURE, RECIPIENT OF REGIONAL APPEAL |
|---|---|---|

BP-230(13)

## BP-10 ATTACHMENT PAGE

stipulated that I am not a flight risk or danger to the community (at my bail hearing) and the Court previously instructed the jury of same. Attached is a copy of the transcript that is in my file (I gave it to Unit Manager Rivera).

Third, the Warden opines that I have not completed fifty percent (50%) of my sentence. My approval on April 12, 2020, was before my signing my home confinement papers on April 16, 2020, and before the fifty percent (50%) requirement was added, and at the time the BOP representative had made representations to multiple courts that all inmates previously approved (my brother and I signed our papers on the same date—he has been on home confinement since May 1, 2020—same case, same charges, same convictions) would be sent to home confinement. In fact, the Captain advised that the only reason I had not already been sent to home confinement is because I didn't have a more high profile attorney. (An express violation of 18 U.S.C. §3621.)

The BOP's responses and delays are in violation of my prior application, approvals by Case Manager, Unit Manager, CMC, SIS, and approval by Probation Department—Southern District of Texas—and not in compliance with the statute(s) referenced in my original BP-8, attached.

For these reasons, I am appealing a second time, exhausting my Administrative Remedies, and demonstrating obstruction of the Administrative Remedy process. I hereby appeal again.

See original BP-8 (with exhibits); BP-9 (with exhibits); BP-10 (with exhibits); Second BP-9 (exhibits refused)—all attached.

10-23-2020

Date

William Maxwell

# EXHIBIT

# 21

U.S. Department of Justice

Central Office Administrative Remedy Appeal

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP–DIR–9 and BP–DIR–10, including any attach-
ments must be submitted with this appeal.

From: MAXWELL, WILLIAM | 71944-279 | TA | BEAUMONT (LOW)
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

**Part A—REASON FOR APPEAL**   I wish to appeal Remedy ID–1048383–R1. On January 7, 2021, the first time Unit Mgr. D. Gladney was available after the holidays (Unit Mgr. Gladney was absent on vacation from December 21 [approximately] until January 5, 2021), I received the two documents attached as Exhibits to this BP-11. They are "Extension for Time for Response—Administrative Remedy" and "Administrative Remedy Generalized Retrieval". Unit Mgr. Gladney writes (on the documents) "Inmate Maxwell did not receive any response by December ~~December~~ 25, 2020, but his admin remedy was denied on December 23, 2020." And separately, on the other document, Gladney writes, "No response was received by this date." Both remarks of Unit Mgr. Gladney are on the exhibits, which are dated January 7, 2021, attached hereto. The South Central Office has consistently and unlawfully obstructed the administrative remedy process. As proscribed in 28 C.F.R. §§ 542.10, 542.13(b), 542.14, 542.18, each level of the Administrative Remedy process (BP-8, BP-9, BP-10, BP-11, etc.) has a prescribed time frame within which the BOP must respond to Administrative Remedies. Frivolous basis for denials are not appropriate. Here, the Regional Office (for the second time) has not responded. Due to the COVID-19 pandemic FCI-Beaumont-Low has violated all semblance of the Administrative [CONTINUED ON BP-11 ATTACHMENT PAGE]

11/15/2021
DATE

_____
SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RAP
RSD
SEE ATTACHED

FEB 2  2021

_____
DATE

GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 1048383-A1

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

SUBJECT: _____

_____
DATE

Printed on Recycled Paper

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)
APRIL 1982

USP LVN

BP-11 ATTACHMENT PAGE

Remedy protocols (implicating the Due Process Clause). The FCI-Beaumont-Low administration, during the summer of 2020, refused to accept a BP-9 (Case Mgr. McCowan instructed Unit TA 'to send electronic cop-outs to the Warden, not BP-9"); the South Central Regional Office refused to accept the Administrative Remedy appeal (BP-10) without the BP-9 response that the Warden refused to provide, attached. Maxwell filed multiple written requests (electronically) and through outside counsel, and on paper (BOP forms) with the Warden but received no response (to the Administrative Remedy--but Maxwell did receive a response that was belatedly tendered to counsel). All of these documents were sent to the South Central Regional Office. See attached BP-8 (with attachments); BP-9 (with attachments); multiple BP-10s (with attachments) appended hereto. In a last good faith attempt, Maxwell asked for a copy of the missing BP-9 response prior to Maxwell's second resubmittal to the South Central Regional Office (this farce of an Administrative REmedy taking months). FCI-Beaumont-Low adminstration did not comply. Instead, the Administration issued a new and different (original sent to counsel months previously) BP-9 response that was nonsensical. For example, the Warden opined that Maxwell was not a high risk for COVID-19 (Maxwell is 61 years old with mild to severe Asthma). The Warden (on April 10, 2020) had previously given Maxwell a written warning that Maxwell was high risk of severe illness or death. (That document was provided in my attachments to the BP-8, BP-9, BP-10, but apparently no one bothers to read any of the evidence that we are forced to attach under the Administrative Remedy paradigm.)

In any event, Maxwell relies on his BP-8, BP-9, BP-10 arguments and counsel's arguments previously made and adopt them herein and attach them hereto. Maxwell expressly objects under the Administrative Procedures Act (APA), to any new arguments being asserted by the BOP, as a basis for denial of RRC/home confinement that was not asserted in the original response to counsel. Maxwell expressly objects to the unknown basis used by the Regional Office to deny my request (refusal to deliver a written denial pursuant to the C.F.R. rules) under the Due Process Clause of the U.S. Constitution. Maxwell expressly objects to the continued unjustified extensions sought by the South Central Regional Office, purposefully thwarting the Administrative Remedy process. Maxwell expressly asserts Waiver (on all grounds not raised riginally with counsel). Maxwell expressly asserts admission. The BOP, throughout the process, as made multiple admissions and Maxwell expressly does not waive these BOP admissions.

Maxwell reasserts his rights for substantive due process relief previously raised in his BP-8, BP-9, BP-10, and by counsel. These include relief under 18 U.S.C. §3621; §3624; 34 U.S.C. §60541; and the modifications made thereto under The CARES ACT of 2020 and the First Step Act of 2018 and the Second Chance Act of 2018 (reauthorized and modified by the First Step Act of 2018). For these reasons I appeal Remedy ID 1048383-R1.

11/15/2021

Date

William Maxwell

# EXHIBIT

# 22

U.S. Department of Justice

Central Office Administrative Remedy Appeal

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attach-ments must be submitted with this appeal.

From: __William, Maxwell__    __71944-279__    __T/A__    __FCC-BMT-(LOW)__
　　　　LAST NAME, FIRST, MIDDLE INITIAL　　REG. NO.　　UNIT　　INSTITUTION

Part A—REASON FOR APPEAL  I am adopting all prior arguments made on the BP-8, BP-9, BP-10, BP-11, previously submitted and attached hereto and incorporated herein. Additionally, and for purposes of making a record prior to court action, with all due respect, the BOP's collective conduct has been a bad faith obstruction of justice. (1) The Warden obstructed justice by advising inmates not to file a BP-8 and BP-9, rather to send requests electronically. (Delay No.1). (2) The Regional office refused to accept my BP-10 noting the warden's refusal to respond to the BP-9. (Delay No.2). (3) On further request for a reply to the original BP-9 (pursuant to Regional Office delay tactics) the warden answers a new BP-9 not the original BP-9. (Delay No.3). (4) The Regional Office did not respond timely. (Delay No.4) (5) The institution did not deliver the Regional response timely. (Delay No.5). (6) The Unit Manager (documents attached) noted that the Region and institution did not timely respond to the BP-10. Nevertheless, Central Office (without reviewing the Unit Manager's notation that the BOP was at fault by not returning the BP-10 timely, thereby presumed denied under the C.F.R. remedy process) returned the BP-11. (Delay No.6). These all violate BOP policy and rules, and are unconsionable. See continuous page:

__2-4-2021__　　　　　　　　　　　　　　　　　　　_____
　　　DATE　　　　　　　　　　　　　　　　　　　SIGNATURE OF REQUESTER

Part B—RESPONSE

RECEIVED
MAR 2 6 2021
Administrative Remedy Section
Federal Bureau of Prisons

_____　　　　　　　_____
　　　DATE　　　　　　　　　　　　　　GENERAL COUNSEL

FIRST COPY: WASHINGTON FILE COPY　　　　　CASE NUMBER: _____

Part C—RECEIPT

CASE NUMBER: _____

Return to: _____
　　　　　LAST NAME, FIRST, MIDDLE INITIAL　　REG. NO.　　UNIT　　INSTITUTION

SUBJECT: _____

_____　　　　　_____　　BP-231(13)
　　　DATE　　　　　　　SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL　　APRIL 1982
USP LVN

William, Maxwell                71944-279          T/A          FCC-BMT-(LOW)
Last Name, First                Reg. No.           Unit         Institution

( continuous page )

For these reasons, and those previously noted and submitted, I am
appealing and exhausting administrative remedies prior to proceeding
in **court**.

