IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

OCT 20 2022

BY
DEPUTY _____

| | | |
|---|---|---|
| WILLIAM MAXWELL | § | |
| PETITIONER | § | CIVIL CASE 1:22-CV-40 |
| V. | § | |
| | § | |
| WARDEN, FCI-BEAUMONT-LOW | § | USDC: MICHAEL J. TRUNCALE |
| RESPONDENT | § | MAG: CHRISTINE L. STETSON |

## MAXWELL'S MOTION FOR LEAVE TO AMEND UNDER FED.R.CIV.P. 56(d)

### AND

### FED.R.CIV.R. 56(d) AMENDMENT

Respectfully submitted,

William Maxwell

Reg. # 71944-279

FCI-Beaumont-Low

P.O. Box 26020

Beaumont, Texas 77720

MOTION FOR LEAVE TO AMEND UNDER FED.R.CIV.P. RULE 56(d)

AND

RULE 56(d) AMENDMENT

TO THE HONORABLE MAGISTRATE CHRISTINE STETSON:

William Maxwell, PETITIONER, files this Motion for Leave to Amend under Fed.R.Civ.P. 56(d) and Rule 56(d) Amendment, subject to leave being granted, and for just cause would show unto the Court as follows:

PRELIMINARY STATEMENT

1) Maxwell filed his response to Warden's Motion to Dismiss, Alternatively Motion for Summary Judgment (Doc. 8) on or about September 1, 2022.

2) On or about September 7, 2022, Warden (BOP - Real Party in Interest) published on the inmate bulletin board: "Inmate Message Federal Time Credits (FTC) Auto Calculation Launches." See attached as exhibit 1 to Maxwell's Affidavit attached hereto.

3) On or about September 9, 2022, Warden published on the inmate bulletin board: "Reentry Services Division, September 2022, First Step Act Approved Programs Guide." See attached as exhibit 2 to Maxwell's affidavit attached hereto.

4) On or about September 16, 2022, Warden filed "Respondent's Reply to Petitioner's Response to Respondent's Motion to Dismiss or in the alternative, Motion for Summary Judgment (Doc. 21). Document 21 was not delivered to Maxwell by Warden until September 28, 2022 (12 days after filing same with the Court).

5) On or about September 27, 2022 Maxwell filed "Notice of Non-Receipt" of Doc. 21 after confirming that a Reply had been filed but not received by Maxwell.

6)    Both of the Inmate Messages published by the Warden (BOP- Real Party in Interest) on September 7, 2022 and September 9, 2022 were published before the Warden's Reply (dated September 16, 2022). Both documents published by the Warden make material admissions (statements by a party opponent, public records, and are otherwise admissible pursuant to the Fed.R.Evid. and admissible in response to Motions for Summary Judgment "M4SJ"). Both messages further rebut the factual allegations and legal positions of the Warden. (EN1)

7)    Both documents were unavailable to Maxwell, as a matter of law, prior to September 1, 2022, the date of Maxwell's Responsive filing. Judicial notice requested (as to the dates).

Additionally, the Office of Alix McLearn, Senior Deputy Assistant Director of Reentry Services Division of the Bureau of Prisons has sent, post September 1, 2022 (on information and belief as to the date), a internal memorandum noting the Education Department's ACE programs (Adult Continuing Education) have priority because under the First Step Act the programming and productive activities impact "inmates' liberty interests."

See: Alix McLearen

400 First St. N.W. 4016

Washington, D.C. 20534

amclearn@bop.gov

8)    "While Rule 56(d) motions for additional discovery are broadly favored and should be liberally granted, the party filing the motion must demonstrate how additional discovery will create a genuine issue of material fact." Smith v. Reg'l Transit Auth., 827 F.3d 412, 422-23(5th Cir. 2016)(citations and internal quotations omitted)(quoting from Am. Fam. Life Assurance Co. v.

