IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

WILLIAM MAXWELL                    §
                                   §
vs.                                §    Civil No. 1:22-CV-40
                                   §
WARDEN, FCI BEAUMONT LOW           §

**FILED**
U. S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

MAR 3 1 2023

BY
DEPUTY_____

MAXWELL'S OBJECTIONS TO DOCUMENT # 24

TO THE HONORABLE JUDGE:

COMES NOW, William Maxwell (Maxwell) and files his objections to Document # 24, "Report and Recommendations of United States Magistrate Judge", pursuant to the rules, and for just cause would show unto the Court as follows:

BACKGROUND

1) The Magistrate filed her Report and Recommendations on February 13, 2023. Maxwell sought an extension to file his objections thereto, these objections follow.

2) Maxwell, after exhausting his administrative remedies[EN1] and asserting the affirmative defenses of waiver and admission[EN2] filed his 28 U.S.C. §2241 petition.

3) Maxwell, in his §2241 petition (PageID # 2-12) and Memorandum in support thereof (PageID 14-221) complained of (in detail)

Failure of the BOP/Warden to properly consider 18 U.S.C. §3621(b) factors for transfer to RRC prior to the end of sentence (substantive due process); failure to properly apply First Step Act Time Credits, [Bop]'s improper agency interpretation of F.S.A. [First Step Act], and failure to use §3621 [18 U.S.C. §3621] factors under the CARES Act. See PageID # 3, PageID # 2-221 generally; see also R&R

(Doc. 24) PageID # 1147-1149.

4)    The Warden responded that Maxwell failed to exhaust his administrative remedies to all claims but his CARES Act claim and that he has suffered no due process violation for denial of the CARES Act claims. See Magistrate R&R (Doc. 24) PageID # 1147-1149.

<u>OBJECTIONS</u>

5)    The Magistrate references the proper standards for summary judgment. Maxwell notes in part that all inferences are to be in Maxwell's favor.[EN3] However, the Magistrate then considers and credits hearsay (which is improper) in the Warden's proffered supporting affidavit (Justin Thornton Affidavit) and views all filings in favor of movant in violation of the standards for summary judgment. Maxwell objects.

Maxwell, for purposes of specificity, notes the following:

6)    Warden relies on the hearsay affidavit of Justin Thornton (Doc. 8-1) PageID # 264-266 to support its motion (Thornton's affidavit had exhibits attached. PageID # 267-361). The exhibits establish Thornton's hearsay, unfamiliarity with the documents attached to his affidavit, and his unfamiliarity with the general contents of the exhibits. Thornton, in his affidavit, confesses reliance on hearsay materials, and notes that despite Maxwell's exhaustion of his administrative remedies (demonstrated by the exhibits --see PageID # 350-351), the BOP only recognized certain of Maxwell's claims -- and therefore based on BOP error in classification, <u>in arguendo</u>, Maxwell did not exhaust his administrative remedies. ("The statements I make hereinafter are made on the basis of my review of the official

-2-

files and records of the BOP, my own personal knowledge __or__ on the basis of information acquired by me [all hearsay] through the performance of my official duties." (emphasis added)

Maxwell addressed the hearsay of Thornton, extensively, in his response at Doc. 20, pp. 25-40; ¶¶39-41 (Maxwell does not have the "PageID" references available). As such Maxwell objects.

7) For example, the Warden erroneously classified Maxwell's administrative remedy as "compassionate Release COVID/Halfway House Placement". See PageID # 265, However, noted in the exhibits attached to Thornton's affidavit is Maxwell's actual administrative remedy filing. See PageID # 350-351. In that remedy, Maxwell complains bitterly of the BOP's obstruction of the administrative remedy process (Obviating the exhaustion requirement, not addressed by the Magistrate), establishing an inference in favor or Maxwell. This was not addressed and Maxwell objects.

Maxwell complained of the denial of substantive due process (the Warden's failure to use 18 U.S.C. §3621(b)(1)-(5) factors in its placement and transfer decisions) noted in __Wedelstedt v. Wiley__, 447 F.3d 1160, 1167 (10th Cir. 2007); __Woodall v. Fed. B. of Prisons__, 433 F.3d 235, 246 (3d Cir. 2005); __Levine v. Apker__, 445 F.3d 71, 85-87 (2d Cir. 2006); __Fults v. Sanders__, 442 F.3d 1088, 1092 (8th Cir. 2006).

Maxwell requested reassessment using the correct standards [18 U.S.C. §3621(b)(1)-(5)]. And while Maxwell has no right to be transferred to a RRC, he does have a substantive due process right to be considered using the mandatory standards (e.g. 18 U.S.C. §3621(b)(1)-(5) factors) see __Wedelstedt__, __Woodall__, __Levine__,

Fults, supra. This was not addressed and Maxwell objects.

This substantive due process is not "compassionate release COVID/Halfway House Placement". It was exhausted and not addressed by Warden or Magistrate and Maxwell objects.

8)   Maxwell asserted two affirmative defenses throughout his administrative remedy (PageID # 350-351). Maxwell asserted waiver and admission. Maxwell raised these in his petition and memorandum in support, and they were not addressed by either the Warden or Magistrate and Maxwell objects.

9)   Maxwell requested relief under 18 U.S.C. §3621(h); 18 U.S.C. §3624 (both 3624 (c)(2) and 3624 (g)). And while the CARES Act addresses, in part, Maxwell's claim under §3624(c)(2), Maxwell raises substantively other claims regarding §3624(c) which were not addressed. Additionally, Maxwell's First Step Act claims involving §3624(g) were not addressed at all and Maxwell objects.

10)  Thornton's affidavit/declaration states that Maxwell failed to exhaust or attempted to exhaust his administrative remedies. That is false. See Thornton's statements at PageID # 267-268.

> "The records appear to indicate inmate Maxwell has exhausted his administrative remedies in regards to his request for home confinement placement under the CARES Act. However, there are no records to indicate Maxwell exhausted, nor ever attempted to exhaust, any of his other claims regarding the First Step Act ('FSA'), including FSA Time Credits as related to participation in productive activities, preferential housing units... or his transfer to halfway house as a result of successful participation." See PageID # 266.EN4

Compare Thornton's statement above to Maxwell's actual administrative remedy [PageID # 350-351], found in the exhibits attached to Thornton's declaration. (See EN1 and EN2)

-4-

Maxwell specifically references 18 U.S.C. §3621 (which is not in the CARES Act) which governs placement and transfer in the BOP (while the inmate is in custody prior to prerelease and sans FSA). Maxwell specifically references in his administrative remedy 18 U.S.C. §3624. This statute includes the CARES Act and the First Step Act. See 18 U.S.C. §3624(c)(2) and §3624(g). Maxwell specifically referenced the Second Change Act which is found at 34 U.S.C. §60541(a)(2)(A) (in relevant part) and is incorporated into the First Step Act. See 18 U.S.C. §3632(d)(6). Maxwell also references the interpretation of the FSA.

Collectively, these filings in Maxwell's administrative remedy request demonstrate that Thornton's affidavit/declaration is false on its face. And yet it is credited, and not in Maxwell's favor. As such Maxwell objects.

11) Additionally, arguing in the alternative, Maxwell is challenging the BOP's application and interpretation of the First Step Act and Second Change Act. Specifically, Maxwell challenged the BOP's published rules [28 C.F.R. 523.40-44]. Therein the BOP transmorphed the mandatory language of the statue "shall" into permissive language, "may". Exhaustion is not required when an inmate is challenging a published rule or policy statement that is in violation of the clear and unambiguous language of Congress. See Daybell v. Davis, 366 F.App'x 960, 962 (10th Cir. 2010) (non-published)(citing Williams v. O'Brien, 792 F.2d 986, 987 (10th Cir. 1986)(per curiam); c.f. Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994) ("Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief

sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action.") (citing Hessbrook v. Lennan, 777 F.2d 999, 1003 (5th Cir. 1985)

12) Further, in Jones v. Bock, 549 U.S. 199, 214-15, 127 S.Ct. 910, 166 L.ED.2D 798 (2007) it is made clear, exhaustion is subject to affirmative defenses of waiver and admission. Maxwell asserted both in his administrative remedies [PageID # 350-351] and in his petition. These affirmative defenses were not addressed in any way and Maxwell objects (specifically in the pleading context).