3-4-2024

BP-231(13)

# EXHIBIT

# 23

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

-vs-                                           CRIMINAL NUMBER:

NICODEMO SCARFO, ET AL,                              11-740

Defendants.

Mitchell H. Cohen United States Courthouse
One John F. Gerry Plaza
Camden, New Jersey 08101
June 3, 2014

BEFORE:            HONORABLE ROBERT B. KUGLER
                   UNITED STATES DISTRICT JUDGE

APPEARANCES:

    PAUL J. FISHMAN, UNITED STATES ATTORNEY
    BY: STEVEN J. D'AGUANNO
        HOWARD J. WIENER
        ADAM SMALL
        NORMAN GROSS
    ASSISTANT UNITED STATES ATTORNEYS

    MICHAEL E. RILEY, ESQUIRE
    JEREMY C. GELB, ESQUIRE
    ATTORNEYS FOR NICODEMO SCARFO

    TROY A. ARCHIE, ESQUIRE
    MICHAEL FARRELL, ESQUIRE
    ATTORNEYS FOR SALVATORE PELULLO

    MICHAEL N. HUFF, ESQUIRE
    ATTORNEY FOR WILLIAM MAXWELL

    MARK W. CATANZARO, ESQUIRE
    ATTORNEY FOR JOHN MAXWELL

Certified as true and correct as required by Title 28, U.S.C.,
Section 753
/S/ Theodore Formaroli /S/ Robert Tate /S/ Lisa Marcus

United States District Court

that offense he was serving a sentence of supervised release from 2006 to early 2008. The nature of that offense is of no concern to you. The evidence of Mr. Scarfo's prior conviction was presented for the limited purposes of explanation why he was serving a sentence of supervised release during the time period that is relevant to the charges in Count 1 regarding the obstruction of justice component of racketeering conspiracy and Count 23 regarding conspiracy to obstruct justice. I will give you thorough instructions regarding the elements of those offenses later on.

The evidence was also presented for the purpose of proving Scarfo's status as a convicted felon, which is relevant to the firearms offenses charged in Counts 24 and 25 in the indictment. I will give you further guidance about the limited relevance of information regarding Scarfo's conviction to those charges later in these instructions.

Once again, and as with all the evidence presented in this case, it is for you to determine whether you believe this evidence about Scarfo's prior conviction, and, if you do believe it, whether you accept it for the purpose offered. You may give it such weight as you feel it deserves, but only for the limited purpose that I described to you.

Nicodemo S. Scarfo is not on trial for committing the offense that was the basis for his prior conviction. You may not consider the fact of the prior conviction as proof that

United States District Court

Nicodemo S. Scarfo has a bad character or has any propensity to commit crimes. Specifically, you may not use this evidence to conclude that because Scarfo may have been convicted of another offense he must also have committed the acts charged in the indictment in this case.

Remember that the defendants are on trial here only for the charges set forth in the indictment. Do not return a guilt verdict unless the government proves the crimes charged in the indictment beyond a reasonable doubt.

You've heard evidence that Salvatore Pelullo allegedly made a threat against David Roberts that included Pelullo's use of a racial epithet. The evidence of Pelullo's alleged use of that epithet was admitted for a limited purpose, which was whether the allege statement that Pelullo made to David Roberts was intend by Pelullo to be and was interpreted by David Roberts to be an actual threat against David Roberts and his family. You may not consider Salvatore Pelullo's alleged use of that epithet for any other purpose. Moreover, it is up to you to decide whether Pelullo used that racial epithet, and, if he did, whether it is relevant to the limited purpose that I just described.

Other than the limited purpose for which the evidence regarding the allege statement that Salvatore Pelullo made to David Roberts has been admitted into evidence, I instruct you that you may not consider the fact that any defendant used any

107

epithets as evidence that they committed any of the crimes charged in this case. Their use of those epithets is irrelevant to the charges in this case.

You've heard evidence regarding the alleged association between defendant Scarfo and Pelullo and certain organize criminal entities. In addition, there was evidence kind other defendants that touched upon organize crime, but did not suggest that those defendants were associated with organized crime.

There is no evidence that any defendants other than Scarfo and Pelullo was associated with any organized crime organization. You should not consider any of the evidence regarding La Cosa Nostra against any defendants other than Scarfo or Pelullo. Although Count 1 of the indictment alleges that all seven of the defendants were members of the Scarfo-Pelullo Enterprise. That enterprise, unlike the Lucchese and Philadelphia La Cosa Nostra families, is not alleged to be an organized crime organization as that term is usually understood.

Whether other defendants had any knowledge of Nicodemo S. Scarfo's Salvatore Pelullo's or co-conspirator Scarfo Senior's alleged associations with La Cosa Nostra and the significance of any such knowledge is something for you alone to decide. But I instruct you that there is nothing illegal about having such knowledge.

108

Evidence regarding defendant Scarfo's and Pelullo's alleged associations with La Cosa Nostra was presented only for limited purposes. Count 1 of the indictment alleges that defendants Scarfo and Pelullo "made use of, sought to benefit, and benefited from" their associations with La Cosa Nostra and used those associations to further the unlawful goals of the Scarfo-Pelullo Enterprise.

Count 1 of the indictment also alleges that defendants Scarfo and Pelullo established the Scarfo-Pelullo Enterprise and committed the crimes charged in Count 1 so that Scarfo could satisfy his financial obligations to the Lucchese La Cosa Nostra organization. It is up to you to decide whether or not the government proved that either Scarfo or Pelullo made use of sought to benefit or benefited from their association with La Cosa Nostra, and whether either of them used those associations to further the unlawfully goals of the Scarfo-Pelullo Enterprise.

It is also up to you to decide if the government proved that defendants Scarfo and Pelullo established the Scarfo-Pelullo Enterprise and committed the crime charged in Count 1 so that Scarfo could satisfy his financial obligations to the Lucchese La Cosa Nostra organization. If you conclude that the government did not prove any of those allegations, you should not consider the evidence of Scarfo's and Pelullo's association with La Cosa Nostra for any other purpose.

United States District Court

Evidence regarding the alleged assassination attempt on Nicodemo S. Scarfo was admitted only to explain why he allegedly associated himself with the Lucchese La Cosa Nostra organization and not for any other purpose. It is up to you to determine whether the government proved that Scarfo was a member of the La Cosa Nostra Lucchese criminal organization, and, if so, whether the attempted assassination on him, if you conclude that it occurred, was one of the reasons why he joined that organization. If you conclude that the government failed to prove both of those allegations, you should not consider the evidence of the alleged assassination attempt for any other purpose.

As with all the evidence presented in this case, it is for you to determine whether you believe this evidence about Nicodemo S. Scarfo's and Salvatore Pelullo's alleged association with La Cosa Nostra organizations, and, if you do believe it, whether you accept it for the purposes offered. You may give it such weight as you feel it deserves, but only for the limited purpose that I described to you.

You may not consider the evidence of those alleged associations as proof that defendants Scarfo and Pelullo had a bad character or any propensity to commit crimes. Remember that each defendant, including defendants Scarfo and Pelullo, is on trial here only for the charges in the indictment. Do not return a guilty verdict on any of the charges unless the

# EXHIBIT

# 24

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

        -vs-                 CRIMINAL NUMBER:

WILLIAM M.  MAXWELL,

                       11-740

        Defendant.

Mitchell H. Cohen United States Courthouse
One John F. Gerry Plaza
Camden, New Jersey 08101
October 1, 2015

B E F O R E:         HONORABLE ROBERT B. KUGLER
                    UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S:

PAUL J. FISHMAN, UNITED STATES ATTORNEY
BY:   STEVEN D'AGUANNO
      NORMAN GROSS
ASSISTANT UNITED STATES ATTORNEYS

MICHAEL HUFF, ESQUIRE
ATTORNEY FOR THE DEFENDANT

Certified as true and correct as required by Title 28, U.S.C., Section 753

              /S/ Carl J. Nami

(Open court)

THE DEPUTY COURT CLERK:  All rise.