-2-

Biles, 714 F.3d 887,894 (5th Cir. 2013). Generally, the party seeking leave to amend must "set forth a plausible basis for believing that specific facts, susceptible of collection within a reasonable time frame, probably exists and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." Id. (citing Biles, 714 F.3d at 894)

Here Maxwell attaches an affidavit, along with the relevant documents which contain admissions of the Warden (BOP), regarding some of the issues in dispute. Maxwell seeks declarations in his pleadings and these admissions conform, in many ways, to the declarations sought in Maxwell's pleadings. The "emergent facts" "influence the pending summary judgment motion" as follows:

(a)   The Warden Admits that:

"The earning of FTCs [Federal Time Credits] is based on "earning status" and **NOT** participation and/or completion of individual programs." (emphasis in original) see attached.

(b)   "Inmates can begin earning time credits starting with the enactment of the Statute [December 21, 2018]." "The 'presumed participation' period only extends from December 21, 2018 through January 14, 2020." [Maxwell maintains that 18 U.S.C. §3632(d)(4)(B) applies retroactively to productive activities by the plain language of the statute. This admission however, demonstrates that Maxwell's minimum recidivism level and minimum violence level would carry back retroactively to the beginning of his productive activities participation.]

-3-

(c)    "During the 'presumed participation' period and through April 28, 2021, the PATTERN risk level calculated on April 28, 2021 (PATTERN auto-calculation start date), will be used to determine the initial risk level and FTC rate [10 days per month of FTC good time credits or 15 days per month of FTC good time credits ... see 18 U.S.C.§3632(d)(4)(A)].

(d)    "FCTs are applied _first_ towards release dates and then toward RRC/HC placement [establishing a liberty interest as a matter of law]."

(e)    "Eligible inmates will continue to earn FTCs toward early release until they have accumulated 365 days [of sentence reduction] or are 18 months from their release date, _whichever happens first. At this point, the release date becomes fixed_, and all additional FTCs are applied toward RRC/HC placement." (emphasis added)

(f)    "FTCs will be updated monthly."

(g)    "FTCs earned toward RRC/HC placement will be applied in **addition to** release needs-based recommendations made under the Second Chance Act." [See 34 U.S.C.§60541(a)(2)(A) ... as argued by Maxwell]

(h)    The FSA Guide describes structured, curriculum-based programs led by staff, contractors, or volunteers that may result in the award of FSA time credits. Individuals may also earn FTCs through participation in unstructured PAs [productive activities] that are not listed in this guide when these PAs are recommended to address their needs. Program recommendations are based on the individual risk and needs assessment.

-4-

BOP/WARDEN ARGUMENTS THAT EMERGENT FACTS REBUT

9)    [PageID 254] "Petitioner further seeks declaratory judgment that his prison job, which he refers to as a "productive activity," be granted time credits under the FSA prior to the FSA's enactment in December 2018."

[PageID 255] "The FSA specifically lists 'a prison job' as an 'evidence-based recidivism reduction program'" ..."In addition to not knowing what Petitioner's job is and whether this job qualifies as programming eligible for FSA time credits... there is no case law directly addressing ..." the issue.

RESPONDING to this allegation in the Warden's Response, the newly published admissions, post Maxwell's September 1, 2022 response, the BOP acknowledges:

First, "Productive Activities (PA) include a wide range of activities including **work assignments** ..." (See Maxwell's affidavit, exhibit 2 attached hereto - emphasis added) (Mirroring the January 2022 Guide - copy attached to Maxwell's Response as attachment 4, and Exhibit 4, Exhibit 5, Exhibit 6 to Maxwell's affidavit attached to Maxwell's SEptember 1, 2022 Response (this filing confirms that the BOP has not changed its' published position that the AUSA argued against in his Motion and Reply)

Second, "the earning of FTCs is based on 'earning status' and not on participation and/or completion of individual programs." (See Exhibits to Maxwell's affidavit attached hereto)

Third, the PATTERN risk level calculated on April 28, 2021 [Maxwell is and always has been a minimum risk level, entitled to 15 days of time credits per month] (See Maxwell's Response Affidavit, exhibit 11)] will be used to determine the initial risk level and FTC earning rate." Therefore, under the plain reading of the statute, Maxwell's participation in

-5-

productive activities from the time he entered the BOP until the present is entitled to FSA time credits.

Fourth, "the FTCs are applied first toward release dates and then toward RRC/HC placement," establishing that Maxwell has a liberty interest in early release under 18 U.S.C.§3624(g)(3).