13) Next, exhaustion is decided on the pleadings with inference in Maxwell's favor without proof. See Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998) (In other words, "as long as the plaintiff has alleged exhaustion with sufficiency specificity, lack of admissible evidence in the record does not form the basis of dismissal" for failure to exhaust).

14) Arguing further and in the alternative, Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 166 L.ED.2D 798 (2007) teaches that the usual level of pleading specificity contemplated under the rules [Fed.R.Civ.P. 8(a)], which requires a "short and plain statement of the claim" is all that is required under the PLRA. Id. 166 L.ED.2d at 810-811 ("There is thus no reason to suppose that the normal rules have to be altered to facilitate judicial screening of complaints specifically for failure to exhaust.")

The PLRA does not impose a hightened pleading requirement in the administrative remedy context than that which is already required by the rule. Id. 166 L.ED.2D at 815 ("Nor does the PLRA impose such a requirement). "The level of detail necessary in

-6-

a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundries of proper exhaustion"'." Id. 166 L.ED.2D at 815.

[]

"We once again reiterate, however - as we did unanimously in Leatherman, EN5 Swierkiewicz, EN6 and Hill, EN7 - that adopting different and more onerous pleading rules to deal with particular categories of cases should be done through established rule making procedures, and not on a case-by-case basis by the Courts." Jones v. Bock, supra.

15) The BOP's administrative remedies requires [28 C.F.R. §542.14(c)(2)] "The inmate shall place a single complaint or a reasonable number of closely related issues on the form. If the inmate includes on a single form multiple issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue." No such denial was ever issued to Maxwell. Maxwell's complaints are related, at least in part, to the interpretation of the First Step Act. Maxwell further asserted waiver on the failure of the BOP to do so. As such Maxwell objects.

16) The bulk of Maxwell's complaints are regarding the BOP's unlawful (civilly unlawful as opposed to criminally illegal) interpretation of the First Step Act and the BOP's unlawful application of the First Step Act at the policy level. Under the circumstances, administrative remedies (to correct BOP policy) are both unavailable and inappropriate. See Fuller, at 62. Maxwell challenges the BOP's change of the mandatory

-7-

statutory language shall, which appears throughout the First Step Act, to the permissive may. See 28 C.F.R. §523.40-44 vis a' vis 18 U.S.C. §3632 and 18 U.S.C. §3624.

For example, in addition to the comments and preamble (See Fed. Reg./Vol. 87, No. 12/Wed., Jan. 19, 2022/pp. 2705-2716) the BOP changes "shall" found in the following:

**18 U.S.C. §3632(d)(4)(A)**

" ... shall earn time credits as follows:

(i) A prisoner shall earn 10 days of time credits for every 30 days..."(emphasis added)

(ii) " ... shall earn an additional 5 days of time credits for every 30 days ..." (emphasis added)

**18 U.S.C. §3632(d)(4)(C)**

" ... The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g) into prerelease custody or supervised release..."

**18 U.S.C. §3632(d)(6)**

" ... The incentives determined in this subsection [18 U.S.C. §3632] shall be in addition to any other rewards or incentives for which the prisoner may be eligible."

**34 U.S.C. §60541(a)(2)(A)**

(2) Incentives for prisoners who participate in reentry and skills development [FSA EBRR Programs for example] programs which may, at the discretion of the Director, include --

(A) the maximum allowable period in a community confinement facility [12 months]

[COMPARE AND CONTRAST WITH]

28 C.F.R. §523.40-44, in relevant part:

"... the Bureau may apply FSA Time Credits toward prerelease custody or early transfer to supervised release under 18 U.S.C. §3624(g)

Additionally, see also improper application contained in the BOP policy statements (attached) BP 5410.01 (Feb. 6, 2023) (for example).

These disputes cannot be addressed in administrative remedies as they are the positions of the Bureau itself. As such Maxwell objects (arguing in the alternative as Maxwell listed these in his administrative remedies. See PageID # 350-351 and asserted waiver as an affirmative defense.)

Additionally, Maxwell asserted admission, referencing the Office of Inspector General report, wherein the BOP confessed that it did not properly apply the First Step Act for the years 2018-2012. As such, these admissions further obviate the need to administratively exhaust administrative remedies. See Fuller, at 62. As such Maxwell objects.

17) Next, the statute distinguishes between limitations that are placed on earning FSA Time Credits by participation in EBRR programming and earning FSA Time Credits for participation in productive activities.

See 18 U.S.C. §3632(d)(4)(B)

"A prisoner may not earn time credits under this paragraph for an evidence based recidivism reduction program that the prisoner successfully completed

-9-

(i) prior to the date of enactment of this subchapter; [Dec. 21, 2018] or

(ii) during official detention prior to the date that the prisoner's sentence commences under Section 3585(a)." (emphasis added)

This limitation applies only to EBRR Programs and not to productive activities. As Maxwell exhaustively argues ([PageID # ____; Doc. 20, pp. 40-42; ¶¶ 54-58 (Maxwell does not have the PageID available), the agency and the Court cannot rewrite the statute. See Chevron, 467 U.S., at 843. The phrase "evidence based recidivism reduction program and productive activities" appears in conjunction throughout the FSA. See 18 U.S.C. §3632(b) (" ... intensity of evidence-based recidivism reduction programming and productive activities ..."); 18 U.S.C. §3632(d)(4)(A) (" ... who successfully complete evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:"); 18 U.S.C. §3632(A)(i) ("... successful participation in evidence-based recidivism reduction programming or productive activities."); 18 U.S.C. §3632(A)(ii) ("... successful participation in evidence-based recidivism reduction programming or productive activities."); 18 U.S.C. §(d)(4)(C) (" ... who successful participate in recidivism reduction programs or productive activities")

That phrase, "evidence based recidivism reduction programs and/or productive acteivities does not appear in 18 U.S.C. §3632(d)(4)(B) and the BOP does not have discretion to add it. See 28 C.F.R. §523.42(b)(1) ("An inmate cannot earn FSA Time

-10-

Credits for programming or activities in which he or she participated before December 21, 2018, the date of enactment of the First Step Act of 2018."

The BOP added language to the statute out of whole cloth. It is a policy of the BOP to add language to the statute in violation of Chevron. This is statutory interpretation and statutory application and cannot be determined or addressed at the administrative remedy level (it is BOP policy). Therefore, under Fuller, at 62, exhaustion is not required. Maxwell, therefore objects.[EN8] See Belly v. Wiley, 481 F.Supp. 2d 1168, 1172 (D.Colo. 2007) ("Administrative relief is not a possibility where agency has predetermined the issue in a C.F.R. filing); Tischendorf v. Van Buren, 526 F.Supp. 2d 606, 610 (Ft. Worth, 2007)(citing Belly v. Wiley).

18)    Finally, further complicating matters, on February 6, 2023, the BOP issued new Policy Statement 5410.01 (copy attached). In the new policy statement the BOP modifies, yet again, its position -- disavowing several of the substantive underpinnings of the Warden's argument, but not the Warden's procedural arguments. As such Maxwell would object. (exhaustion is not required for statutory interpretation and application)./

## PRAYER

FOR THESE REASONS, Maxwell objects to the Report and Recommendation of the Magistrate (Doc. 24) in that either Maxwell already exhausted his administrative remedies or alternatively, exhaustion was not required for statutory interpretation and application. Maxwell would seek such other and additional relief to which he may be entitled whether in equity or in law.