THE COURT:  Sit down, everybody.  All right.  Are you going to argue this motion?

MR. GROSS:  I'm going to try, Judge.

THE COURT:  You have a notebook and everything.

MR. GROSS:  You know the Boy Scout modo, Judge.

THE COURT:  All right.  Mr. Huff, are you ready?

MR. HUFF:  Yes.

THE COURT:  All right, this the matter of United States versus William Maxwell.  Start with the appearance of counsel for the government please.

MR. GROSS:  Good morning, Your Honor.  Assistant United States Attorney, Norman Gross.  And with me here at counsel table is Assistant United States Attorney, Steven D'Aguanno.  I see Salhy Alliabad is here also.  So, the government is always happy to have reinforcements.

THE COURT:  Mr. Huff.

MR. HUFF:  Good morning, Your Honor.  Michael Huff on behalf of the petitioner, William Maxwell.

THE COURT:  All right, this is Mr. Huff's motion under Rule 38 (b)(2) for bail pending appeal.  I'll hear you, Mr. Huff.

MR. HUFF:  Thank you, Judge.  Judge I believe procedurally the first thing we're asking for I guess is a

3

stay of sentence followed by the setting of bail and if those motions are denied that the court recommend that Mr. Maxwell essentially be transferred from Texas up to this area so that he can assist counsel in filing his appellate brief.

Your Honor, counsel recognizes that the burden is on the defendant to show by clear and convincing evidence that he is not a flight risk, danger to the community and that there is a -- the appeal will raise substantial questions of law that are likely to result in a reversal or a new trial.

Judge, it does appear and I will address it briefly that the government is not or excuse me not contending that Mr. Maxwell is either a flight risk or a danger. I would, of course, point out to the court, the court is obviously fully aware having tried this case and litigated all the pretrial motions and even was involved in the matter of signing the warrants prior to the indictment being filed, that Mr. Maxwell was free on bail after he was arraigned in Texas and that, of course, at no period, at no point in time did he ever fail to appear in court. In fact, I believe that the court permitted Mr. Maxwell to travel within the entire District of Texas, The Eastern District of Pennsylvania so that he could fly into the Philadelphia Airport as well as meet with me in my office in either Philadelphia or New Jersey. And, of course, he was permitted to be in New Jersey and also Maryland as well where his sister resides. And, of course, as I pointed out, Your

4

Honor, at no point in time was Mr. Maxwell arrested during the pendency of this case for any reason and obviously always appeared in court when that was required.

Judge, the court knows the substantial pretrial litigation that was conducted in this case as well as objections and motions that were filed even during the trial itself. We raise some of those issues, Judges, in our papers.

Judge, there are some -- much -- very big issues such as the objections that the court heard throughout the trial as well as pretrial with regard to severing the defendants because of Mr. Scarfo's, the allegation that Mr. Scarfo was a member of La Cosa Nostra. That will be, of course, one of the issues that we raised on appeal, Your Honor, and that was, that was testimony that obviously was we would argue very prejudicial, you know, especially as to Mr. Maxwell who never was a member of La Cosa Nostra, never really a what I will call an associate in the terms that he was, you know, under the protection of La Cosa Nostra. He was simply a lawyer in Texas working for First Plus Financial Group. One of the other issues that we raise, Your Honor, is the motion to suppress. The court, as the court may recall, we filed a motion on March the Fourth of 2013 which was document Number 435 in that matter. If you recall, Your Honor, in that motion that we had filed with the court the search warrant gave permission to law enforcement to search the law offices of

5

William Maxwell, specifically his office located in Suite 400, and I believe if Your Honor may recall, we had the placard I believe which listed the offices and it was argued to the court at that time Mr. Maxwell in addition to occupying Suite 400 also had offices in Suite 401, 402, 403, 404 and 405 and obviously we argued that those hard drives that were seized as a result of the search warrant, that the search warrant itself as far as identifying the premise to be searched was overbroad.   Obviously the court denied that motion, but that could be an issue on appeal that if the Third Circuit grants it, substantially or likely change the outcome of the trial and could lead to a reversal or a new trial.   We also raised sufficiency arguments in our papers.   The Government obviously responded to those sufficiency arguments saying that they're not necessarily favored in these types of motions, Your Honor. But again specifically speaking about the gun charges, Your Honor.   If the court recalls, the only evidence that I can recall from the trial about the gun was the telephone call that was made by Mr. John Maxwell as he was allegedly bringing the guns into New Jersey from Texas and a phone call was made to an individual identified as Bill or at least that representation was made to Mr. Pelullo that Mr. John Maxwell had spoken to Bill and Bill said with regard to the helicopters flying overhead, allegedly flying overhead in the van that was following, that Bill said it might be something,

United States District Court
Camden, New Jersey

F   074

6

it might be nothing.  We would argue, Your Honor, that that issue has a very substantial likelihood of success on appeal and again could result in either a dismissal of that charge or even perhaps a new trial altogether.  Those are the issues that I would raise, and, of course, rely on my brief for the remainder of the argument, Your Honor.  And, of course, all the issues that have been filed and litigated throughout this trial.  I know the court recalls.

THE COURT:  I've already denied bail pending appeal.  What has changed since then?

MR. HUFF:  For Mr. Maxwell, Your Honor?

THE COURT:  Yeah.

MR. HUFF:  Are you speaking in terms --

THE COURT:  The verdict.

MR. HUFF:  Okay, that's --

THE COURT:  Revoked his bail based on his argument at that time.  Has anything changed?

MR. HUFF:  Well, I guess, yes, Your Honor.  What has changed, I believe that may have been on July the Fourth or July the Third.

THE COURT:  The third.

MR. HUFF:  Yeah, July the Third.  Judge, at that hearing, if you recall, and I reviewed the transcript before today, the Government specifically made arguments with regard to flight risk and danger to the community.  The danger to the

7

community part was in reliance upon the gun charges that he had been convicted of. And, so, I think what's changed is those arguments made by the Government in order to detain Mr. Maxwell prior to sentencing. They seem to be conceding at this point in that they're not relying specifically on his risk of flight or danger to the community. And, obviously, Your Honor, precautions can be taken by the court to make sure that the risk of flight and danger to the community is minimized by perhaps ordering house arrest pending appeal. Checking in with Pretrial Services and other measures that the court can take to make sure that Mr. Maxwell appears in court and/or turns himself in, for example, if the appeal is denied.

THE COURT: Your argument regarding recommending to the Attorney General that he be incarcerated closer to here so he can have better access to you for purposes of the appeal. Of course it's discretionary with the Attorney General. The Attorney General, she need not follow my recommendation, but it was a year that passed between the date of the conviction and the date of sentencing. What were you unable to speak to Mr. Maxwell about during the course of that period in time in excess of a year about his potential appeal?

MR. HUFF: Well, we, we had obviously that opportunity to do so, Your Honor. I will say as the court also knows many, many of those visits were focused on, I guess you could say post-conviction relief such as the Brady motions

that had been filed with the court.  So that a lot of that opportunity during that one year period was not spent, although a portion of it was not spent on discussing appellate issues, but instead were discussing I believe Rule 33 issues especially with regard to the Philadelphia Eastern District case in the Brady motion that had been filed that was really most of the conversations surrounded those issues, Your Honor.

THE COURT:  Well, you're unable to demonstrate to me that you were unable to speak to Mr. William Armstrong during that period of time about his potential appeal?

MR. HUFF:  Mr. Maxwell.

THE COURT:  I'm sorry.  Mr. Maxwell.  I'm sorry.

MR. HUFF:  No.  We obviously had the opportunity to do that, yes, Your Honor.

THE COURT:  All right.  Thank you.

MR. HUFF:  Thank you.

THE COURT:  Mr. Gross, what would you like to say?

MR. GROSS:  Judge, I'll be very brief.  One difference between now and when Your Honor revoked bail following the verdict is that the statute providing presumption for incarceration after sentence -- I'm sorry.  Has a presumption of detention after a sentence of incarceration has been imposed and here it's very likely a sentence of incarceration.  One, I would add it would not be affected even if the Third Circuit, and I'm not conceding

9

anything here, but even if the Third Circuit concluded that the evidence for the gun charge was insufficient, that wouldn't reduce the sentence at all.