Fifth, "FTCs earned toward RRC/HC placement will be applied in addition to release needs-based recommendations made under the Second Chance Act." See 34 U.S.C.§60541(a)(2)(A) This requires an additional 12 months be added to Maxwell's 48 months of FTCs (earned by productive programming and productive activities earning status).

Sixth, the elderly release program, 34 U.S.C.§60541(g) is part of the Second Chance Act, is an incentive, and the BOP acknowledges that FTCs are in addition to the Second Chance Act, thereby making Maxwell eligible for release under 34 U.S.C.§60541(g). See also 18 U.S.C.§3632(d)(6).

10) [PageID 255] "And where the FSA does affect the length of confinement, the decision of whether to release an inmate early is left to the sole discretion of the Director."

RESPONDING to this allegation in the Warden's Response, the newly published admissions, post Maxwell's September 1, 2022 Response, the BOP acknowledges:

First, "The earning of FTCs is based on "earning status" and NOT on participation and/or completion of individual programs. (emphasis in original)

Second, "Eligible inmates [undisputed that Maxwell is eligible] will continue to earn FTCs toward early release until they have accumulated 365 days or are 18 months from their

-6-

release date, whichever happens first. <u>At this point, the release date becomes fixed</u>, and all additional FTCs are applied toward RRC/HC placement. [i.e. 'in addition to'] [Maxwell's release date has been reduced to 7/17/2030...release from home confinement under the First Step Act] This completely rebuts the AUSA's argument, and is further supportive of the Director of the Bureau of Prisons comments in the Fed. Register (as Maxwell noted in his Response). The Director's comments are found at Fed.Reg./Vol.87, No. 12/Wed., Jan. 19, 2022/p. 2712. ("The Bureau intends to the parameters of the FSA to permit application of Time Credits toward transfer to Supervised Release pending development of policy...") This statement, confession, and admission confirms the statements of the Director of the BOP in the Federal Register <u>and</u> is <u>BOP policy</u>. The AUSA response is contrary to BOP **published** policy.

<u>Third</u>, at page [PageID 255-256] "There can be no liberty interest where there is unfettered discretion." The new publication by the BOP/Warden, post Maxwell's September 1, 2022 Response, acknowledges that there is no discretion by the BOP regarding early release of inmates from their terms of incarceration.

10) [PageID 258] "The Second Chance Act of 2007 significantly altered the framework for prerelease custody and home confinement. Including in these alterations is a separate subsection addressing home confinement..."

RESPONDING, in the inmate bulletin, as Maxwell has previously argued in his Response, the BOP confesses "FTCs earned

toward RRC/HC placement will be applied in addition [as Maxwell argued that the statute (18 U.S.C.§3632(d)(6)) requires... argument opposed by the Warden] to release needs based recommendations made under the Second Chance Act."

ARGUMENT

11) The additional admissions by the Warden/BOP all supporting Maxwell's timely presented and exhausted administrative remedies are relevant summary judgment evidence, in admissible form, which was not available to Maxwell, at the time of Maxwell's Responsive filing (September 1, 2022), is properly considered by the Court. The additional admissions and published announcements by the Warden/BOP constitute binding admissions by a government agency, rebut the AUSA's position, and do not require a whole new round of administrative remedy exhaustion. (EN2)

As a result relief under Fed.R.Civ.P. 56(d) is appropriate.

PRAYER

FOR THESE REASONS, Maxwell requests leave be granted and that his Fed.R.Civ.P. Rule 56(d) Motion be granted and that the newly available Warden/BOP admissions be considered and appended to his Response to Motion to Dismiss, alternatively Motion for Summary Judgment. Maxwell requests such other and additional relief whether in equity or in law to which he may be entitled.

-8-

Respectfully submitted,

William Maxwell
Reg. # 71944-279
FCI-Beaumont-Low
P.O. Box 26020
Beaumont, Texas 77720

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion under Fed.R.Civ.P. 56(d) was served on Michael Lockhart, esq., Assistant United States Attorney, 550 Fannin St., Ste 1250, Beaumont, Texas 77701-2237 concurrent with this filing, pursuant to the rules, by placing same in the BOP mail system, proper postage prepaid. I make this certification pursuant to 28 U.S.C.§1746 and under penalties of perjury.