-11-

RESPECTFULLY SUBMITTED,

_____
William Maxwell
Reg. # 71944-279
FCI Beaumont Low
P.O. Box 26020
Beaumont, Texas 77720
Pro se'


## CERTIFICATE OF SERVICE

I hereby certify that I served opposing counsel (AUSA noted below) with a copy of these objections on or before the date they were served on the Court. I certify that I posted these objections to the Court on ___March 28___, 2023 by placing in the BOP mail system, properly addressed, proper first-class postage affixed. I make this certification pursuant to 28 U.S.C. §1746 and under penalties of perjury.

3/28/2023                          _____
Date                               William Maxwell


## VERIFICATION

I hereby verify, pursuant to 28 U.S.C. §1746 and under penalties of perjury, that the material factual allegations made herein are true and correct to the best of my knowledge and belief. I further verify that the material factual allegations are within my personal knowledge.

3/28/2023                          _____
Date                               William Maxwell


-12-

Served on AUSA below:

United States Attorney's Office
Eastern District of Texas
550 Fannin,   Suite 1250
Beaumont, Texas 77701

## END NOTES

**EN1)** See PageID # 351

"Maxwell reasserts his rights for substantive due process relief previously raised in his BP-8, BP-9, BP-10, and by counsel. These include relief under 18 U.S.C. §3621; §3624; 34 U.S.C. §60541; and the modification made thereto under the CARES Act of 2020 and the First Step Act of 2018 and the Second Chance Act of 2018 (reauthorized and modified by the First Step Act of 2018)." (emphasis in original)

**EN2)** See PageID # 351

"In any event, Maxwell relies on his BP-8, BP-9, BP-10 arguments and counsel's arguments [Maxwell's counsel sent correspondence to the Warden, see PageID # 319÷324] previously made and adopt them herein and attach them hereto. Maxwell expressly objects under the Administrative Procedure Act (APA) to any new arguments being asserted by the BOP, as a basis for denial of RRC/home confinement that was not asserted in the original response to counsel [PageID # 340-341]. Maxwell expressly objects to the unknown basis used by the Regional Office [as part of exhaustion of administrative remedies] to deny my request ([the Regional Office's] refusal to deliver a written denial pursuant to the C.F.R. rules) under the Due Process Clause of the U.S. Constitution. Maxwell expressly asserts waiver (on all grounds not raised [by the BOP] originally with [Maxwell's] counsel.) Maxwell expressly asserts admission. The BOP, throughout the process [exhaustion of administrative remedies] has made multiple admissions and Maxwell expressly does not waive these BOP admissions."

**EN3)** PageID # 1149÷1150

"In making this determination [regarding summary judgments], the court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion." Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (emphasis added)

[]

## END NOTE ONE

" ... affidavits or declarations 'must be made on personnel knowledge, [shall] set out facts that would be admissible in evidence, and [shall] show that the affiant or declarant is competent to testify to the matters stated.'" Fed.R.Civ.P. 56(c)(4); see also Cormier v. Penzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Dist., Inc., 819 F.2d 547, 549 (5th Cir. 1987)(per curiam) (stating that Courts cannot consider hearsay evidence in affidavits and depositions).

EN4) Maxwell addressed this issue, the false statement(s) made by Thornton exhaustively in his response. See Doc. 20, pp. 25-30, ¶¶ 35-41 (Maxwell does not have the PageID # for these pages)

EN5) Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160, 122 L.ED.2D 517 (1993)

EN6) Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.ED.2D 1 (2002)

EN7) Hill v. McDonough, 547 U.S. 573, 126 S.Ct. 2096, 165 L.ED.2D 44 (2006)

EN8) Maxwell extensively briefed this. See Doc. 20, pp. 37-45, ¶¶ 45-64.

See also, Chevron v. Nat. Res. Def. Co., 467 U.S. 837, 842 (1984) ("First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously intent of Congress."); c.f. Lamie v. United States Trustee, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.ED.2D 1024 (2004):

> "The starting point in discerning congressional intent is existing text ... It is well established that when the statute's language is plain, the sole function of the courts - at least where the disposition required by the text is not absurd - is to enforce it according to its terms." (internal citations omitted) Lamie, at 534.

END NOTE TWO

"Petitioner's argument stumbles on still harder ground in the face of another cannon of interpretation. His interpretation of the Act - reading the word 'attorney' in § 330(a)(1)(A) to refer to 'debtor's attorney' in §330(a)(1) - would have us read an absent word into the statute. That is, his argument would result 'not [in] a construction of [the] statute, but, in effect, an enlargement of it by the Court, so that what was omitted, presumably by inadvertence, may be included within its scope'" citing Islin v. United States, 270 U.S. 245, 251 70 L.ED. 566, 46, S.Ct. 248 (1926) "with a plain, nonabsurd meaning in view, we need not proceed in this way." "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 625, 56 L.ED.2D 581, 98 S.Ct. 2010 (1978)

This type of statutory analysis is not the function of administrative remedy paradigm. See Gambino v. Morris, 134 F.3d 156, 171 (3d. Cir. 1998); Schandelmeier v. Cunningham, 819 F.2d, 53 (3d. Cir. 1986); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981) (Exhaustion is not required, however, if there is no opportunity to obtain adequate redress, if the issue presented only pertains to statutory construction, or if the prisoner makes an affirmnative showing of futility.) (emphasis added)

END NOTE THREE

 **U.S. Department of Justice**
Federal Bureau of Prisons

CHANGE  NOTICE
OPI:        CPD/CPB
NUMBER:   5410.01 CN-1
DATE:       February 6, 2023

# First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)

*/s/*
*Approved*:  Colette S. Peters
Director, Federal Bureau of Prisons

This Change Notice (CN) implements the following changes to Program Statement 5410.01, **First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)**, dated November 18, 2022.

*The highlighted text has been added to **Section 5. RISK AND NEED ASSESSMENT:***
If an inmate fails to complete a recommended EBRR or PA to address an identified need area, staff will enter the applicable fail or withdraw code into SENTRY, and the inmate will not be considered to have opted out, and therefore, in non-earning status.

An inmate will be reassessed for both risk level and needs at each regularly scheduled Program Review throughout the remainder of the inmate's incarceration **at a BOP institution.**  As defined in the Program Statement **Inmate Classification and Program Review**, the unit team will document the inmate's progress toward recommended goals and update the Individualized Need Plan, as appropriate.  The inmate will receive a copy of their updated Individualized Need Plan which will include the reassessed risk level, need areas, and program recommendations. **Inmates placed in prerelease custody, and who are not subject to regularly scheduled program review, will not receive reassessments.  For inmates in prerelease placement, reassessments will be completed automatically on a monthly basis and will capture changes which occur during prerelease placement.**

*The highlighted text has been added to **Section 6. HOW TO EARN FTCs:***
**For inmates in prerelease custody, "the most recent two consecutive risk assessments" refers to the final two risk assessments conducted while the inmate was at a BOP institution, prior to the application of FTCs, i.e., the inmate's transfer to supervised release**

or prerelease custody. For those inmates who have not completed two assessments prior to transfer to prerelease custody, reassessments will be completed automatically on a monthly basis and will capture changes which occur during prerelease placement.

*The highlighted text has been added to* **Section 8. TRACKING AND EARNING OF FTCs:** FSA Time Credit Assessments (FTC Worksheets) will be automatically uploaded to the Inmate Central File during each auto-calculation. Inmates will be provided a copy of the most recent FTC Worksheet during regularly scheduled program reviews.