Just very briefly. With respect to the severance and the claim that he was harmed by the, Mr. Maxwell was harmed by the LCN evidence, Your Honor gave a cautionary instruction that the jury should not -- that there was no evidence that Mr. Maxwell was involved in LCN, which the jury likely followed.

With respect to the motion to suppress in addition to the arguments that we put forward as to why there was no unreasonableness in that search. You'll recall that Mr. Maxwell signed a consent for that search. So there were two grounds for which you could deny the motion. And I can't remember -- the motion to suppress, Your Honor, I mean I think there were five hundred pages of briefing on that and extensive oral arguments and I'm quite confident that the Third Circuit is not going to see any reversible error here. So unless if your Honor has any questions.

THE COURT: I don't.

MR. GROSS: Thank you.

THE COURT: Mr. Huff, did you want to respond at all?

MR. HUFF: No, Your Honor.

THE COURT: All right, thank you. I'm going to deny both motions as to the application for a stay and bail pending

*United States District Court*
*Camden, New Jersey*

F 070

appeal.  There are no issues that I think that the Third Circuit is going to take up and reverse this court on.  There is the presumption of the revocation of bail because of the lengthy prison sentence that was imposed in this case.  We spent thousands of pages and hundreds of hours arguing the pretrial motions and the post-trial motions and I made my findings.  I made my rulings as explicitly as I could.  As to the issues raised today, I don't see any need for me to revisit those issues.  I think my rulings were correct and Mr. Gross is obviously correct about the gun charge that did cause some discussion at the time the motion was raised because the evidence on that one is a little thin.  But he's correct that even if that's reversed, he would still get the same sentence on the racketeering conviction in the case.

As to a recommendation to the Attorney General, I'm not going to do that because the defendant has had sufficient time with his counsel here in New Jersey to talk about the issues for appeal and I'm confident that they can continue to communicate by phone and by e-mail and regular mail as they firm up their brief on appeal.  So for all those reasons the motions will be denied.  Thank you.

MR. HUFF:  Thank you for your time, Judge.

MR. D'AGUANNO:  Thank you, Judge.

(The matter was then concluded)

EXHIBIT

25

TRULINCS 71944279 - MAXWELL, WILLIAM - Unit: BML-T-A

---

FROM: 71944279
TO: Warden LOW
SUBJECT: ***Request to Staff*** MAXWELL, WILLIAM, Reg# 71944279, BML-T-A
DATE: 06/14/2020 03:32:16 PM

To: Warden Garrido
Inmate Work Assignment: Education

Dear Warden:

I needed to document for purposes of protecting the record, that we (Unit TA) have been advised not to submit a BP-8 or BP-9 to the Unit Team by Ms. McGowan (case manager in the building downstairs I believe), regarding our requests to be transferred to home confinement under multiple statutes. We were advised that this instruction was done pursuant to your wishes.

Specifically, 18 U.S.C. Section 3621(b)(1)-(5) which governs transfers to home confinement eligibility in addition to the expansion of 18 U.S.C. Section 3624(c) as modified by the CARES Act Section 12003(b)(1) & (2), and in accordance with the Attorney General's two memorandum of March 26, 2020 and April 3, 2020.

As these instructions are contrary to the Administrative Remedy Paradigm set up by the BOP under the Administrative Procedures Act, it seems prudent that a record be made establishing that the inmates in TA (me in particular) have been advised not to comply with the BP-8 and BP-9 provisions (for cases related to transfer to home confinement).

Or course the warden of an institution is at liberty to modify these provisions, conditioned on no allegations or affirmative defenses are being asserted subsequently that the inmates failed follow the strict procedural exhaustion of administrative remedies that is typically imposed by the 5th Circuit.

way of clarification, I have provided multiple emails noting my eligibility for home confinement and request for same (April 7, 2020 and April 22, 2020), both under 18 U.S.C. Section 3621(b)(1)-(5) and Section 3624(c).. and have been determined to be eligible for home confinement by my unit team. Additionally, counsel has reached out to you on my behalf on multiple occasions (April 8, 2020; April 30, 2020) regarding same. It should be noted that in those requests I additionally, asked for release under the distinct and separate statutory paradigm 18 U.S.C. 3582 otherwise known as "compassionate release". Collectively these constitute my requests for home confinement under multiple statutory authority and were requested in the alternative.

Since the time of those prior correspondences, my verified release plan and home confinement residence has been approved by the Southern District of Texas Probation Department (On May 26, 2020). I am awaiting my transfer to quarantine prior to transfer to home confinement. Thank you for your assistance with these matters.

Please advise if I misunderstood the instructions Ms. McGowan made regarding inmate applications for home confinement, the use of BP-8, BP-9 and if so under what parameters those should either be used or not used (as it relates to home confinement).

Respectfully submitted,

WTM

BP-10-4 (1 of 1)

TRULINCS 71944279 - MAXWELL, WILLIAM.- Unit: BML-T-A

--------------------------------------------------------------------------------------

FROM: 71944279
TO: Warden LOW
SUBJECT: ***Request to Staff*** MAXWELL, WILLIAM, Reg# 71944279, BML-T-A
DATE: 08/21/2020 07:19:44 AM

To: Warden F. J. Garrido
Inmate Work Assignment: Education

Warden F. J, Garrido:

Re: Fifth Cross Contamination of inmates and preparation for hurricane

I know that there is nothing you can do about the situation as it pertains to this Fifth Cross Contamination. Two inmates that came in on the last chain have tested positive for COVID and are in quarantine. There is no question that the remaining inmates on the chain will also, a few days later test positive for COVID. I recognize that the other inmates are in isolation for a period of days. I am simply making a record of the situation on or about the date that it happened (chain came in on Wednesday 8-19-2020). This will be the 5th time this prison has been cross contaminated this summer further demonstrating that the BOP is unable due to its design and operations to maintain social distancing among the inmates during this pandemic. I am assuming that you do not have a decision making role in the transfer of inmates into the institution; but in furtherance thereof, this transfer further refutes the statements of various wardens throughout the United States regarding the cessation of transfers of inmates from other BOP facilities (See litigation at Terminal Island, Lompoc, Elkton, Danbury, Oakdale wherein it was alleged under oath that transfers of inmates between facilities had stopped). Additionally, two bus loads of inmates have been transferred out of this institution in the past 14 days.

This is being provided to make a record of the activities and conduct of the BOP at this facility that may place inmates (under the CDC guidelines and COVID guidelines) at risk of COVID-19.

Next, to further protect the record, the weather forecasts a hurricane to directly hit this area. This will be, at least, the fourth hurricane and/or tropical storm to hit this complex in the past 12 years. In each situation, the institution lost power, and often water. Without power and water the inmates do not have toilets, showers, and other hygiene necessary for the safe and orderly operation of the institution. This situation has happened each time a hurricane or tropical storm hits this area (Rita, Harvey, etc...). Portable toilets are brought in for use by inmates, but only after days where inmates are without toilets, in which the inmates are housed in inhumane conditions. The inhumane conditions are always rectified after 1-2 weeks. Given the situation with the pandemic it seems prudent to provide notice ahead of time to the executive staff of the pending situation to allow them to take whatever measures they deem fit to protect the safety and security of the inmates but at the same time to provide humane conditions. This is further being provided to remove the affirmative defense of "act of god" (etc..) and assertion that the events were unknown to the executive staff ahead of time. Hopefully, the hurricane will take a different path and the pre-planned safety and security of the inmates will not be impacted, But as everyone who lives in hurricane country knows, you have to be prepared ahead of time for the hurricane... which is something this institution and complex never seems to be.

Thank you for your attention to these concerns.

Respectfully submitted,

WTM

F    032

TRULINCS 71944279 - MAXWELL, WILLIAM - Unit: BML-T-A

--------------------------------------------------------------------------------

FROM: 71944279
TO: Warden LOW
SUBJECT: ***Request to Staff*** MAXWELL, WILLIAM, Reg# 71944279, BML-T-A
DATE: 08/22/2020 05:38:35 PM

To: Warden F. J. Garrido
Inmate Work Assignment: Education

Warden Garrido:

There appears to be "systemic" attempts to thwart the administrative remedy process. Large numbers of inmates in this dorm (T-A) are not being either mailed the response from regional office regarding administrative remedies that are pending there, in particular pertaining to the CARES ACT, 18 U.S.C. Section 3621; 18 U.S.C. Section 3582; First Step Act Relief; Second Chance Act Relief; requests to be moved to RRC/home confinement at the end of the inmates sentence. It happened to me, and to at least 12 other inmates. Ms. Love is getting me a copy and noting that it was not timely delivered to me and should be commended for follow up on these requests. I do not know whether the SNAFU occurred at this institution or at Region or at a combination of both, but it seems prudent to make a contemporaneous record of same.