_____          _____
        Date                             William Maxwell

## VERIFICATION

I hereby verify that the material factual statements made herein are true and correct to the best of my knowledge and belief. I make this verification pursuant to 28 U.S.C.§1746 and under penalties of perjury.

_____          _____
        Date                             William Maxwell

-9-

## END NOTES

EN1) In pertinent part Movant has failed to advise the Court that the positions taken by the Movant are contrary to the internal memoranda of the BOP and contrary to inmate bulletins published to the inmates, and intended to be relied upon by the inmates. These false assertions of fact (regarding inmate's liberty interests, and other declaratory matters) and failure to advise the Court of Movant's positions (although probably unknowingly) is a material rebuttal to the entirety of the Movant's pending motions.

In particular part, post Maxwell's response (September 1, 2022) on September 7, 2022 the BOP (Central Office) tendered to Maxwell (all inmates) the "Inmate Message - Federal Time Credits (FTC) Auto-Calculation Launches" (Copy attached to Maxwell's affidavit). Additionally, on September 9, 2022 (and again on or about October 4, 2022 bulletin board memoranda is substantively similar to the September 9, 2022 memoranda attached to Maxwell's affidavit) the BOP Central Office tendered to Maxwell (all inmates) the "Reentry Services Division September 2022 First Step Act Approved Programs Guide (see relevant portions — regarding "productive activities" attached to Maxwell's affidavit). The internal memo from Senior Deputy Assistant Director of Reentry Services Division, Alix McLearen, also confirms Maxwell's positions taken in Maxwell's responsive pleadings.

EN2) The BOP is not at liberty to ignore the requested administrative remedies, claimed under particularised statutory

-EN1-

authority by Maxwell, not address them, as the BOP did not, and then two years later urge failure to exhaust. Parisi v. Davidson, 405 U.S. 34, 37 (1972)("The basic purpose of the exhaustion doctrine is to allow an administrative agency to preform functions within its expertise, and to correct its own errors so as to moot judicial controversy." Here Movant argues mutually exclusive positions contrary to the publications of the BOP in the C.F.R., in inmate bulletins, in internal memoranda, in publicly available materials (FSA-Publications). "Application of the [exhaustion] doctrine to separate cases requires an understanding of its purposes and of the particular administrative scheme involved." McKart v. United States, 395 U.S. 185, 193 (1969). Warden/BOP are woefully misinformed of the statutory requirements of the FSA and have been derelict in its application (see Confession to the Office of the Inspector General [PAGEID #204].

Maxwell properly exhausted his claims, noted them with particularity [PAGEID ## 350-351]. The government did not address them. Confessed to the Office of Inspector General (addressed in Maxwell's Response and petition) that it refused to do so because it had failed to negotiate with its national union [PAGEID #240].

Under these circumstances relief under Fed.R.Civ.P. 56(d) is appropriate.

WILLIAM MAXWELL DECLARATION

State of Texas:

County of Jefferson:

The following declarations are within my personal knowledge and belief and are true and correct to the best of my knowledge and belief, based on personal knowledge and/or after reasonable inquiry.

On September 7, 2022 the Bureau of Prisons, Central Office, published on the electronic inmate bulletin board the item attached as Exhibit 1 "Inmate Message-Federal Time Credits (FTC) Auto-Calculation Launches. This "Auto-Calculation Launches" was addressed  previously in affidavits filed by myself in response to the Warden's motion (the assertion made in prior Court filings by the BOP is that the "auto-calculation" and policies related thereto were forth coming).

On September 9, 2022, the Bureau of Prisons published on the inmate bulletin board the "First Step Act Approved Programs Guide September 2022." Relevant portions pertaining to Maxwell's arguments on "productive activities" are attached hereto as Exhibit 2.

These attachments are true and correct copies. They were published to inmates. Inmates are required, subject to disciplinary sanctions for failure to do so, to rely on the bulletin board publications.