*The highlighted text in has been changed (either added or struck through) in* **Section 10. APPLICATION OF FTCs:**
~~While inmates with unresolved pending charges and/or detainers may earn FTCs, if otherwise eligible, they will be unable to apply them to prerelease custody or release to supervision unless the charges and/or detainers are resolved. An inmate with an unresolved immigration status will be treated as if he/she has unresolved pending charges with regard to the application of FTCs.~~

To apply FTCs to prerelease placement, an inmate ordinarily must otherwise be eligible to participate in prerelease custody consistent with limitations as outlined in the Program Statement **Community Corrections Center (CCC) Utilization and Transfer Procedure,** separate from any FSA eligibility criteria, and be "opted in" at the time of the referral and be in minimum or low risk status through their last two assessment periods and transfer to prerelease placement. ~~For inmates with minimum or low risk who have not yet maintained two consecutive assessments, they will need to submit a BP-A0148, Inmates Request to Staff, during their regularly scheduled Program Review in order to have their early application of FTCs considered. The Unit Manager will submit a request, along with the unit team's recommendation, to the Warden (or designee) for final decision.~~

Once an inmate has been transferred to prerelease custody pursuant to the procedures outlined in this section, the inmate will maintain the recidivism risk level the inmate had at the time of the transfer, unless the inmate benefits from a lower recidivism risk level based on the passage of time or the inmate's actions result in a higher risk rating. If an inmate is removed from prerelease custody for a violation, and is returned to a BOP institution, the inmate's recidivism risk level will be reassessed pursuant to the procedures outlined in Section 5 of this Program Statement.

For inmates who meet the following criteria, up to 365 days of earned FTCs will be automatically applied to early release:
- ~~Has no detainers or unresolved pending charges, to include unresolved immigration status and~~

- Is not the subject of a final order of removal under immigration laws, and

As used in this Section, "last risk and needs assessment" refers to the final risk and needs assessment conducted while the inmate was at a BOP institution, prior to the inmate's transfer to supervised release or prerelease custody.

*The highlighted text has been added to the **REFERENCES** section:*

7310.04 CN-1   Community Corrections Center (CCC) Utilization and Transfer Procedure (12/16/1998)

 **U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T
OPI:        CPD/CPB
NUMBER:     5410.01
DATE:       November 18, 2022

# First Step Act of 2018 - Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)

/s/
*Approved*:  Colette S. Peters
Director, Federal Bureau of Prisons

## 1.  PURPOSE AND SCOPE

**§ 523.40 Purpose.**

**(a) The purpose of this subpart is to describe procedures for the earning and application of Time Credits as authorized by 18 U.S.C. 3632(d)(4) and Section 101 of the First Step Act of 2018 (Pub. L. 115-391, December 21, 2018, 132 Stat. 5194) (FSA), hereinafter referred to as "FSA Time Credits" or "Time Credits."**

**(b) Generally, as defined and described in this subpart, an eligible inmate who successfully participates in Evidence-Based Recidivism Reduction (EBRR) Programs or Productive Activities (PAs) that are recommended based on the inmate's risk and needs assessment may earn FSA Time Credits to be applied toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g).**

The purpose of this policy is to establish Bureau of Prisons (Bureau) criteria and procedures for awarding time credits pursuant to 18 U.S.C § 3632(d)(4) and 18 U.S.C § 3624(g) to eligible inmates under the provisions of First Step Act of 2018 (FSA) codified in part in Title 18 U.S.C. § 3632.

**Federal Regulations from 28 CFR are shown in this type.**
Implementing instructions are shown in this type.

a.  **Program Objectives**.  The expected results of this Program Statement are to:

▪ Inform inmates and staff of the process for earning, documenting, applying, forfeiting, and restoring after forfeiture FSA Time Credits (FTCs) in accordance with the FSA.
▪ Inform inmates and staff of the circumstances which would preclude an inmate from earning and/or applying FTCs.
▪ Identify the process for applying FTCs in combination with the Residential Drug Abuse Treatment Program (RDAP) early release benefit under 18 U.S.C. § 3621(e).

b.  **Institution Supplement**.  None required. Should local facilities make any changes outside changes required in national policy or establish any additional local procedures to implement national policy, the local Union may invoke to negotiate procedures or appropriate arrangements.

## 2.  BACKGROUND

The FSA provides eligible inmates may earn FTCs for successfully participating and completing approved EBRR programs or PAs.  The FSA prohibits inmates from receiving credit prior to its enactment, prior to the commencement of the inmate's sentence, or if the inmate is serving a sentence for a disqualifying offense or has a disqualifying prior conviction. The FSA allows qualifying inmates to apply FTCs toward prerelease community-based placement (i.e., Residential Reentry Center (RRC) and/or home confinement (HC)). Further, at the discretion of the Director of the Federal Bureau of Prisons (Director), the FSA allows for FTC to be applied toward early release to supervision.

## 3.  DEFINITIONS OF TERMS

**§ 523.41 Definitions.**

**(a)** *Evidence-Based Recidivism Reduction (EBRR) Program.* **An EBRR Program is a group or individual activity that has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism; and is designed to help prisoners succeed in their communities upon release from prison. EBRR Programs may include, but are not limited to, those involving the following types of activities:**

> **(1) Social learning and communication, interpersonal, anti-bullying, rejection response, and other life skills;**
> **(2) Family relationship building, structured parent-child interaction, and parenting skills;**
> **(3) Classes on morals or ethics;**

**(4) Academic classes;**

**(5) Cognitive behavioral treatment;**

**(6) Mentoring;**

**(7) Substance abuse treatment;**

**(8) Vocational training;**

**(9) Faith-based classes or services;**

**(10) Civic engagement and reintegrative community services;**

**(11) Inmate work and employment opportunities;**

**(12) Victim impact classes or other restorative justice programs; and**

**(13) Trauma counseling and trauma-informed support programs.**

A list of approved EBRR programs is available on the FSA resource page of the Bureau's public website and the Correctional Programs Branch and Reentry Services Division's intranet pages. The list will be updated as programs/activities are added.

**(b)** *Productive Activity (PA).* **A PA is a group or individual activity that allows an inmate to remain productive and thereby maintain or work toward achieving a minimum or low risk of recidivating.**

Productive activities include a variety of groups, programs, classes and individual activities which can be either structured or unstructured. These pro-social activities contribute to an inmate's overall positive institutional adjustment, to include maintaining clear institution conduct, and include, but are not limited to:

- Structured, curriculum-based group programs and classes
- Productive, free-time activities (e.g., recreation, hobby crafts, or religious services)
- Family interaction activities (e.g., social visiting)
- Personal growth and development classes (e.g., adult continuing education classes)
- Institution work programs
- Community service projects
- Participation in an Inmate Financial Responsibility plan

The Bureau has approved a group of specific, structured, curriculum-based PAs which are available to assist the inmate in addressing identified needs. The list is available on the FSA resource page of the Bureau's public website and the Correctional Programs Branch and Reentry Services Division intranet pages. The list will be updated as programs/activities are added.

**(c)** *Successful participation.*

**(1) An eligible inmate must be "successfully participating" in EBRR Programs or**

**PAs to earn FSA Time Credits for those EBRR Programs or PAs.**

**(2) "Successful participation" requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA.**

An inmate will remain in FTC earning status while on any waitlist for EBRR Programs or PAs recommended based on the inmate's needs assessment, not to exceed two assessment periods, as long as the inmate has not refused or declined to participate. Active participation in at least one EBRR Program or PA by the inmate supersedes this requirement. Exceptions to the two-assessment period time frame can be granted by the Regional Director upon request from the Warden. However, should an inmate refuse or decline to participate in the recommended EBRR program or PA for which they had been on a waitlist, staff will enter the applicable decline code in SENTRY, and the inmate will be considered declined, or opted out, for the entire waitlist period. The waitlist period is defined in terms of the corresponding need area(s). When an inmate declines participation after being on a waitlist, the auto-calculation application will first identify any need areas associated with the declined program and then identify the oldest waitlist associated with the need area(s). Any credits earned since the oldest waitlist associated with the need area, without intervening participation, will be rescinded to reflect the inmate's refusal.

**(3) Temporary operational or programmatic interruptions authorized by the Bureau that would prevent an inmate from participation in EBRR programs or PAs will not ordinarily affect an eligible inmate's "successful participation" for the purposes of FSA Time Credit eligibility.**

**(4) An eligible inmate, as described in paragraph (d) of this section, will generally not be considered to be "successfully participating" in EBRR Programs or PAs in situations including, but not limited to:**

**(i) Placement in a Special Housing Unit;**

Inmates in Disciplinary Segregation status will not be considered to be "successfully participating." Inmates in restrictive housing for Administrative Detention shall obtain FTCs if they otherwise remain in earning status under the policy.