Thank you for your attention to this matter.

Regards,

WTM

CC: OIG

F    033

TRULINCS 71944279 - MAXWELL, WILLIAM - Unit: BML-T-A

-----------------------------------------------------------------------------------------------

FROM: 71944279
TO: Unit Management BLD 1 LOW
SUBJECT: ***Request to Staff*** MAXWELL, WILLIAM, Reg# 71944279; BML-T-A
DATE: 08/26/2020 07:19:41 PM

To: Ms. Love
Inmate Work Assignment: Education

Ms. Love

I am trying to get my receipt for Administrative Remedy and the Extension of time for Response (if any) filed by the Regional Office. I am also trying to get the Regional office response. Additionally, please get me my Administrative Remedy Generalized Retrieval report (Full Screen Format) and my Administrative Remedy Generalized Retrieval (Single Line Format) report. My administrative remedy was received by the Regional office via Certified Mail Return Receipt Requested # 70192280000151549354 on July 14, 2020 (but may have been erroneously posted on July 13, 2020 by the Regional Office).

Thank you for your assistance with this matter.

Respectfully submitted.

WTM

F    036

TRULINCS 71944279 - MAXWELL, WILLIAM - Unit: BML-T-A

----------------------------------------------------------------------------------

FROM: 71944279
TO: Unit Management BLD 1 LOW
SUBJECT: ***Request to Staff*** MAXWELL, WILLIAM, Reg# 71944279, BML-T-A
DATE: 09/03/2020 03:34:14 PM

To: Ms. Love
Inmate Work Assignment: Education

Ms. Love:

On 8.26.2020 I requested a copy of the Regional Office's response to my BP-10 administrative remedy that was filed by my counsel and delivered to the regional office CMRRR on July 14, 2020. I additionally requested a copy of any extensions requested by the Regional Office to respond to my BP-10. To date I have not received any of the items that I requested in the 8.26.2020 electronic email. I am renewing my request for those items noted in the 8.262020 email. A copy of that email is being resent to you as well as the Warden to document my request.

It has been a policy of the Regional Office to thwart the administrative remedy process by unnecessarily delaying/denying valid requests (it is believed based on the Regional Office nonsensical responses to inmates BP-10 requests and therefore asserted). For example, the Regional Office typically urges that some document is missing from the BP-10, such as a BP-9 or the warden's response to the inmate's BP-9. But the Regional Office does not bother to check the volume of paperwork that it requires to be attached to the BP-10. Often times the document that the Regional Office requests is actually attached to the original filing.

For these reasons it is imperative, as time is of the essence, that I receive the Regional Response or the Regional Office's request for extension of time to file their responses. It has long been my contention that the institution and the Regional Office intentionally and as a matter of policy and practice blocks the administrative remedy process by making it virtually impossible for the inmate to timely comply with the requirements.

Thank you for your prompt attention to this matter.

Respectfully requested,

WTM

CC: OIG and Warden

F   037

TRULINCS  71944279 - MAXWELL, WILLIAM - Unit: BML-T-A

---------------------------------------------------------------------------------------------------

FROM: 71944279
TO: Unit Management BLD 1 LOW
SUBJECT: ***Request to Staff*** MAXWELL, WILLIAM, Reg# 71944279, BML-T-A
DATE: 09/03/2020 03:36:05 PM

To: Ms. Love
Inmate Work Assignment: Education

Ms. Love

Attached is the prior request for my Administrative Remedy response from the Regional Office requested in my August 26, 2020 and referenced in my September 3, 2020 emails.

Thank you for your attention to this matter.

WTM
-----MAXWELL, WILLIAM on 8/26/2020 7:19 PM wrote:

>

Ms. Love

I am trying to get my receipt for Administrative Remedy and the Extension of time for Response (if any) filed by the Regional Office. I am also trying to get the Regional office response. Additionally, please get me my Administrative Remedy Generalized Retrieval report (Full Screen Format) and my Administrative Remedy Generalized Retrieval (Single Line Format) report. My administrative remedy was received by the Regional office via Certified Mail Return Receipt Requested # 192280000151549354 on July 14, 2020 (but may have been erroneously posted on July 13, 2020 by the Regional Office).

Thank you for your assistance with this matter.

Respectfully submitted.

WTM

F    038

TRULINCS 71944279 - MAXWELL, WILLIAM - Unit: BML-T-A

---------------------------------------------------------------------------------------------------------

FROM: 71944279
TO: Warden LOW
SUBJECT: ***Request to Staff*** MAXWELL, WILLIAM, Reg# 71944279, BML-T-A
DATE: 09/03/2020 03:38:04 PM

To: Warden F. J. Garrido
Inmate Work Assignment: Eduation

Warden Garrido:

I have been trying to get the Regional Office response or request for extension of time to file a response to my BP-10. To date I have not received any response and time is of the essence. Your assistance in this matter is appreciated.

Respectfully,

WTM
-----MAXWELL, WILLIAM on 9/3/2020 3:36 PM wrote:

>

Ms. Love

Attached is the prior request for my Administrative Remedy response from the Regional Office requested in my August 26, 2020 and referenced in my September 3, 2020 emails.

Thank you for your attention to this matter.

WTM
-----MAXWELL, WILLIAM on 8/26/2020 7:19 PM wrote:

>

Ms. Love

I am trying to get my receipt for Administrative Remedy and the Extension of time for Response (if any) filed by the Regional Office. I am also trying to get the Regional office response. Additionally, please get me my Administrative Remedy Generalized Retrieval report (Full Screen Format) and my Administrative Remedy Generalized Retrieval (Single Line Format) report. My administrative remedy was received by the Regional office via Certified Mail Return Receipt Requested # 70192280000151549354 on July 14, 2020 (but may have been erroneously posted on July 13, 2020 by the Regional Office).

Thank you for your assistance with this matter.

Respectfully submitted.

WTM

TRULINCS 71944279 - MAXWELL, WILLIAM - Unit: BML-T-A

--------------------------------------------------------------------------------

FROM: 71944279 MAXWELL, WILLIAM
TO: Warden LOW
SUBJECT: ***Request to Staff*** MAXWELL, WILLIAM, Reg# 71944279, BML-T-A
DATE: 06/02/2020 06:44 AM

To: Warden Garrido
Inmate Work Assignment: Education

Warden F.J. Garrido:

Re: United States v. William Maxwell; United States District Court of New Jersey

Warden:

I needed to provide notice, for purposes of protecting the record and for purposes of documenting that I have been unable to effectively participate in the preparation of my appeal.

Background:

In July of 2014 the jury in my case returned a guilty verdict. In July of 2015 I was sentenced. In August of 2015 I was transferred to this facility. In the interim, the lead prosecutor shot himself. The lead defense counsel has been prosecuted for various charges (which he was under indictment at the time he represented us), has been convicted, gone to Federal Prison, served his entire sentence and been released back into the community. This along with dozens and dozens of other issues plague my case.

For longer than the last two months we have been locked down without effective access to our counsel. Most of our Unit Team Staff have been augmented to other positions throughout the institution as the institution struggles to deal with the COVID-19 pandemic.

I have actively sought transfer to home confinement due to my asthma and my designation as high risk for death or serious illness (by you based on my CDC co-morbidity factors) based on the Attorney General's March 26, 2020 Directive to the BOP along with the Attorney General's April 3, 2020 Directive to the BOP and the CARES Act. I have spoken with counsel and, to date, counsel has contacted you, both by fax and overnight delivery, on April 8, 2020 and April 30, 2020 to demonstrate my eligibility to be transferred to home confinement due to COVID-19.

My Unit Team has done all they can. I have been approved for home confinement. I signed my transfer/release papers on April 16, 2020; I have been cleared by medical; probation has approved my release plan; I have met all the requirements to be transferred to home confinement; and my designated out date was June 15, 2020 (2 and 1/2 months after I began seeking to remain safe from the COVID-19 virus pandemic affecting the BOP). During the time that my home confinement request has been pending more than 3000 inmates and many hundreds of staff in the BOP have contacted the virus. Dozens and dozens have died.