Neither bulletin board publication was available to Maxwell prior to September 1, 2022. The internal memoranda by Alix McLearen was not known to Maxwell before September 1, 2022. None

could have been previously attached to Maxwell's September 1, 2022 Response as they were either unknown or unpublished at that time.

The foregoing declaration is made pursuant to 28 U.S.C. §1746 and under penalties of perjury. The exhibits attached hereto were printed off of the BOP inmate bulletin board system at or about the date they were published and available. They are in their original published form and appear exactly as they did when published in electronic format (which is available for printing by inmates).

Further declarant sayeth not.

10-13-22
Date

William Maxwell
Reg. # 71944-279

Inmate Message – Federal Time Credits (FTC)
Auto-Calculation Launches

Recently, the Bureau has launched the Federal Time Credits (FTCs) auto-calculation application. All eligible inmates will be reviewed regardless of PATTERN risk level release date, and credits will be applied consistent with the final rules language and implementing text.

As a reminder, the unit team will determine an inmate's eligibility to earn FTCs based on the current conviction and prior criminal convictions.

The earning of FTCs is based on "earning status," and NOT participation and/or completion of individual programs. Inmates who refuse or fail to complete any portion of the needs assessment and/or refuse or decline any program recommended to address as specific identified need area, is considered "opted out" and will not earn FTCs.

The following items have been incorporated into the calculation of FTCs:

- While inmates can begin earning time credits starting with the enactment of the statute, the "presumed participation" period only extends from December 21, 2018, through January 14, 2020.
- During the "presumed participation" period and through April 28, 2021, the PATTERN risk level calculated on April 28, 2021 (PATTERN auto-calculation start date), will be used to determine the initial risk level and FTC earning rate.
- During the "presumed participation" period, only those days when the inmate was incarcerated outside the facility, housed in the Special Housing Unit, or on refused/declined status for a pre-FSA programming (e.g., FRP, Drug Education, GED, etc.) will be excluded from successful participation and credit will not be earned.
- From January 15, 2020, forward, all components of the SPARC-13 needs assessment must be complete to be eligible to earn FTCs. Failing to do so is considered "opted out." In other words, if an inmate fails to complete a required survey or declines to enroll in a recommended program which addresses a specific need, the inmate will not be eligible to earn FTCs.
- In order to earn or apply the higher earning rate of 15 days (for every 30 day period of successful EBRR or PA recommended), inmates need a PATTERN level of minimum or low risk or have dropped to a minimum or low risk level and maintained it for two consecutive assessment periods.



- FTCs are applied first toward release dates and then toward RRC/HC placement.
- Inmates must be otherwise eligible to participate in RRC/HC placement to apply FTCs to early release.  While inmates continue to earn FTCs, inmates can only apply the FTCs if they have no detainers, unresolved pending charges, and/or unresolved immigration status issues.
- Eligible inmates will continue to earn FTCs toward early release until they have accumulated 365 days OR are 18 months from their release date, whichever happens first. At this point, the release date becomes fixed, and all additional FTCs are applied toward RRC/HC placement.
- FTCs will be updated monthly, and an FSA Time Credits Assessment worksheet will be maintained in the central files.  The most current copy will be provided during the regularly schedule Program Review team meeting.
- FTCs earned toward RRC/HC placement will be applied in addition to release needs-based recommendations made under the Second Chance Act.
- FTCs may be applied toward early release in addition to the early release benefit for RDAP graduates; however, inmates are still required to complete the required 120-day RRC/HC placement.  Dropping out of RDAP may result in the loss of both the RDAP early release benefit and early release due to FTCs if it is determined the inmate is "opting out" despite having an identified need.

U.S. Department of Justice
Federal Bureau of Prisons
Washington, DC

## Reentry Services Division                    September 2022

# First Step Act
# Approved Programs Guide





EXHIBIT
2

The Federal Bureau of Prisons (Bureau) protects public safety by ensuring those in federal prison receive relevant and meaningful reentry programming to support their return to the community as law-abiding citizens. Reentry efforts increase opportunities, reduce recidivism, promote public safety, and reduce institution misconduct. To this end, the Bureau is committed to provide a robust menu of programs to address thirteen need areas for a diverse population, located in 122 institutions of varying security levels across the nation.