**(ii) Designation status outside the institution (*e.g.,* for extended medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.);**

**(iii) Temporary transfer to the custody of another Federal or non-Federal government agency (*e.g.,* on state or Federal writ, transfer to state custody for service of sentence, etc.);**

In the case of placement or transfers outside the institution (e.g., furlough, writ, escorted trip, outside hospital placement, etc.), an inmate will continue to earn FTCs if they are in the institution for any part of the day. An inmate must be out of the institution for the entire 24-hour day before the inmate reverts to non-earning status. Upon return to the institution, the inmate's earning status will resume.

**(iv) Placement in mental health/psychiatric holds; or**
**(v) "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).**

An inmate is considered to be opting out, and therefore, is not in earning status, if the inmate refuses or declines to participate in any EBRR programs or structured, curriculum-based PAs recommended based on an identified need. Further, an inmate is considered to be opting out if the inmate refuses to participate in or fails to complete any portion of the Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13), the Bureau's assessment system. See the Program Statement **First Step Act Needs Assessment.**

**(5)(i) If an eligible inmate "opts out," or chooses not to participate in any of the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, the inmate's choice must be documented by staff.**

An inmate's refusal to complete any portion of the SPARC-13 or to participate in EBRR programs or structured, curriculum-based PAs recommended to address an identified need is documented in SENTRY using FSA-specific assignments. See the Program Statement **First Step Act Needs Assessment.**

**(ii) Opting out will not, by itself, be considered a disciplinary violation. However, violation of specific requirements or rules of a particular recommended EBRR Program or PA, including refusal to participate or withdrawal, may be considered a disciplinary violation. (*see* this part: 28 C.F.R. part 541)**
**(iii) Opting out will result in exclusion from further benefits or privileges allowable under the FSA, until the date the inmate "opts in" (chooses to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, as documented by staff).**

Note: C.F.R. citation added due to typographical error in published regulations.

(d) *Eligible inmate* —

    (1) *Eligible to earn FSA Time Credits.* **An inmate who is *eligible to earn* FSA Time Credits is an *eligible inmate* for the purposes of this subpart. Any inmate sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or any person in the custody of the Bureau, is *eligible to earn* FSA Time Credits, subject to the exception described in paragraph (d)(2) of this section.**

    (2) *Exception.* **If the inmate is serving a term of imprisonment for an offense specified in 18 U.S.C. 3632(d)(4)(D), the inmate is not *eligible to earn* FSA Time Credits.**

Federal inmates in state custody are not eligible to earn FTCs. Additionally, state boarders, treaty transfers inmates, and military inmates sentenced pursuant to the Uniform Code of Military Justice who are serving their sentence in Bureau custody are not eligible to earn FTCs.

Inmates sentenced under the Code of District of Columbia (DC Code) cannot earn FTCs unless or until the DC Council defines eligibility to earn FTCs (i.e., which DC Code offenses, if any, preclude eligibility). If and when the earning of FTCs is authorized for inmates sentenced under DC Code, the unit team will review inmates for eligibility and enter the applicable eligibility assignment into SENTRY. Any retroactive application of FTCs will be made consistent with the authorities granted under DC Code.

## 4. DETERMINATION OF ELIGIBILITY

At the inmate's Initial Classification, the unit team will conduct a review of the inmate's current conviction(s) as well as prior criminal convictions to determine the inmate's eligibility to earn FTCs.

For the current offense(s) review, the unit team will review the Judgement & Commitment (J&C) Order and the Presentence Investigation Report (PSR) for sentencing enhancements, if necessary, to determine if the inmate is ineligible. The list of FTC ineligible offenses, identified by statute, based on the inmate's current offense(s) is available on the FSA resource page of the Bureau's public website and the Correctional Programs Branch intranet page. If an inmate is determined to be ineligible based on the current offense(s), no review of prior offenses is required.

For the prior conviction review, an inmate is ineligible to earn FTCs if:

- The current offense is determined to be a "serious violent felony" not already specifically listed by the statute, and

- The inmate was sentenced to a term of imprisonment of more than a year for the current offense, and
- The inmate served a term of imprisonment of more than a year for a previous federal or state offense consisting of murder, voluntary manslaughter, assault with intent to commit murder, aggravated sexual abuse and sexual abuse, abusive sexual contact, kidnapping, carjacking, arson, or terrorism.

Additional criteria regarding the prior offense include:

- The conviction must have been based on an adult conviction. Juvenile adjudications are not considered, and
- If the prior conviction is a state offense, the state offense must match the specific federal offense listed above element-by-element.

For purposes of this review only, "serious violent felony" offense is defined by 18 U.S.C. § 3559(c)(2)(F):

> (i) a Federal or State offense, by whatever designation and wherever committed, consisting of murder (as described in section 1111); manslaughter other than involuntary manslaughter (as described in section 1112); assault with intent to commit murder (as described in section 113(a)); assault with intent to commit rape; aggravated sexual abuse and sexual abuse (as described in sections 2241 and 2242); abusive sexual contact (as described in sections 2244(a)(1) and (a)(2)); kidnapping; aircraft piracy (as described in section 46502 of Title 49); robbery (as described in section 2111, 2113, or 2118); carjacking (as described in section 2119); extortion; arson; firearms use; firearms possession (as described in section 924(c)); or attempt, conspiracy, or solicitation to commit any of the above offenses; and

> (ii) any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense[.]

Due to the complexity of the prior offense review, questions regarding whether an offense is disqualifying may be referred to an institution's local Consolidated Legal Center (CLC) for guidance.

An inmate's eligibility status will be documented on the inmate's Individualized Needs Plan in the Insight case management system, and the inmate will receive a copy. The unit team will also enter the appropriate FSA eligibility assignment into SENTRY.

## 5. RISK AND NEED ASSESSMENT

All sentenced inmates, regardless of eligibility status, will receive both a risk and need assessment. The Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) is the recidivism risk assessment tool and part of the Bureau's FSA-approved Risk and Needs Assessment System. The PATTERN tool is completed during the inmate's Initial Classification and is used to assign each incoming inmate an initial recidivism risk level of Minimum, Low, Medium, or High. The Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13) is the Bureau's needs assessment system and the other half of the Bureau's FSA-approved Risk and Needs Assessment System. It is used to assess the inmate in 13 need areas which can be targeted to reduce the inmate's risk of recidivating. See the Program Statement **First Step Act Needs Assessment.**

After the inmate's arrival to their designated facility for service of their sentence and during the initial admission and orientation phase, the PATTERN and SPARC-13 assessments will be completed. While PATTERN is completed during the inmate's Initial Classification, the SPARC-13 is a multi-part, multi-department assessment process. Ordinarily, the Initial Classification is completed within 28 days of the inmate's arrival, but completing the PATTERN tool requires the inmate's sentence computation to be completed. If the sentence computation is incomplete, the Initial Classification should be delayed pending its completion, and the basis for delay should be annotated on the inmate's Program Review Report. The SPARC-13 is ordinarily completed within the 30 days of an inmate's arrival, however, portions of the SPARC-13 assessment require the inmate's active participation. Failure on the inmate's part to complete the survey assessments timely will delay completion and negatively impact the inmate's ability to begin earning FTCs as the inmate will be considered "opted out," and therefore is in non-earning status regardless of eligibility to earn FTCs.

Using SPARC-13, staff will recommend and document EBRR programs and/or PAs for inmates consistent with the requirements of the Program Statement **First Step Act Needs Assessment.** If the inmate declines to participate in an EBRR program or PA which has been recommended based on an identified needs area, the department staff assessing the need area will enter a program decline code indicating the inmate's opt out status; otherwise, the inmate will be placed in the program or on a waitlist with the applicable assignment keyed into SENTRY by the department staff assessing the need area.

Should an inmate later refuse or decline to participate in the recommended EBRR program or PA for which they had been on a waitlist, staff will enter the applicable decline code in SENTRY, and the inmate will be considered declined for the entire period on the waitlist. Any credits earned during the waitlist period will be rescinded to reflect the inmate's refusal.