Both myself and counsel have documented the threat to my life and medical well being from the COVID-19. Both Congress and the Attorney General have expressed a desire to place inmates such as myself (especially in light of the fact that I am not finally convicted... my appeal is not final) on home confinement. I have been an exemplary inmate during my entire time in the BOP (and fully expect my case to be reversed). I am still a licensed attorney (with my license being suspended during the time of my appeal).

Both myself (April 7, 2020 and again on or about April 27, 2020) and counsel (April 8, 2020 and April 30, 2020) have provided notice of the you and Institution Counsel of the legal parameters to include the four Circuit cases which have all held that denying an inmate's transfer to home confinement based on a percentage of their sentence served was unlawful. And while I recognize that the Central Office memo (of April 22, 2020) may have noted that no one is being actually denied (rather not "prioritized" for transfer to home confinement) that slight of hand (by Central Office) is not sufficient to protect from the forfeiture of "sovereign immunity" for staff and BOP executives for continuing to participate in an "unlawful act" as the 4 Circuit Court's to address the matter have indicated.

During the past multiple weeks, in violation of the CARES Act, our phones have been turned off. The CARES Act, transformed the "phone privilege" into a right, when it provided for the funding for the phones during the pandemic emergency. Despite this fact and legal right, our phones have been turned off for weeks, not for any conduct for which I was involved but due to an

BP-10-3 (1 of 2)

TRULINCS 71944279 - MAXWELL, WILLIAM - Unit BML-T-A
-----------------------------------------------------------------------------------------------------

(again) unlawful group punishment paradigm denying the administrative remedy process and the Due Process Clause of the United States.

All this being noted, my appellate brief is due to the 3rd Circuit toward the last week of June (27th of June I believe) and I am, by the phones being turned off, being obstructed from contact with my counsel and being denied an opportunity to participate in my own direct appeal. As this will be the subject of litigation going forward (especially due to the fact that I have been approved to be transferred to home confinement on June 15, 2020 .. but have not been placed in quarantine yet) I needed to provide this notice to protect the record. Please save this as it will be requested in the course of litigation.

Thank you for your prompt attention and notice of this ongoing obstruction.

Respectfully,

WTM

BP-10-3 (2of2)

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: MAXWELL, WILLIAM    71944-279    TA    BEAUMONT (LOW)

     LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - REASON FOR APPEAL**

I wish to appeal for a <u>second</u> time. The First time, the Warden and staff refused the BP-9. Then they <u>lost</u>, and refused to produce, the response of the Region to the BP-10 (obstructing and delaying the Administrative Remedy process). When I requested the BP-10 response from Region, the Warden replied (not to what was requested—I already have one which was in my paperwork sent to Region the first time—it had been sent to my attorney) as though I had filed a new BP-9. <u>I did not!</u> I asked for the original Regional response. Then, to make themselves look as incompetent as possible, the Warden gave an asinine response. For example, the Warden states I do not have an underlying medical condition. <u>That was stupid.</u> Attached is a copy of the designation of my high risk from COVID-19 given to me <u>by the Warden</u> on April 10, 2020 (six [6] days before I signed my release papers on April 16, 2020). Next he opines that I have a crime of violence. <u>That was stupid.</u> I have a "-10" PATTERN Score because I have no violence. The Government has previously

       [CONTINUED ON BP-10 ATTACHMENT PAGE]

10-23-2020

DATE                      SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

OCT 2 6 2020

BUREAU OF PRISONS
LEGAL DEPARTMENT, SCRO

_____ DATE _____      REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE      CASE NUMBER: 1040888-R1

**Part C - RECEIPT**

                                    CASE NUMBER: _____

Return to: _____

     LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____ DATE _____      SIGNATURE, RECIPIENT OF REGIONAL APPEAL

                                                BP-230(13)

## BP-10 ATTACHMENT PAGE

stipulated that I am not a flight risk or danger to the community (at my bail hearing) and the Court previously instructed the jury of same.  Attached is a copy of the transcript that is in my file (I gave it to Unit Manager Rivera).

Third, the Warden opines that I have not completed fifty percent (50%) of my sentence.  My approval on April 12, 2020, was before my signing my home confinement papers on April 16, 2020, and before the fifty percent (50%) requirement was added; and at the time the BOP representative had made representations to multiple courts that all inmates previously approved (my brother and I signed our papers on the same date--he has been on home confinement since May 1, 2020--same case, same charges, same convictions) would be sent to home confinement.  In fact, the Captain advised that the only reason I had not already been sent to home confinement is because I didn't have a more high profile attorney.  (An express violation of 18 U.S.C. §3621.)

The BOP's responses and delays are in violation of my prior application, approvals by Case Manager, Unit Manager, CMC, SIS, and approval by Probation Department--Southern District of Texas-- and not in compliance with the statute(s) referenced in my original BP-8, attached.

For these reasons, I am appealing a second time, exhausting my Administrative Remedies, and demonstrating obstruction of the Administrative Remedy process.  I hereby appeal again.

See original BP-8 (with exhibits); BP-9 (with exhibits); BP-10 (with exhibits); Second BP-9 (exhibits refused)--all attached.

10-23-2020

Date

William Maxwell

# EXHIBIT

# 26

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: MAY 24, 2022


FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BEAUMONT LOW FCI

TO  : FRANCISCO JAVIER MORIN, 25592-479
      BEAUMONT LOW FCI    UNT: XA    QTR: X03-047U
      P.O. BOX 26025
      BEAUMONT,  TX 77720



FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID        : 1121405-F1      ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED    : MAY 24, 2022
SUBJECT 1        : REQUESTS FOR MONETARY COMPENSATION
SUBJECT 2        :
INCIDENT RPT NO:

REJECT REASON 1: YOU SUBMITTED YOUR REQUEST OR APPEAL TO THE
                 WRONG LEVEL.  YOU SHOULD HAVE FILED AT THE
                 INSTITUTION,   REGIONAL OFFICE, OR   CENTRAL
                 OFFICE LEVEL.

REJECT REASON 2: YOU RAISE MORE THAN ONE ISSUE/RELATED ISSUE OR APPEAL MORE
                 THAN ONE INCIDENT REPORT (INCIDENT NUMBER).   YOU MUST
                 FILE A SEPARATE REQUEST/APPEAL FOR EACH UNRELATED ISSUE
                 OR INCIDENT REPORT YOU WANT ADDRESSED.

REJECT REASON 3: YOU MUST PROVIDE MORE SPECIFIC INFORMATION (E.G. CASE NO.)
                 ABOUT YOUR REQUEST/APPEAL SO THAT IT MAY BE CONSIDERED.

REMARKS          ALL TORT CLAIMS ARE PROCESSED W/ LEGAL DEPT. IF YOU
                 WISH TO SEEK CRIMINAL PROSECUTION FOR ALLEGATIONS
                 PLEASE SEEK LEGAL COUNSEL.

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: GONZALEZ, JOSE                          10130-179                              BML
_____
      LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.          UNIT              INSTITUTION

**Part A— INMATE REQUEST**

I am appealing the unlawful actions of the BOP and staff. Specifically, the failure to apply FSA Time Credits is colorable as official oppression, false imprisonment and abuse of office under color of law. I am seeking relief under Title 42 U.S.C. §1983, Federal Tort Claims Act, Bivens, and habeas relief under Title 28 U.S.C §2241. I am seeking declaratory relief, injunctive relief, monetary damages and a referral to the Department of Justice for criminal prosecution. The BOP staff is acting beyond the scope of their statutory authority.

Additionally, and fundamentally, I am appealing denial of my "informal requested relief" via BP-8 dated 05/11/2022 to be placed in prerelease custody as soon as possible pursuant to 28 C.F.R. §523.44(b)(1) and (d) now that I am immediately eligible.

_____
         DATE                                              SIGNATURE OF REQUESTER

**Part B— RESPONSE**

_____
         DATE                                              WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                                 CASE NUMBER: _____

                                                          CASE NUMBER: _____

**Part C— RECEIPT**

Return to:  GONZALEZ, JOSE                    10130-179                              BML
_____
            LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.          UNIT              INSTITUTION

SUBJECT: FAILURE TO APPLY FSA TIME CREDITS; APPEAL 05/11/2022 BP-8
_____
         DATE                                   RECIPIENT'S SIGNATURE (STAFF MEMBER).