MAXWELL, WILLIAM 71944279

The First Step Act (FSA) Approved Programs Guide is a collection of the Bureau's robust reentry programs, designed to ensure all sentenced persons have the skills necessary to succeed upon release. The approved programs are standardized across institutions, described in the Bureau's national policies, implemented with dedicated resources, and regularly reviewed to ensure program fidelity. Standardized programs in the FSA Guide have fully developed and evaluated protocols that must be adhered to as written.

The FSA created two different categories of programs: Evidence-Based Recidivism Reduction (EBRR) Programs and Productive Activities (PAs). The FSA requires the Bureau to implement a risk and needs assessment system. Risk refers to the likelihood that each individual will reoffend or recidivate after release. PATTERN calculations identify "who" is most at risk, measured as high, medium, low or minimum risk of recidivism. Need refers to the specific areas a person can address to lower his/her risk. In other words, need indicates "what" issues affect an individual's risk and what he/she should address by taking programs.

The Bureau assesses needs in 13 areas that directly impact one's ability to live a healthy and productive life. Specifically, these areas are Anger/Hostility; Antisocial Peers; Cognitions; Dyslexia; Education; Family/Parenting; Finance/Poverty; Medical; Mental Health; Recreation/Leisure/Fitness; Substance Use; Trauma; and Work. Offenders are recommended to enroll in the approved programs designed to address their individual needs.

As outlined in the FSA, eligible offenders earn First Step Act Time Credits (FTCs) for the completion of approved EBRR Programs and PAs. Individuals may not earn FTCs if serving a sentence for a disqualifying conviction listed in the statute. FTCs currently apply to those convicted in Federal District Court only. They do not apply to military prisoners, state boarders, or individuals with a final order of deportation. At this time, FTC's do not apply to those convicted in DC Superior Court.

The FSA Guide describes structured, curriculum-based programs led by staff, contractors, or volunteers that may result in the award of FSA time credits. However, individuals may also earn FTCs through participation in unstructured PAs that are not listed in this guide when these PAs are recommended to address their needs. Program recommendations are based on the individual risk and needs assessment.

The FSA Guide provides information on program description, hours of program credits, institution locations, needs addressed, and the responsible department(s) or staff for program delivery, (e.g., Education, Psychology, Special Populations Programs Coordinator, Reentry Affairs Coordinator). For locations noted as "available at all BOP institutions," this means the program can be offered anywhere. Programs will vary based on the needs of the sentenced population of those locations. Similarly, some programs have pre-requisites or other required admission criteria.

For general information on these programs, contact the Reentry Services Division (RSD) by sending an email to FSA@BOP.GOV. More specific inquiries about these programs should be directed to the responsible disciplines identified in the Program Delivery section of each program or the local institution.

The FSA Guide will be updated at a minimum annually by the Reentry Services Division.