If an inmate fails to complete a recommended EBRR or PA to address an identified need area, staff will enter the applicable fail or withdraw code into SENTRY, and the inmate will not be considered to have opted out, and, therefore, in non-earning status. Inmates with cognitive or physical disabilities may require more time or additional accommodations to complete an EBRR program or PA. The Program Statement **Management of Inmates with Disabilities** provides guidance on developing local accommodations. If questions about the impact of a disability on earning FTC arise, staff may contact the Women and Special Populations Branch in the Reentry Services Division.

During the inmate's Initial Classification, the unit team will develop an Individualized Need Plan for the inmate based on the results of the inmate's needs assessment and related recommendations provided by the departments that assessed the need area as documented in SENTRY and Insight Feedback. Recommendations may include EBRR programs and/or structured curriculum-based PAs designed to address the inmate's identified need areas and based on the inmate's ability to complete the program/activity.

Additional groups, programs, classes, or unstructured activities may be recommended to assist the inmate in establishing positive institutional adjustment and involvement in pro-social activities. The inmate's risk level, needs assessment results, and program recommendations will be documented on the inmate's Insight Individualized Need Plan, and the inmate will receive a copy.

An inmate will be reassessed for both risk level and needs at each regularly scheduled Program Review throughout the remainder of the inmate's incarceration **at a BOP institution.** As defined in the Program Statement **Inmate Classification and Program Review**, the unit team will document the inmate's progress toward recommended goals and update the Individualized Need Plan, as appropriate. The inmate will receive a copy of their updated Individualized Need Plan which will include the reassessed risk level, need areas, and program recommendations. **Inmates placed in prerelease custody, and who are not subject to regularly scheduled program review, will not receive reassessments. For inmates in pre-release placement, reassessments will be completed automatically on a monthly basis and will capture changes which occur during prerelease placement.**

6. **HOW TO EARN FTCs**

**§ 523.42 Earning First Step Act Time Credits.**

**(a)** *When an eligible inmate begins earning FSA Time Credits.* **An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the**

sentence will be served).

Because the ability to accrue time credits begins after the inmate's current term of incarceration begins (e.g., the date the inmate arrives at or voluntary surrenders to their initially designated Bureau facility to serve their sentence), an inmate cannot earn FTCs during pretrial confinement, nor can they earn credits based on a prior incarceration. Further, an inmate cannot earn FTC when not in Bureau custody, including when in U.S. Marshals Service custody prior to arriving at their designated facility, regardless of where they are housed, or once released to their supervised release term.

**(b)** *Dates of participation in EBRRs or PAs.*
**(1) An inmate cannot earn FSA Time Credits for programming or activities in which he or she participated before December 21, 2018, the date of enactment of the First Step Act of 2018.**
**(2) An eligible inmate, as defined in this subpart, may earn FSA Time Credits for programming and activities in which he or she participated from December 21, 2018, until January 14, 2020.**
**(3) An eligible inmate, as defined in this subpart, may earn FSA Time Credit if he or she is successfully participating in EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment on or after January 15, 2020.**

**(c)** *Amount of FSA Time Credits that may be earned.*
**(1) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn ten days of FSA Time Credits.**
**(2) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn an additional five days of FSA Time Credits if the inmate:**
**(i) Is determined by the Bureau to be at a minimum or low risk for recidivating; and**
**(ii) Has maintained a consistent minimum or low risk of recidivism over the most recent two consecutive risk and needs assessments conducted by the Bureau.**

The calculation of FTCs is fully automated and based on the number of 30-day periods in earning status. Additionally, the eligibility to earn FTCs is distinct from the ability to apply/use FTCs.

For inmates in prerelease custody, "the most recent two consecutive risk assessments" refers to the final two risk assessments conducted while the inmate was at a BOP institution, prior to the application of FTCs, i.e., the inmate's transfer to supervised release or prerelease custody. For those inmates who have not completed two assessments prior to transfer to prerelease custody, reassessments will be completed automatically on a monthly basis and will capture changes which occur during prerelease placement.

## 7. LIMITATIONS ON EARNING OF FTCs

Despite being eligible to earn FTCs, there are situations where an inmate is unable or unwilling to participate in EBRR programs or PAs, and therefore cannot earn FTCs. Such circumstances may include, but are not limited to, the following:

- Placement in Disciplinary Segregation status);
- Designation status outside the institution (e.g., an outside medical trip or escorted trip, in-transit or at an in-transit facility, a furlough for the full day, etc.);
- Placement in the custody of another jurisdiction (e.g., on state or federal writ, transfer to state custody for service of sentence, transfer to another federal agency, etc.);
- Placement in mental health/psychiatric holds;
- Detention as a material witness or for civil contempt;
- Placement in civil commitment; or
- "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).

If an inmate refuses to participate in required programs (e.g., Inmate Financial Responsibility (FRP), Drug Education, etc.), the inmate will not earn FTC. While these programs are voluntary, the refusal to participate can result in the loss of certain benefits including the inability to earn FTCs.

## 8. TRACKING AND EARNING OF FTCs

FTCs are awarded based on the inmate's eligibility to earn credit, completion of the PATTERN and SPARC-13 assessments, and ongoing participation in programs designed to reduce the risk of recidivating. Once an inmate is in earning status, they will remain in earning status unless or until the limitations outlined in the previous section of this Program Statement are applied.

FTCs are auto-calculated based on 30-day increments in earning status. Partial credit will not be awarded. FTCs will be credited on a monthly basis agency-wide, as well as during the inmate's regularly scheduled Program Reviews, based on a completed 30-day period. No FTCs will post to the inmate's record if he/she has not accrued 30 days in earning status. Rather, any days in FTC earning status will carry over to the next monthly cycle, and the inmate will receive all

applicable FTCs at that time.

For example: If the first monthly posting of FTCs for an inmate occurs only five days after completing their initial assessments and going into earning status, no FTCs will post to the inmate's record as they have not yet accrued 30 days in earning status. Rather, the five days will carry over to the next monthly cycle, and the inmate will receive the FTCs at the end of the second month. If later, the inmate goes into FRP Refuse or declines a recommended needs-related program and goes into opt out status, the inmate is no longer in earning status, and therefore, stops accruing days toward FTCs and no FTCs will post to the inmate's record. Once the inmate returns to earning status, they will resume accruing days toward the earning of FTCs.

**FSA Time Credit Assessments (FTC Worksheets) will be automatically uploaded to the Inmate Central File during each auto-calculation. Inmates will be provided a copy of the most recent FTC Worksheet during regularly scheduled program reviews.**

## 9. LOSS AND RESTORATION OF FTCs

**§ 523.43 Loss of FSA Time Credits.**

*(a) Procedure for loss of FSA Time Credits.* **An inmate may lose earned FSA Time Credits for violation of the requirements or rules of an EBRR Program or PA. The procedures for loss of FSA Time Credits are described in 28 CFR part 541.**

Per the FSA, only earned time credits can be lost, and future time credits cannot be impacted. For purposes of inmate discipline, time credits are considered officially "earned" during the monthly auto-calculation or at the time of the inmate's last Program Review assessment, whichever was most recent. A sanction of loss of FSA time credits by the Discipline Hearing Officer (DHO) may only be imposed when an inmate is found to have committed a prohibited act. Loss of FTCs cannot be entered as a suspended sanction. See the Program Statement **Inmate Discipline Program.**

*(b) How to appeal loss of FSA Time Credits.* **Inmates may seek review of the loss of earned FSA Time Credits through the Bureau's Administrative Remedy Program (28 CFR part 542).**

*(c) Restoration of FSA Time Credits.* **An inmate who has lost FSA Time Credits under this subpart may have part or all of the FSA Time Credits restored to him or her, on a case-by-case basis, after clear conduct (behavior clear of inmate disciplinary infractions under 28 CFR part 541) for two consecutive risk and needs assessments conducted by the Bureau.**

The authority to restore any portion of the offender's lost FTCs is delegated to the Warden and may not be delegated lower than the Associate Warden level. The inmate may request restoration of FTCs during a regularly scheduled Program Review and only after having maintained clear conduct for two consecutive risk and needs assessments. The Unit Manager will submit a request using BP-A1156, Restoration of Federal Time Credits, along with the unit team's recommendation, through the DHO to the Warden (or designee) for final decision. If the recommendation to restore FTCs is approved, the Unit Manager or Acting Unit Manager will process the restoration approval into the inmate's record and update via Insight or Insight Feedback.