USP LVN              Printed on Recycled Paper                          BP-229(13)
                                                                       APRIL 1982



Attachment A

## DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons P1330.18, Administrative Remedy Program, (January 6, 2014), requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal written complaint. This form shall be used to document your efforts towards informally resolving your grievance.

Inmate Name: __FRANCISCO JAVIER MORIN__   Reg. No.: __25592-479__   Unit: _____

Specific Complaint and Requested Relief:

This is a formal request to be placed in prerelease custody as soon as possible under the provisions of the First Step Act for which I am eligible in accordance with the terms of the "Final Rule" published by the BOP on 01/19/2022 in the Federal Register as 28 C.F.R. §523.44(b)(1) and (d).

As of 05/04/2022 I have served 59.62 months (4 years, 11 months, 2 days) of my 97 month sentence. I have retained 12.10 months (368.48 days) of Good Conduct Time Credits (GCTs). Absent eligibility under the First Step Act (and the provisions of the Second Chance Act reauthorized by the First Step Act) my release date would be 06/03/2024. That date is determined by subtracting my 12.10 months GTC from my 97 month sentence to determine that my Statutory

See attached continuation page(s):

Efforts Made By Inmate To Informally Resolve Grievance (be specific):

Counselor's Comments: Info. reveals you are eligible for FTC; however, Inmates within 12 months of release are only being reviewed at this time. Your PRD is 6-3-2024.

_____ 5-11-22
Correctional Counselor's Review / Date

R. Taylor _____ 5-11-22
Unit Manager's Review / Date

Name:  FRANCISCO JAVIER MORIN          Reg. No.: 25592-479    Unit:

CONTINUATION PAGE(S)

Release Date is at month number 84.90.  I have served 59.08 months leaving 25.82 months for me to serve in BOP custody prior to my begining a 24 month term of supervised release under U.S. Probation.

However, I am FSA eligible. As of 05/04/2022 I have earned 15.28 months of First Step Act Time Credits (FTC)(Note: From 04/09/2019 to 10/05/2019 and from 08/14/2021 to 12/21/2021, I did not earn FTC's due to disciplinary incidents. At all other times from 12/21/2018 to 05/04/2022 I earned 15 days of FTC's for every 30 days).  28 C.F.R 523.44 requires the BOP to either immediately apply the 15.28 months of FTC to my time in prerelease custody or reduce my 97 month sentence to 85 months and add up to 12 months of my FTC to my 12 month term of supervised release and the remaining 3.28 months to my time in prerelease custody (halfway house and/or home confinement).

By applying the FTC's I have earned to date the following will result if I am transferred to an RRC as soon as possible:

 3.28  Months in an RRC (under the Second Chance Act), followed by
12.00  Months in prerelease custody (under the First Step Act, followed by
24.00  Months of supervised release under U.S. Probation.

Or alternatively, if 12 months of my 15.28 months of earned FTC's are added to my 24 months of supervised release and subtracted from my 97 month sentence, the result will be as follows:

 3.28  Months in prerelease custody on home confinement starting immediately, with no time spent in an RRC, followed by
36.00  Months of supervised release under U.S. Probation.

CALCULATIONS

 97.00  Month sentence imposed
-12.10  Months of Good Conduct Time
 84.90  Months that must be served (Statutory Sentence)
-59.62  Months served as of 05/04/2022
 23.28  Months of Statutory Sentence remaining to be served

<u>15.28</u>  Months of FSA FTC's earned as of 05/04/2022

10.00  Months available for Second Chance Act ensured time in prerelease custody.

<u>FORMAL REQUEST</u>

The 10.00 months remaining of my Statutory Sentence which has not been served or earned as FTC's represents the portion of my sentence remaining that I am entitled to serve in an RRC (halfway house). This is mandated by the First Step Act as reauthorized by the Second Chance Act and renders me statutorily eligible for 12 months of halfway house in addition to any FSA FTC earned time credits.

For the reasons presented herein, please inform DSCC in Grand Prairie, Texas (or any other appropriate division of the BOP responsible for applying First Step Act Federal Time Credits (FTCs), that I am entitled to immediate transfer to an RRC because of my earned FTCs and my RRC time of 11.01 months equals the remainder of my Statutory Sentence, (see 28 C.F.R. §523.44(b)(1) and (d), (attached) which ensures that my FTCs are to be in addition to all other provisions of law that prescribe that I be afforded the maximum amount of time in prerelease custody.

Respectfully Submitted,

_____

FRANCISCO JAVIER MORIN
Reg. No. 25592-479

June 29, 2022



BP-8

BMX 1330.18A
May 8, 2015
Page 6

Attachment A

## DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons P1330.18, Administrative Remedy Program, (January 6, 2014), requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal-written complaint. This form shall be used to document your efforts towards informally resolving your grievance.

Inmate Name: RENE IZAGUIRE          Reg. No.: 29889-379          Unit: WB

Specific Complaint and Requested Relief:

I am FSA Time Credit eligible.

Under the terms of the First Step Act (FSA) I am eligible to have twelve months of my accumulated time credits applied to reduce my 100 month sentence to 88 months (adding that time to my term of supervised release). That done, with my time served, Good Conduct Time credits (GCT), and the balance of FSA Time Credits earned (and that I am continuing to earn), I am eligible for transfer to RRC (Halfway House) and Home Confinement within the next 60 days. Please begin this process immediately.

Respectfully,

_Rene Izaguire_
RENE IZAGUIRE

Efforts Made By Inmate To Informally Resolve Grievance (be specific):

YOUR CURRENT PRD IS 11/12/25, FSA TIME CREDIT IS APPLIED WHEN YOU ARE AT YOUR 24 MONTH MARK. THE 24 MONTH MARK IS THE TIME FRAME WHEN YOU ARE BEING REVIEW FOR RRC. YOU ARE ELIGIBLE FOR THE FSA INCLUDING HAVING A LOW RECIDIVISM PATTERN SCORE, YOU MEET ALL QUALIFICATION FOR THE TIME CREDIT BUT YOU WILL BE REVIEW AND MOST LIKELY RECEIVE YOUR CREDIT AT YOUR 24 MONTH MARK FOR RRC.

Counselor's Comments:

S. M404                              07/14/22                    C. Lewis   7/14/22
Correctional Counselor's Review / Date          Unit Manager's Review / Date

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: MAY 24, 2022

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BEAUMONT LOW FCI

TO   : JOSE GONZALEZ, 10130-179
       BEAUMONT LOW FCI      UNT: XA      QTR: X01-001U
       P.O. BOX 26025
       BEAUMONT, TX 77720

FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID        : 1121406-F1        ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED    : MAY 24, 2022
SUBJECT 1        : REQUESTS FOR MONETARY COMPENSATION
SUBJECT 2        :
INCIDENT RPT NO:

REJECT REASON 1: YOU SUBMITTED YOUR REQUEST OR APPEAL TO THE
                WRONG LEVEL.  YOU SHOULD HAVE FILED AT THE
                INSTITUTION,  REGIONAL OFFICE, OR  CENTRAL
                OFFICE LEVEL.

REJECT REASON 2: YOU RAISE MORE THAN ONE ISSUE/RELATED ISSUE OR APPEAL MORE
                THAN ONE INCIDENT REPORT (INCIDENT NUMBER).   YOU MUST
                FILE A SEPARATE REQUEST/APPEAL FOR EACH UNRELATED ISSUE
                OR INCIDENT REPORT YOU WANT ADDRESSED.

REJECT REASON 3: YOU MUST PROVIDE MORE SPECIFIC INFORMATION (E.G. CASE NO.)
                ABOUT YOUR REQUEST/APPEAL SO THAT IT MAY BE CONSIDERED.

REMARKS          : ALL TORT CLAIMS ARE PROCESSED W/ LEGAL DEPT. IF YOU
                   WISH TO SEEK CRIMINAL PROSECUTION FOR ALLEGATIONS
                   PLEASE SEEK LEGAL COUNSEL

U.S. DEPARTMENT OF JUSTICE                                   REQUEST FOR ADMINISTRATIVE REMEDY
Federal Bureau of Prisons

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | GONZALEZ, JOSE | 10130-179 | | BML |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

### Part A– INMATE REQUEST

I am appealing the unlawful actions of the BOP and staff. Specifically, the failure to apply FSA Time Credits is colorable as official oppression, false imprisonment and abuse of office under color of law. I am seeking relief under Title 42 U.S.C. §1983, Federal Tort Claims Act, Bivens, and habeas relief under Title 28 U.S.C §2241. I am seeking declaratory relief, injunctive relief, monetary damages and a referral to the Department of Justice for criminal prosecution. The BOP staff is acting beyond the scope of their statutory authority.