MAXWELL, WILLIAM 71944279

# TABLE OF CONTENTS

| EVIDENCE BASED RECIDIVISM REDUCTION (EBRR) PROGRAMS | # |
|---|---|
| ANGER MANAGEMENT | 4 |
| APPRENTICESHIP TRAINING | 5 |
| ASSERT YOURSELF FOR FEMALE OFFENDERS | 6 |
| BARTON READING AND SPELLING SYSTEM | 7 |
| BASIC COGNITIVE SKILLS | 8 |
| BRAVE* | 9 |
| BUREAU LITERACY PROGRAM | 10 |
| CERTIFICATION COURSE TRAINING | 11 |
| CHALLENGE PROGRAM* | 12 |
| COGNITIVE PROCESSING THERAPY | 13 |
| CRIMINAL THINKING | 14 |
| DIALECTICAL BEHAVIOR THERAPY | 15 |
| EMOTIONAL SELF-REGULATION | 16 |
| FAMILY PROGRAMMING SERIES | 17 |
| FEDERAL PRISON INDUSTRIES | 18 |
| FEMALE INTEGRATED TREATMENT (FIT)* | 19 |
| FOUNDATION | 20 |
| HOOKED ON PHONICS | 21 |
| ILLNESS MANAGEMENT & RECOVERY | 22 |
| LIFE CONNECTIONS PROGRAM* | 23 |
| MENTAL HEALTH STEP DOWN PROGRAM* | 24 |
| MONEY SMART FOR ADULTS | 25 |
| MONEY SMART FOR OLDER ADULTS | 26 |
| NATIONAL PARENTING FROM PRISON PROGRAM | 27 |
| NON-RESIDENTIAL DRUG ABUSE PROGRAM | 28 |
| POST-SECONDARY EDUCATION | 29 |
| RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM (RDAP)* | 30 |
| RESOLVE PROGRAM | 31 |
| SEEKING SAFETY | 32 |
| SEX OFFENDER TREATMENT PROGRAM NON-RESIDENTIAL | 33 |
| SEX OFFENDER TREATMENT PROGRAM* | 34 |
| SKILLS PROGRAM* | 35 |
| SOCIAL SKILLS TRAINING | 36 |
| STAGES PROGRAM* | 37 |
| THRESHOLD PROGRAM | 38 |
| VOCATIONAL TRAINING | 39 |
| WOMEN'S BASIC FINANCIAL LITERACY PROGRAM | 40 |
| WOMEN'S CAREER EXPLORATION SERIES | 41 |
| STRUCTURED, CURRICULUM-BASED PRODUCTIVE ACTIVITIES | 42-51 |
| BOP INSTITUTION INDEX | 52-53 |
| RDAP LOCATIONS | 54 |

*RESIDENTIAL

MAXWELL, WILLIAM 71944279

# STRUCTURED, CURRICULUM-BASED PRODUCTIVE ACTIVITIES

Productive Activities (PA) include a wide range of activities including work assignments, community service, individual led classes, and other unstructured but valuable ways to spend time. This guide only provides information about structured, curriculum-based PAs.

To ensure program fidelity and proper credit, program delivery includes a list of qualified staff/disciplines, contractors or volunteers who can deliver the PAs listed. Those not listed are not recommended.

| Productive Activities & Descriptions | Hours | Location(s) | Need(s) Addressed | Program Delivery |
|---|---|---|---|---|
| **A Healthier Me**<br><br>The Healthier Me Program is designed to help incarcerated women build healthy lifestyles by considering what a healthy life means to them and practicing skills for stress management, healthy relationships, physical activity, and mindful eating. | 10 | All female sites | Recreation/Leisure/Fitness | Recreation<br><br>Special Population Program Coordinator<br><br>Unit Team |
| **A Matter of Balance**<br><br>Falling, or fear of falling, can negatively impact older adults by causing them to refrain from enjoyable or therapeutic activities. This program helps to build self-efficacy related to strength and mobility by decreasing fall-related fears. It teaches older individuals to problem-solve and improve their self-esteem. | 16 | All institutions | Recreation/Leisure/Fitness | Health Services<br><br>Recreation |
| **AARP Foundation Finances 50+**<br><br>This program provides financial education and counseling for vulnerable households, particularly adults age 50+. Older adults face unique challenges in financial planning and weak job prospects. This program will assist the older adult in financial goal setting that translates into positive financial behaviors. | 5 | All institutions | Finance/Poverty | Unit Team<br><br>Volunteers |
| **Access**<br><br>This program is designed for incarcerated women who are survivors of domestic violence. It assists women in identifying suitable career options to become economically independent upon reentry. An interactive computer component (which can be printed and used in class) is used to explore career options. Participants also complete testing to determine what career field is best for them. | 10 | All female sites | Cognitions<br>Mental Health<br>Trauma | Special Population Program Coordinator |

MAXWELL, WILLIAM 71944279

William Maxwell
Reg. #71944-179
FCI-Beaumont-Low
P.O. Box 26020
Beaumont, Tx 77720

AFSM 6 N Hou 773
TUE 18 OCT 2022 PM

CLERK, U.S DISTRICT COURT
RECEIVED

OCT 20 2022

EASTERN DISTRICT OF TEXAS
LUFKIN, TEXAS

United States District Clerk
EASTERN District of Texas
104 North Third Street
Lufkin, Tx   75901

LEGAL
MAIL