Whether denied or approved, a copy of the decision will be provided to the inmate. If denied, the inmate will be advised that they may reapply for FTC restoration six months from the date of denial, if clear conduct is maintained. A copy will be maintained in the inmate's J&C and electronic inmate central file (e-ICF), with other sentence computation documents.

## 10. APPLICATION OF FTCs

**§ 523.44 Application of FSA Time Credits.**

(a) *How Time Credits may be applied.* **For any inmate eligible to earn FSA Time Credits under this subpart who is:**

> **(1) Sentenced to a term of imprisonment under the U.S. Code, the Bureau may apply FSA Time Credits toward prerelease custody or supervised release as described in paragraphs (c) and (d) of this section.**
> **(2) Subject to a final order of removal under immigration laws as defined in 8 U.S.C. 1101(a)(17) (*see* 18 U.S.C. 3632(d)(4)(E)), the Bureau may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release.**
> **(3) Serving a term of imprisonment pursuant to a conviction for an offense under laws other than the U.S. Code (see Section 105 of the FSA, Pub. L. 115-391, 132 Stat. 5214 (not codified; included as note to 18 U.S.C. 3621)), the Bureau may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release. This paragraph (a)(3) will not bar the application of FSA Time Credits, as authorized by the DC Code, for those serving a term of imprisonment for an offense under the DC Code.**

Inmates sentenced under the DC Code can neither earn nor apply FTCs unless and until the DC Council defines eligibility to earn FTCs (i.e., which DC Code offenses, if any, preclude eligibility) and defines the criteria which authorizes the application of FTC (i.e., any circumstances, if any, which preclude application). If and when the earning and application of

FTCs is authorized for inmates sentenced under the DC Code, the unit team will review inmates for eligibility and enter the applicable eligibility assignment into SENTRY. Any retroactive application of FTCs will be made consistent with the authorities granted under the DC Code.

~~While inmates with unresolved pending charges and/or detainers may earn FTCs, if otherwise eligible, they will be unable to apply them to prerelease custody or release to supervision unless the charges and/or detainers are resolved. An inmate with an unresolved immigration status will be treated as if he/she has unresolved pending charges with regard to the application of FTCs.~~

(b) *Consideration for application of FSA Time Credits.* **Where otherwise permitted by this subpart, the Bureau may apply FSA Time Credits toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g) only if an eligible inmate has:**

    **(1) Earned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment;**

    **(2) Shown through the periodic risk reassessments a demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment; and**

    **(3) Had the remainder of his or her imposed term of imprisonment computed under applicable law.**

(c) *Prerelease custody.* **The Bureau may apply earned FSA Time Credits toward prerelease custody only when an eligible inmate has, in addition to satisfying the criteria in paragraph (b) of this section:**

    **(1) Maintained a minimum or low recidivism risk through his or her last two risk and needs assessments; or**

    **(2) Had a petition to be transferred to prerelease custody or supervised release approved by the Warden, after the Warden's determination that:**

        **(i) The prisoner would not be a danger to society if transferred to prerelease custody or supervised release;**

        **(ii) The prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and**

        **(iii) The prisoner is unlikely to recidivate.**

To apply FTCs to prerelease placement, an inmate ordinarily must otherwise be eligible to participate in prerelease custody consistent with limitations as outlined in the Program Statement **Community Corrections Center (CCC) Utilization and Transfer Procedure**, separate from any FSA eligibility criteria, and be "opted in" at the time of the referral and be in minimum or low risk status through their last two assessment periods and transfer to prerelease placement.



~~For inmates with minimum or low risk who have not yet maintained two consecutive assessments, they will need to submit a BP-A0148, Inmates Request to Staff, during their regularly scheduled Program Review in order to have their early application of FTCs considered. The Unit Manager will submit a request, along with the unit team's recommendation, to the Warden (or designee) for final decision.~~

Inmates with high or medium PATTERN recidivism risk levels are exceptions to the routine application of this policy with regard to awarding FTCs toward early transfer to prerelease custody and/or supervised release. The Warden will consult with the Regional Director before approving an inmate under section (c)(2), unless an exemption is granted by the Regional Director consistent with the Program Statement **Directives Management Manual**. Ordinarily, inmates considered inappropriate for early transfer to prerelease custody or supervised release under section (c)(2) include, but are not limited to, inmates who:

- Have a high or medium PATTERN recidivism risk level
- Have a current or prior offense listed in the Program Statement **Categorization of Offenses**. Early transfers for such inmates are considered only in highly unusual circumstances. Ordinarily, an inmate is precluded from receiving an early transfer if he/she has an offense listed in either the Section titled "Offenses categorized as crimes of violence", or the Section titled, "Offenses that at the Director's discretion shall preclude an inmate's receiving certain Bureau program benefits".
- Has a Public Safety Factor (PSF) that the Designation and Sentence Computation Center (DSCC) Administrator has not waived.
- Have a history of community-based supervision (i.e., probation, parole, supervised release, halfway house, home confinement, etc.) non-compliance to include technical violations, escape, absconding/eluding, and/or new criminal conduct.
- Inmates who have been found to have committed 100 OR 200 level prohibited acts during the current term of incarceration, or the prohibited acts of using drugs or alcohol, drug possession, possession of drug paraphernalia, or introduction of drugs into Bureau institutions within the last three years from the date of the incident.

Additionally, inmates with high or medium PATTERN recidivism risk levels must demonstrate a good faith effort to lower their recidivism risk by:

- Maintaining clear conduct for at least three years from the date of the request.
- Successfully completing at least one of the Bureau's residential EBRR programs recommended based on an identified need area within the past five years, if any have been assigned.
- Is otherwise compliant with all the other requirements of this Program Statement with regard to successful program participation.

Inmates may initiate a request under (c)(2) by submitting a BP-A0148, Inmate Request to Staff, during their regularly scheduled Program Review. The Unit Manager will submit a request, along with the unit team's recommendation, to the Warden (or designee) for final decision.

For Minimum and Low PATTERN risk inmates, consistent with the methodology described in Sections 6 and 7 of this policy, the Bureau will initially estimate an FSA conditional Projected Release Date (PRD) by calculating the maximum number of potential FTC that an inmate may earn during his or her sentence. The Bureau will make an initial projection based on the inmate's PATTERN risk level. (For inmates currently in custody as of the effective date of this policy, the PATTERN risk level will be presumed to be the current level). This FSA PRD is subject to change during the inmate's incarceration, and it will be adjusted if the inmate's PATTERN score changes or if the inmate enters non-earning status.

FTC will not be applied towards an inmate's release date unless earned. Medium and High PATTERN risk inmates may earn FTC, but will not receive an estimated FSA PRD.

RRC and/or HC referrals will ordinarily be submitted to the respective Residential Reentry Management (RRM) office 12 months in advance of the inmate's PRD or at least 60 days prior to the projected RRC/HC placement date, whichever is greater. The RRC and/or HC recommendation will include the total number of days recommended based on the Five Factor Review (see 18 U.S.C. § 3621(b)), required under the Second Chance Act, plus the remaining number of FTC days not applied to supervised release at the time of the referral. When determining the FTC days available to be applied toward RRC/HC placement, the Bureau will assume that the inmate will remain in earning status from the referral date until the transfer to prerelease custody. There is no expectation the RRC/HC placement date will be modified once the referral has been submitted to the RRM office.