Additionally, and fundamentally, I am appealing denial of my "informal requested relief" via BP-8 dated 05/11/2022 to be placed in prerelease custody as soon as possible pursuant to 28 C.F.R. §523.44(b)(1) and (d) now that I am immediately eligible.

5/17/22
_____
DATE

_____
SIGNATURE OF REQUESTER

### Part B– RESPONSE

RECEIVED
MAY 2 4 REC'D
ASSOCIATE WARDEN'S OFFICE
FCC BEAUMONT (LOW)

_____
DATE

WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                                    CASE NUMBER: _____

CASE NUMBER: _____

### Part C– RECEIPT

| Return to: | GONZALEZ, JOSE | 10130-179 | | BML |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: FAILURE TO APPLY FSA TIME CREDITS; APPEAL 05/11/2022 BP-8

_____                              _____
DATE                                         RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP-229(13)



BP-8
BMX 1330.18A
May 8, 2015
Page 6

Attachment A

## DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons P1330.18, Administrative Remedy Program, (January 6, 2014), requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal written complaint. This form shall be used to document your efforts towards informally resolving your grievance.

Inmate Name:___JOSE GONZALEZ___   Reg. No.: ___10130-179___ Unit: _____

Specific Complaint and Requested Relief:

This is a formal request to be placed in prerelease custody as soon as possible under the provisions of the First Step Act for which I am eligible in accordance with the terms of the "Final Rule" published by the BOP on 01/19/2022 in the Federal Register as 28 C.F.R. §523.44(b)(1) and (d).

As of 05/04/2022 I have served 126.73 months (10 years, 6 months, 22 days) of my 180 month sentence. I have retained 25.26 months (769 days) of Good Conduct Time Credits (GCTs). Absent eligibility under the First Step Act (and the provisions of the Second Chance Act reauthorized by the First Step Act) my release date would be 09/03/2024. That date is determined by subtracting my 25.26 months GTC from my 180 month sentence to determine that my Statutory.

See attached continuation page(s):

Efforts Made By Inmate To Informally Resolve Grievance (be specific):

You are eligible for FSA; however, time credits have not been applied. You are not eligible for release at this time.

Counselor's Comments:

_____ 5-11-22    _____ 5/11/22
Correctional Counselor's Review / Date    Unit Manager's Review / Date

Name:  JOSE GONZALEZ                    Reg. No.: 10130-179    Unit:

## CONTINUATION PAGE(S)

Release Date is at month number 154.74.  I have served 126.73 months leaving 28.01 months for me to serve in BOP custody prior to my begining a 60 month term of supervised release under U.S. Probation.

However, I am FSA eligible. As of 05/04/2022 I have earned 17 months (517.45 days) of First Step Act Time Credits (FTC)(Note: From 10/30/2020 to 04/30/2021 I did not earn FTC's due to a disciplinary incident. At all other times from 12/21/2018 to 05/04/2022 I earned 15 days of FTC's for every 30 days).  28 C.F.R 523.44 requires the BOP to either immediately apply the 17 months of FTC to my time in prerelease custody or reduce my 180 month sentence to 168 months and add up to 12 months of my FTC to my 60 month term of supervised release and the remaining 5 months to my time in prerelease custody (halfway house and/or home confinement).

By applying the FTC's I have earned to date the following will result if I am transferred to an RRC as soon as possible:

11.01  Months in an RRC (under the Second Chance Act), followed by
17.00  Months in prerelease custody (under the First Step Act, followed by
60.00  Months of supervised release under U.S. Probation.

Or alternatively, if 12 months of my 17 months of earned FTC's are added to my 60 months of supervised release and subtracted from my 180 month sentence, the result will be as follows:

16.01  Months in prerelease custody on home confinement starting immediately, with no time spent in an RRC, followed by
72.00  Months of supervised release under U.S. Probation.

## CALCULATIONS

180.00  Month sentence imposed
-25.26  Months of Good Conduct Time (769 days)
154.74  Months that must be served (Statutory Sentence)
-126.73  Months served as of 05/04/2022
28.01  Months of Statutory Sentence remaining to be served

-17.00  Months of FSA FTC's earned as of 05/04/2022
11.01  Months available for Second Chance Act ensured time in prerelease custody.


## FORMAL REQUEST

The 11.01 months remaining of my Statutory Sentence which has not been served or earned as FTC's represents the portion of my sentence remaining that I am entitled to serve in an RRC (halfway house). This is mandated by the First Step Act as reauthorized by the Second Chance Act and renders me statutorily eligible for 12 months of halfway house in addition to any FSA FTC earned time credits.

For the reasons presented herein, please inform DSCC in Grand Prairie, Texas (or any other appropriate division of the BOP responsible for applying First Step Act Federal Time Credits (FTCs), that I am entitled to immediate transfer to an RRC because of my earned FTCs and my RRC time of 11.01 months equals the remainder of my Statutory Sentence, (see 28 C.F.R. §523.44(b)(1) and (d), (attached) which ensures that my FTCs are to be in addition to all other provisions of law that prescribe that I be afforded the maximum amount of time in prerelease custody.

Respectfully Submitted,

*Jose Gonzalez*

JOSE GONZALEZ
Reg. No. 10130-179

# EXHIBIT

# 27

FILED

2022 Jun-06 PM 03:5
U.S. DISTRICT COUF
N.D. OF ALABAN

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

ROBERT S. STEWART, JR.,     )

                   )

    Petitioner,       )

                   )

v.                )   Case No.:  1:22-cv-294-MHH-JHE

                   )

WARDEN SEAN SNIDER,    )

                   )

    Respondent.     )

## MEMORANDUM OPINION

On May 10, 2022, the Magistrate Judge entered a Report and Recommendation. (Doc. 15). The Magistrate Judge recommended that the Court deny the Respondent's motion to dismiss, grant Mr. Stewart's petition for writ of habeas corpus, and order the Respondent to award Mr. Stewart all credit earned between the BOP's December 25, 2021 calculation and April 28, 2022. The Magistrate Judge also recommended that the Court direct the Respondent to reevaluate Mr. Stewart's earned credit time at regular intervals not to exceed every 60 days until the implementation of the automated system. (Doc. 15). The Magistrate Judge advised the parties of their right to file specific written objections to his report. (Doc. 15). The time to file written objections has passed, and the Court has not received objections.



Case 4:22-cv-00294-MHH-JHE Document 16 Filed 06/06/22 Page 2 of 2

The Court adopts the findings and analysis in the Report and Recommendation. Therefore, the Court denies the Respondent's motion to dismiss. (Doc. 11). The Court grants Mr. Stewart's petition for writ of habeas corpus. By separate order, the Court will direct the Respondent to award Mr. Stewart all credit earned between the BOP's December 25, 2021 calculation and April 28, 2022, and the Court will direct the Respondent to reevaluate Mr. Stewart's earned credit time at regular intervals not to exceed every 60 days until the implementation of the automated system.

**DONE** and **ORDERED** this June 6, 2022.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

2

United States District Clerk
Eastern District of Texas
300 Willow St., Ste. 104
Beaumont, TX 77701-2217

Re:   William Maxwell v. Warden FCI-Beaumont-Low; Civil Case 1:22-cv-40;  United  States  District  Judge  Truncale,  presiding.

Ladies and Gentlemen:

Enclosed  please  find  Maxwell's  Amended  Response  to  Doc.  8; Maxwell's  Motion  for  Leave  to  Amend  Pleadings;  and  Proposed Amended  Pleadings.   Please  file  stamp  in  your  usual  customary manner,  and  file  mark  the  enclosed  copy of  this  cover  letter, along  with  copies  of  the  front  page  of  each  filing  attached thereto.   Please  return  the  file-marked  copies  in  the  enclosed postage-paid,  self-addressed,  stamped  envelope.

Thank you for your courtesy in this regard.

Sincerely,

William Maxwell
Reg. No. 71944-279
FCI-Beaumont-Low
P.O. Box 26020
Beaumont, TX 77720