**Once an inmate has been transferred to prerelease custody pursuant to the procedures outlined in this section, the inmate will maintain the recidivism risk level the inmate had at the time of the transfer, unless the inmate benefits from a lower recidivism risk level based on the passage of time or the inmate's actions result in a higher risk rating. If an inmate is removed from prerelease custody for a violation, and is returned to a BOP institution, the inmate's recidivism risk level will be reassessed pursuant to the procedures outlined in Section 5 of this Program Statement.**

Prerelease placement is dependent on, but not limited to, the inmate's release residence, program requirements, and available contract bed space and funding.

(d) *Transfer to supervised release.* **The Bureau may apply FSA Time Credits toward early**

transfer to supervised release under 18 U.S.C. 3624(g) only when an eligible inmate has, in addition to satisfying the criteria in paragraphs (b) and (c) of this section:

(1) An eligible inmate has maintained a minimum or low recidivism risk through his or her last risk and needs assessment;

(2) An eligible inmate has a term of supervised release after imprisonment included as part of his or her sentence as imposed by the sentencing court; and

(3) The application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred.

For inmates who meet the following criteria, up to 365 days of earned FTCs will be automatically applied to early release:

- Has a term of supervised release to follow the term of incarceration
- Has a low or minimum PATTERN risk level
- Has maintained a low or minimum PATTERN risk level for at least two consecutive assessments conducted during regularly scheduled Program Reviews
- ~~Has no detainers or pending charges, to include unresolved immigration status and~~
- Is not the subject of a final order of removal under immigration laws, and
- Has not opted out or refused to participate in any required program, and therefore, is in earning status.

As explained in Section 10(b), the Bureau will calculate an inmate's PRD by assuming that an inmate will remain in earning status throughout his or her sentence, including while in prerelease custody. If an inmate on prerelease custody has already earned the maximum 365 days of credit toward supervised release, the PRD will be adjusted only if the inmate loses earned FTCs consistent with Section 9. If an inmate is returned to prison for a violation during prerelease custody or any other reason, their projected FTCs may be adjusted depending on any failure to remain in earning status.

**As used in this Section, "last risk and needs assessment" refers to the final risk and needs assessment conducted while the inmate was at a BOP institution, prior to the inmate's transfer to supervised release or prerelease custody.**

## 11. RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM EARLY RELEASE BENEFIT AND FTCs

Inmates who successfully complete the Residential Drug Abuse Treatment Program (RDAP) and are eligible for early release pursuant to 18 U.S.C. § 3621(e) may also earn FTCs which could be applied towards an additional reduction to their Projected Release Date (PRD). Eligibility to

apply earned FTCs is separate and unrelated to the eligibility requirements under 3621(e).

An inmate must complete all required components of RDAP, including the community-based treatment component, in order to receive the early release benefit pursuant to 18 U.S.C. § 3621(e).  The 3621(e) benefit will be applied first to the inmate's sentence computation, followed by the application of FTCs, however, an inmate must have sufficient time remaining to serve to complete all required components of the RDAP program (i.e., 120-day community-based treatment).

In the event an inmate has insufficient time remaining to serve after completing the RDAP program to receive both the early release benefit under 3621(e) and the full 365 days toward early release of earned FTCs, the number of FTC days applied will be reduced to allow for, at a minimum, the 120-day community-based placement as required under 3621(e).

Regardless of whether the inmate is receiving the 3621(e) release benefit alone or in conjunction with FTCs, the inmate will have a conditional release method entered into SENTRY until the inmate receives a community-based placement date with, at a minimum, the required 120 days and the unit team has submitted a completed BP-A0628, Notification of RRC Placement Date, to the Designation and Sentence Computation Center (DSCC).

Inmates who release early pursuant to section 3621(e) and who also earn FTCs will be keyed with the release method which identifies that both benefits have been applied.  The Correctional Systems t intranet page provides a list of FSA release method codes and descriptions for staff.

12. ADMINISTRATIVE REMEDIES.

Inmates who wish to seek review of any issue relating to this Program Statement may use the procedures outlined in the Program Statement **Administrative Remedy Program**.


**REFERENCES**

*U.S. Codes or Regulations Referenced*
8 U.S.C. § 1101
18 U.S.C. § 3624
18 U.S.C. § 3632
28 C.F.R. § 541
28 C.F.R. § 542

*Program Statements*
1221.66 CN-1    Directives Management Manual (7/21/1998)

| 1330.18 | Administrative Remedy Program (1/6/2014) |
| 5162.05 | Categorization of Offenses (3/16/2009) |
| 5200.06 | Management of Inmates with Disabilities (11/22/2019) |
| 5220.01 | First Step Act Program Incentives (7/14/2021) |
| 5270.09 CN-1 | Inmate Discipline Program (11/18/2020) |
| 5322.13 | Inmate Classification and Program Review (5/16/2014) |
| 5330.11 CN-1 | Psychology Treatment Programs (4/25/2016) |
| 5331.02 CN-2 | Early Release Procedures under 18 U.S.C. § 3621(e) (9/27/2017) |
| 5400.01 | First Step Act Needs Assessment (6/25/2021) |
| 7310.04 CN-1 | Community Corrections Center (CCC) Utilization and Transfer Procedure (12/16/1998) |

*Forms*

| BP-A0148 | Inmate Request to Staff |
| BP-A0628 | Notification of RRC Placement Date |
| BP-A1156 | Restoration of Federal Time Credits |

*ACA Standards:*

**American Correctional Association Standards for Adult Correctional Institutions - 5th Edition:**
5-ACI-2C-11, 5-ACI-3C-01, 5-ACI-3C-03, 5-ACI-3C-04, 5-ACI-3C-07, 5-ACI-3C-08, 5-ACI-3C-11, 5-ACI-3C-13, 5-ACI-3C-15, 5-ACI-3C-19,
5-ACI-3C-23, 5-ACI-3D-19, 5-ACI-4A-09, 5-ACI-5B-01, 5-ACI-5B-03, 5-ACI-5B-04, 5-ACI-5B-05, 5-ACI-5B-06, 5-ACI—5B-07, 5-ACI-5B-08,
5-ACI-5B-09, 5-ACI-5E-02, 5-ACI-5E-11, 5-ACI-5E-12, 5-ACI-5E-13, 5-ACI-5E-14, 5-ACI-5E-15, 5-ACI-6A-42, 5-ACI-6C-06, 5-ACI-7B-10

**American Correctional Association Performance Based Standards for Adult Local Detention Facilities - 4th Edition:**
4-ALDF-2A-30, 4-ALDF-2A-47, 4-ALDF-2A-50, 4-ALDF-3A-01, 4-ALDF-3A-02, 4-ALDF-4C-40, 4-ALDF-5A-04, 4-ALDF-5A-08,
4-ALDF-6B-01, 4-ALDF-6B-02, 4-ALDF-6B-04, 4-ALDF-6B-05, 4-ALDF-6B-08, 4-ALDF-6C-01, 4-ALDF-6C-03, 4-ALDF-6C-04, 4-ALDF-6B-07, 4-ALDF-6C-09, 4-ALDF-6C-11, 4-ALDF-6C-12, 4-ALDF-6C-14, 4-ALDF—6C-15, 4-ALDF-6C-18, 4-ALDF-7D-2

*Records Retention Requirements*
Requirements and retention guidance for records and information applicable to this program are available in the Records and Information Disposition Schedule (RIDS) on Sallyport.

    

William Maxwell
Reg. # 71944-279
FCI Beaumont Low
P.O. Box 26020
Beaumont, Texas 77720

FOREVER / USA   FOREVER / USA

FOREVER / USA   FOREVER / USA   FOREVER / USA

March 28, 2023
$3.78 U.S. Postage

CLERK, U.S. DISTRICT COURT
RECEIVED

MAR 31 2023

EASTERN DISTRICT OF TEXAS
BEAUMONT, TEXAS

United States District Court
Office of the Clerk
Eastern District of Texas
300 Willow Street, Suite 104
Beaumont, Texas 77701-2217



LEGAL MAIL